

O'Melveny & Myers LLP  
1625 Eye Street, NW  
Washington, DC 20006-4061  

T: +1 202 383 5300  
F: +1 202 383 5414  
omm.com  

K. Lee Blalack II  
D: +1 202 383 5374  
lblalack@omm.com

July 16, 2024

<u>**VIA ELECTRONIC DELIVERY AND COURT FILING**</u>

The Honorable Katharine H. Parker  
Daniel Patrick Moynihan United States Courthouse  
500 Pearl Street, Room 750  
New York, New York 10007

Re:   <u>*United States v. Anthem, Inc.*, 1:20-cv-02593-ALC-KHP</u>

Dear Judge Parker:

We represent the Defendant Anthem, Inc., in the above-referenced action. We provide herein Anthem's position on the scheduling-related disputes raised in Anthem's July 1, 2024 letter to the Court (Dkt. 233). The parties have agreed on most issues, including an extension of the fact discovery deadline into at least spring 2025 as well as the length and sequencing of expert discovery, but the parties disagree on three key points that must be resolved to finalize the new discovery schedule. Exhibit A contains Anthem's proposed extension of the discovery schedule and a comparison with Plaintiff's proposed schedule. Plaintiff proposes to extend the discovery schedule by eight months whereas Anthem proposes an extension of eleven months.

**A. Plaintiff Must Disclose During Fact Discovery the Full and Final List of Claims for Payment that It Contends Are False under the False Claims Act ("FCA") and Plaintiff Must Make that Disclosure with Sufficient Time for Anthem to Develop Evidence to Rebut those Allegedly False Claims.**

The parties' primary dispute with regard to the schedule concerns when Plaintiff must disclose the full and final list of claims for payment that Plaintiff alleges are false under the FCA, and how much time should be allotted to allow Anthem to conduct rebuttal discovery into those specific claims. Plaintiff alleges that Anthem violated the FCA by submitting to the Centers for Medicare and Medicaid Services ("CMS") certain risk-adjusting diagnosis codes for Medicare Advantage ("MA") beneficiaries that Anthem knew or later learned were false because those diagnosis codes were not documented in the beneficiaries' medical records. *See* Pl.'s Am. Compl. ¶¶ 5, 7, 106-110, 129-132; Ex. B (Pl.'s 5/2/23 Ltr.); Ex. C (Pl.'s 6/15/23 Ltr.). Those allegedly false diagnosis codes were recorded in claim forms by healthcare providers who treated Anthem's MA beneficiaries and then submitted the claim forms to Anthem, which passed the diagnosis codes along to CMS. Those providers, who were not employed by Anthem, also created and retained the medical records that allegedly prove that the diagnosis codes at issue are false. Ex. D (illustrating process of how doctors create and submit diagnosis codes to Anthem on claim forms).

So for each allegedly false diagnosis code, there exists a provider who represented to Anthem that the particular beneficiary *did* in fact have the specific medical condition evidenced by that code. Plaintiff alleges that, notwithstanding this representation from the provider, Anthem

knew the diagnosis was false because a coder working for Anthem's chart review vendor did not identify that diagnosis following a review of the beneficiary's medical records. But, as this Court previously observed, diagnosis coding is an art, not a science.[1] For each of those allegedly false diagnosis codes, there is documentary and testimonial evidence probative of Plaintiff's allegation that the diagnosis was false, most of which involves nonparties such as providers, coders and professional societies.

Thus far, Plaintiff has only identified seven "illustrative" examples of the allegedly false diagnosis codes in this case. *See* Am. Compl. ¶ 154. Anthem cannot fairly defend itself until Plaintiff discloses each of the remaining diagnosis codes it alleges are false and the facts supporting the alleged falsity and that disclosure must occur with sufficient time left in fact discovery to permit Anthem to develop rebuttal evidence showing that those codes were not false. Anthem will require at least five months to complete this fact development and discovery. This discovery is likely to result in Anthem supplementing its Federal Rule of Civil Procedure 26 disclosures by identifying new documents and witnesses that will support its defenses at trial. Presumably, Plaintiff will also desire time to review any documents and depose any new witnesses Anthem discloses as a result of that effort. The new discovery schedule must reasonably accommodate this process.

Anthem's request is not novel; this information is routinely disclosed by the United States and *qui tam* relators during fact discovery in FCA and similar actions. *See US ex rel. Poehling v. UnitedHealth Grp*, 16-cv-8697 (C.D. Cal. June 8, 2020), Dkt. 400 at 1 (ordering United States to identify "every diagnosis code" that it alleged a health plan defendant "improperly failed to delete" based on chart reviews approximately six months before close of fact discovery), Dkt. 399 at 2 (showing case schedule); *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc*., 2019 WL 3245003, at *1-2 (D. Minn. July 19, 2019) (similar); *id*., 13-cv-3003, Dkt. 203 at *3, *5-6 (D. Minn. Apr. 2, 2019) (similar). *US ex rel. Osinek v. Kaiser Permanente*, 13-cv-3891 (N.D. Cal.) is instructive. *Osinek* is a pending FCA case against one of Anthem's competitors in which the United States alleges the health plan submitted to CMS thousands of risk-adjusting diagnosis codes for MA beneficiaries that were not properly documented in the medical records. In that case, the United States answered – without court intervention – the very same interrogatories that Anthem proposes to serve here, and then negotiated an agreed extension of the discovery schedule that incorporated an interim deadline to disclose the full and final list of allegedly false claims with five months left in fact discovery. *Osinek*, 13-cv-03891 (N.D. Cal. Apr. 3, 2024), Dkt. 332.

Anthem has no other way of recreating this information absent Plaintiff's disclosure. The process of identifying submitted codes allegedly lacking medical record documentation requires subjective interpretation of data derived from different and sometimes contradictory sources which will require Plaintiff to make judgment calls as to which codes it wishes to contest; judgment calls it has never disclosed, and which Anthem cannot discern merely from the data provided to Plaintiff. Anthem cannot guess what interpretive decisions Plaintiff will make, and even if Anthem *could* generate a possible procedure for identifying codes Plaintiff would consider not documented

---

[1] *See* 1/9/24 Tr. 36:23-38:16 (THE COURT: "But their coders could be wrong. . . . [J]ust that they check something off doesn't mean that something's wrong. But I guess that would go to Anthem's defense. And, still, you would need, I guess, medical records to ultimately know if that -- the coder was right or wrong; right?").

in medical records, Anthem has no way of knowing if it has made the *same* choices Plaintiff would make. Nor do courts require defendants to engage in such speculation. *See, e.g.*, *DMO Norwood LLC v. Kia Am., Inc.*, 691 F. Supp. 3d 252, 260-61 (D. Mass. 2023) (holding that "[e]ven if the defendant could review" documents plaintiff intended to use and infer what plaintiff's theories "could be or likely would be, that would not substitute" for the plaintiff stating its theories clearly).

Contrary to Plaintiff's argument, the Court has not ruled on this issue. Shortly after the start of discovery, Anthem sought leave to serve three interrogatories that asked Plaintiff to identify the specific claims for payment it alleged were false. While it denied Anthem's request to serve these interrogatories at the outset of discovery (Dkt. 132), the Court made clear in its order that it did so because the interrogatories were premature and the District's general practice is to allow other forms of discovery to proceed before interrogatories of this nature. Anthem is not requesting that Plaintiff disclose this information immediately; rather, Anthem is asking that Plaintiff be required to disclose its full and final list of allegedly false claims and overpayments as well as the facts supporting the alleged falsity of those claims by December 30, 2024, which is nearly 20 months after the start of fact discovery. Under Anthem's proposed schedule, this interim deadline will leave Anthem five months to develop evidence to rebut Plaintiff's allegations as to those supposedly false claims. This type of deadline and process is not only commonplace in FCA cases, as noted above, but it is literally impossible to prepare this case for trial without Plaintiff disclosing this information to Anthem and the Court. The question then is when Plaintiff will do so and whether Anthem will have sufficient time in fact discovery to develop evidence to fairly rebut Plaintiff's allegations. Anthem submits that its proposed schedule is reasonable for both parties.

**B. The Court Should Reject Plaintiff's Deadline of November 15, 2024 for Anthem to Complete Any Production in Response to *Future* ESI Discovery Requests.**

Plaintiff demands that Anthem commit to completing future ESI productions by November 15, 2024. This is patently unreasonable. At the June conference, the Court directed Plaintiff to review Anthem's production that is slated for completion in August and September and only then seek further ESI to fill gaps, if necessary. *See* 6/11/24 Tr. at 17:17-23. It is unreasonable to set a deadline of mid-November *now* when the parties have no concept of the scope of any further reviews that may be warranted. The Court should reject Plaintiff's proposed interim deadline and instead direct the parties to meet and confer about any further ESI review once the parties actually know what, if any, further review must be conducted.

**C. The Parties Previously Agreed to Permit 35 Fact Witness Depositions Each.**

In their joint proposed case management plan, the parties agreed that each side would be allotted 35 fact depositions (Dkt. 84 at 4). Plaintiff has reneged on its earlier agreement and now asks the Court to limit the parties to only 25 depositions each, despite both parties collecting documents from over 40 custodians apiece. This is gamesmanship, as Plaintiff already has the benefit of deposing eleven Anthem personnel during its three-year pre-filing investigation and none of those depositions count against this limit. Plaintiff simultaneously refuses to stipulate that the *Poehling* depositions produced to Anthem in this case are usable under Federal Rule of Civil Procedure 32, which would allow Anthem to focus the depositions of those witnesses in this case. Thus, the parties' prior agreement should be affirmed by the Court.

Dated: July 16, 2024

Respectfully submitted,

By: /s/ K. Lee Blalack, II

K. LEE BLALACK, II, *Pro Hac Vice*
ANWAR GRAVES, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
lblalack@omm.com
agraves@omm.com

JAMES A. BOWMAN, *Pro Hac Vice*
ADAM LEVINE, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jbowman@omm.com
alevine@omm.com

DAVID DEATON, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
ddeaton@omm.com

JOHN MARTIN, *Pro Hac Vice*
HEYWARD BONYATA, *Pro Hac Vice*
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 255-9655
john.martin@nelsonmullins.com
heyward.bonyata@nelsonmullins.com

*Attorneys for Defendant Anthem, Inc.*

cc: Assistant United States Attorney Rebecca Sol Tinio, Esq.
    Assistant United States Attorney Peter Max Aronoff, Esq.

O'Melveny

Assistant United States Attorney Zachary Bannon, Esq.
Assistant United States Attorney Charles Salim Jacob, Esq.
Assistant United States Attorney Adam M. Gitlin, Esq.
Assistant United States Attorney Dana Walsh Kumar, Esq.