

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

July 8, 2025

<u>Via ECF</u>
The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States of America v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP)

Dear Judge Parker:

  We write regarding the discovery schedule in this case, including the Government's deadline to disclose its revised list of allegedly false diagnosis codes. As explained below, we respectfully request that the Government's deadline to serve a revised list of allegedly false diagnosis codes be extended by eight weeks, or until September 2, because the Government is narrowing the issues in this case, but still requires additional information from Anthem to do so. We notified Anthem earlier today that we would make this request, and expect that Anthem will respond with its position separately. We also intend to meet and confer with Anthem about a broader revision to the discovery schedule, which we believe will be necessary for additional reasons beyond the list discussed in this letter, and intend to discuss this with the Court at the July 24 conference.

  **Background on data analysis.** In May, the Government disclosed to Anthem its "list of allegedly false diagnosis codes or other allegedly false claims for payment or over payments," as required by Court. *See* ECF Nos. 243, 280, 312, 345). The Government understands that Anthem intends to take additional discovery steps based on the list, and the parties have continually reserved time in the fact discovery schedule for Anthem to take this additional discovery.

  The Government's May disclosure consists of a list of diagnosis codes that the Government believes should have been deleted from Anthem's prior submissions to the Centers for Medicare and Medicaid Services (CMS). Since the disclosure of this list, the Government has determined that, in order to reduce the number of disputes for trial and to facilitate the sampling exercise proposed by the Government, the Government will narrow the list further. (The Government does not intend to add any additional diagnosis codes to the list.) Importantly, this narrowed list will remove an important anticipated dispute between the parties that was likely to require ultimate resolution by the Court. That is because the Government expects that its revised list will remove for the purposes of reverse False Claims Act liability diagnosis codes that were revealed as unsupported by Anthem's chart review program, but that did not affect any payments to Anthem. It is the Government's position that Anthem would be liable and subject to significant civil penalties under the False Claims Act for failing to delete such false diagnosis codes, regardless of whether they resulted in damages to the United States in the form of overpayments. By removing false diagnosis codes that did not result in overpayments to Anthem, however, the Government will eliminate a potential dispute between the parties regarding Anthem's obligation to delete for

this category of false diagnosis codes submitted to CMS, as well as an anticipated dispute regarding Anthem's liability for civil penalties under the False Claims Act, and thus narrow the issues for trial. The revised list will also be significantly numerically smaller, and thus should require less fact and expert discovery.

Given Anthem's recent disclosure that it intends to produce cherry-picked fact discovery from medical providers based on the Government's disclosed list—and the Government's response that a statistically valid sample should be constructed for such discovery—the revised list should be disclosed with sufficient time ahead of the conclusion of fact discovery so that Anthem can produce discovery it obtained from medical providers and the Government can generate a statistically valid sample and obtain medical records it needs from Anthem or providers.

The Government has been diligently working with its analysts to prepare a narrowed list. However, as described below, the Government has recently determined that these further refinements require it to analyze a new data source and will require a discrete additional production from Anthem.

**Data sources.** The Government's analysis to date has relied primarily on two data sets: (1) data from CMS's own systems showing which diagnoses Anthem submitted for payment; and (2) Anthem's chart review data showing which diagnoses Anthem had reason to know were supported by medical records. A third data set is (3) Anthem's claims data—data that healthcare providers submitted to Anthem to receive payments. This data set is larger and more complex than the first two data sets.

Prior to the Government's decision to narrow the issues for trial, although we had requested and received claims data from Anthem, that data was not necessary for the Government's analysis. However, to refine the delete list further, the Government needs to match entries in the first two data sets with entries in the claims data. Based on correspondence and a July 3 phone call with Anthem's counsel, the Government understands that Anthem's claims data does not contain a single identifying field that would permit matching of entries between the claims data and the other two databases.

The Government can match these data sets if Anthem produces a table—a "crosswalk"—that provides correspondence between different data fields. This would allow the Government to match individuals across all three data sets. Earlier today, the Government made a specific request to Anthem for this information. The Government intends to meet and confer with Anthem about this request. The Government's ability to narrow its list may depend on Anthem's providing this additional information. We believe that the necessary information should be readily available to Anthem.

Once the Government is able to receive a crosswalk and complete matching, the analysts will then require approximately three additional weeks to analyze the claims data and compare it to information in the other data sets to determine if further refinement is possible. Finally, because of the data security measures in the Government's secure environment, transmitting data into and out of the environment takes additional time. Budgeting time for these tasks, as well as data transmission time, the Government believes that even working aggressively, it will require an additional eight weeks of time to complete its analysis. This timeline could change based on the results of the parties' meet and confer discussions about the crosswalk.

   We believe this request is consistent with the Court's directions at the last conference. *See* June 17, 2025 Tr. 45:14-17 ("But I'm still going to ask the Government to get its narrowed list in three weeks unless you write to me afterwards and tell me there's, you know, because Anthem hasn't given you this information, you just can't do it.").

   **Discovery schedule.** The Government believes that an extension of the discovery schedule will be necessary in any event to permit the parties to complete depositions. We intend to meet and confer with Anthem about the discovery schedule as a whole in advance of the July 24 conference, which will take into account all relevant discovery issues. If the parties have reached agreement on any revisions, we will propose them then; if not, the parties can explain their respective positions at the conference. At this time, we do not seek any relief other than the extension for the Government to produce its revised list.

   **Conclusion.** For the reasons given above, the Government respectfully requests that its time to disclose its list be extended by eight weeks, or until September 2. This will permit the Government to meet and confer with Anthem about its request for a crosswalk, and engage in further analysis.

   We thank the Court for its consideration of this request.

                  Respectfully submitted,

                  JAY CLAYTON
                  United States Attorney

            By:  */s/ Peter Aronoff*
                 PIERRE ARMAND
                 PETER ARONOFF
                 RACHAEL DOUD
                 ADAM GITLIN
                 CHARLES JACOB
                 DANA WALSH KUMAR
                 REBECCA TINIO
                 Assistant United States Attorneys
                 86 Chambers Street, 3rd Floor
                 New York, New York 10007

cc:  Anthem's Counsel (Via ECF)