**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

August 15, 2025

<u>Via ECF</u>
The Honorable Katharine H. Parker
United States Magistrate Judge
United States District Court
500 Pearl Street
New York, New York 10007

      Re:    *United States of America v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP)

Dear Judge Parker:

      This Office represents the United States of America (the "Government") in the above-referenced lawsuit. The Government previously filed a motion to compel Anthem, Inc. ("Anthem") to produce documents that it withheld or redacted on the basis of privilege (the "Motion"). *See* ECF No. 318 (moving brief); ECF No. 347 (reply brief). We respectfully write to supplement the Government's Motion in light of testimony from the August 6, 2025, deposition of Anthem's former Director of Government Relations, Leah Hirsch, which supports the Government's arguments in its Motion that Anthem improperly: (1) withheld a document entitled "risk filtration memo" (PRIVID-00000401); and (2) redacted an excel file entitled "comment grid" (ANTHEM_SDNY_00145239 / ANTHEM_SDNY_00093501).[1] For the reasons discussed below and in the Government's briefing, the Court should direct Anthem to produce to the Government unredacted copies of the "risk filtration memo" and "comment grid."

**I.    Background**

    **A.    The Government's Motion and the Challenged Documents**

      On March 28, 2025, the Government filed its Motion, requesting that the Court direct Anthem to produce approximately 70 documents (and their duplicates or near duplicates) that Anthem has withheld or redacted on the purported basis of the attorney-client and work product privileges. As our papers explain, the challenged documents and communications are not privileged because they relate not to legal advice or litigation, but to: (1) the work of Anthem's public policy department in connection with Anthem's public comment related to proposed Centers for Medicare & Medicaid Services ("CMS") rules; (2) the nonprivileged work of Anthem's third-party consultant; (3) Anthem's routine compliance audits; and (4) Anthem's business operations. *See generally* ECF Nos. 318, 347. The Government's Motion is pending.

      Among the 70 documents that the Government challenged is a withheld document entitled "risk filtration memo" relating to Anthem employees' anticipated meeting with CMS officials. *See* ECF. No. 319 (list of challenged documents), at 4. The Government also challenged a redacted

---

[1] The redacted or withheld documents that the Government argues should be produced without redactions were submitted to the Court by Anthem pursuant to the Court's February 4, 2025, Order. *See* Dkt. No. 295. In addition, to the extent that the Government cited to any other documents in its moving or reply brief, Anthem agreed to provide such documents to the Court as well.

excel file "comment grid" created by a third-party consultant at the direction of Anthem's public policy department, that summarized rules proposed by CMS and provided space for Anthem employees to input their feedback regarding such rules. *See id.* at 1.

### B. Ms. Hirsch's August 6, 2025, Deposition

On August 6, the Government deposed former Anthem employee Leah Hirsch. Ms. Hirsch began working at Anthem in 2013 as its Director of Government Relations for the Executive Branch. In that role, Ms. Hirsch communicated with, and attended meetings with, CMS officials regarding Anthem's Medicare business. Ms. Hirsch also worked with Anthem's non-lawyer, external government affairs consultants. During her deposition, Ms. Hirsch answered questions regarding the "risk filtration memo" and "comment grid." Ms. Hirsch had knowledge of both documents, and other documents produced in discovery show that Ms. Hirsch directly corresponded about both documents. More generally, Ms. Hirsch oversaw government relations at Anthem and both documents related in some manner to Anthem's communications with CMS. Ms. Hirsch testified that neither document was created for the purpose of obtaining legal advice.

## II. Ms. Hirsch's Testimony Confirms that the "Risk Filtration Memo" is Not Privileged

As the Government explained in its moving and reply briefs, Anthem improperly withheld in full or redacted documents that appear to be operational—including the "risk filtration memo"—which do not reflect legal advice and do not appear to be drafted by or include attorneys. *See* Motion at 6. To be protected by the attorney-client privilege, a communication must be "generated for the purpose of obtaining or providing legal advice as opposed to business advice." *See id.* (citing *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). The "risk filtration memo" was not generated for the purpose of obtaining or providing legal advice.[2]

Ms. Hirsch's testimony confirms that the "risk filtration memo" was not created for the purpose of obtaining or providing legal advice, but was instead operational in nature. Anthem's privilege log reflects that it was drafted by Brian Matthew Cogdill, a non-lawyer. ECF No. 340, at 3. Furthermore, Ms. Hirsch testified that she sent a version of the "risk filtration memo" to a non-attorney government relations consultant, Thomas Hutchinson, in connection with her role as a government affairs professional. *See* Ex. A, ANTHEM_SDNY_00133199.[3] Ms. Hirsch further testified that she was "not seeking any legal advice from Mr. Hutchinson" when she sent him the memorandum, Ex. B, Hirsch Dep. Tr. 117:11–18, and that, more generally, during the entirety of her work at Anthem, she "didn't seek legal advice" from Mr. Hutchinson, *id.* at 67:4, and that Mr. Hutchinson "would never" provide such legal advice to Ms. Hirsch, *id.* at 66:22–25.[4] Instead,

---

[2] Anthem did not claim work product privilege over the "risk filtration memo" or the "comment grid." *See* ECF No. 340, at 1, 3. Accordingly, the Government only addresses herein Anthem's claim that the documents are protected by the attorney-client privilege.

[3] Anthem inaccurately asserted in its privilege log that the "risk filtration memo" reflects "[m]eeting materials submitted for *legal review of Thomas Hutchinson\** (*outside counsel* from Epstein Becker Green) in preparation for meeting with CMS regarding Anthem's risk adjustment submissions." ECF No. 340, at 3 (emphasis added). In fact, although Mr. Hutchinson worked at Epstein Becker Green at the time that Ms. Hirsch sent him the "risk filtration memo," Mr. Hutchinson is not an attorney and could not undertake any legal review of the document.

[4] Although the transcript of Ms. Hirsch's deposition has been marked Attorneys' Eyes Only pursuant to the operative protective order, *see* ECF No. 96, Anthem agreed to de-designate the confidentiality of Ms. Hirsch's testimony with

according to Ms. Hirsch, she interacted with Mr. Hutchinson in his capacity as "one of Anthem's consultants" who "consulted [with] us on Medicare Advantage-related issues." *Id.* at 66:8–13. Ms. Hirsch's testimony underscores the arguments that the Government raised in its moving brief relating to the "risk filtration memo"—namely, that it is not privileged because it does not reflect legal advice, it does not appear to be drafted by or include attorneys, and it is operational in nature.[5] *See* ECF No. 318, at 6–9; ECF No. 347, at 9–11.

Even if some portion of the "risk filtration memo" was privileged at one point, Anthem waived any potential privilege because Ms. Hirsch circulated the memorandum to Mr. Hutchinson, a non-attorney consultant who appeared to have had no need to receive any legal advice on the topic. As the Government explained in its moving brief, to the extent a document or communication might initially be privileged, a party can waive such privilege if it shares the document or communication with an individual who "did not need to know the subject matter of the communications in question." *Verschoth v. Time Warner, Inc.*, No. 00 Civ. 1339 (AGS), 2001 WL 546630, at *3 (S.D.N.Y. May 22, 2001). Here, Ms. Hirsch shared the "risk filtration memo" with a non-lawyer—a government relations consultant—who had no need to know the subject matter of the attorneys' communications. Accordingly, to the extent Anthem had any basis to claim privilege over the memorandum, it waived such claim.

### III. Ms. Hirsch's Testimony Confirms that the "Comment Grid" is Not Privileged

Ms. Hirsch's testimony also confirms that the "comment grid," which Anthem redacted, relates to business, not legal, purposes. As the Government explained, the "comment grid," an Excel file, summarized proposed CMS rules in 2014 and allowed employees to input their feedback regarding the rules. ECF No. 347, at 1. In order to coordinate Anthem's response to CMS, Anthem's public policy department, led by Anthem employee Danielle Horne, surveyed staff in various Anthem departments and units to obtain employees' feedback on the proposed rules. *See* ECF No. 318, at 14 (citing ANTHEM_DOJ_00027566). Anthem initially produced the comment grid without redactions, but when the Government informed Anthem during this litigation that the Government intended to quote from one of the documents in a court filing—in particular, from cells 32F and 32G, which contain comments from Anthem employees concerning Anthem's chart review program—Anthem clawed back all variations of the document. *Id.* at 14.

As the Government previously explained, the "comment grid" is not a privileged document. The "comment grid" was not created by counsel, nor was it created to provide legal advice to Anthem. *See* ECF No. 318, at 15 (citing *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442 (SHS)

---

respect to the issues in the parties' supplemental privilege briefing. Anthem has also agreed to de-designate the confidentiality of ANTHEM_SDNY_00133199, which the Government attached to this letter as Exhibit A.

[5] Ms. Hirsch testified that on some occasions, Mr. Hutchinson, a non-lawyer working at the law firm Epstein Becker, would consult lawyers at the firm. According to Ms. Hirsch, "depending upon the issue," Mr. Hutchinson "would consult legal at Epstein Becker." Ex. B, Hirsch Dep. Tr. 67:21–22. But Mr. Hutchinson's consultations with counsel would not convert non-privileged operational documents such as the "risk filtration memo" into privileged documents even if the memorandum was shaped by advice of counsel. *See Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, No. 95 Civ. 4856 (SS), 1996 WL 474177, at *1–2 (S.D.N.Y. Aug. 21, 1996). Similarly, although Ms. Hirsch testified in response to questions posed by Anthem's counsel that it was "possible" that Ms. Hirsch was communicating with Mr. Hutchinson regarding the "risk filtration memo" at the direction of counsel, *id.* at 122:4–11, there is no indication from Ms. Hirsch's email with Mr. Hutchinson that the communication was at the direction of counsel or for the purpose of obtaining legal advice. *See* Ex. A, ANTHEM_SDNY_00133199.

(KNF), 2008 WL 3166662, at *8 (S.D.N.Y. Aug. 4, 2008)). Rather, the "comment grid" was created by a third-party consultant, Avalere Health ("Avalere"), to facilitate Anthem's public policy response to CMS—and the operational or business impact of CMS's proposed rules on Anthem. *Id.* Further, to the extent that at one point a privilege arose in connection with the clawed back documents, Anthem waived any privilege by sharing the document with Avalere and at least 150 employees at Anthem, many of whom had no need to possess any purported legal advice or work product. *See id.* (citing *Spanierman Gallery, Profit Sharing Plan v. Merritt*, No. 00 Civ. 5712 (LTS) (THK), 2003 WL 22909160, at *3 (S.D.N.Y. Dec. 9, 2003)).

Ms. Hirsch's testimony further confirms that the "comment grid" is not privileged because it was not created for a legal purpose and instead was operational or business-related in nature. Specifically, at her deposition, Ms. Hirsch reviewed a communication that included a copy of the "comment grid," and Ms. Hirsch's testimony regarding the purpose of the "comment grid" was unequivocal: it was "*not for legal advice*." Ex. B, Hirsch Dep. Tr. 84:5 (emphasis added). Instead, Ms. Hirsch confirmed the operational and business nature of the "comment grid." Ms. Hirsch explained that the "comment grid" was created in order for Danielle Horne, Anthem's public policy director, to "understand[] the *business's* views on the proposed [CMS] rule." *Id.* 84:7–11 (emphasis added). Ms. Hirsch further testified that the "comment grid" was a "typical email" that the policy team would send out when a rule is promulgated by CMS "to get feedback and input from the *business*." *Id.* at 82:24–25 (emphasis added). Ms. Hirsch's testimony further shows—as the Government explained in its moving and reply briefs—that the "comment grid" lacked a legal purpose and should be produced to the Government.

\* \* \*

For these reasons, and those in the Government's moving and reply briefs, the Court should direct Anthem to produce unredacted copies of the "risk filtration memo" and "comment grid." We thank the Court for its attention to this matter and consideration of the Government's Motion.

    Respectfully submitted,

    JAY CLAYTON
    United States Attorney

By:   */s/ Adam Gitlin*
    PIERRE ARMAND
    PETER ARONOFF
    RACHAEL DOUD
    ADAM GITLIN
    CHARLES JACOB
    DANA WALSH KUMAR
    REBECCA TINIO
    Assistant United States Attorneys

cc:    Anthem's Counsel (via ECF)