

O'Melveny & Myers LLP
400 South Hope Street
Suite 1900
Los Angeles, CA 90071-2811

T: +1 213 430 6000
F: +1 213 430 6407
omm.com

File Number:

August 15, 2025

**Jim Bowman**
D: +1 213 430 6569
jbowman@omm.com

**VIA ELECTRONIC DELIVERY AND COURT FILING**

The Honorable Katharine H. Parker
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, New York 10007

      Re:    <u>*United States of America v. Anthem, Inc.*</u>, **1:20-cv-02593-ALC-KHP**

Dear Judge Parker:

      We represent Defendant Anthem, Inc. ("Anthem") in the above-referenced action. We provide herein Anthem's supplemental letter concerning the issues identified in Plaintiff's letter to the Court dated August 12, 2025 (Dkt. 393) related to its Motion to Compel (Dkt. 318).

      Plaintiff once again brings before the Court a sur-reply to its fully briefed Motion to Compel seeking to reargue a record fully available to the Court. Plaintiff justifies reopening this briefing based on purported new evidence—testimony from a recent deponent who was not even shown in her deposition the documents Plaintiff now challenges—to assert that the deponent's testimony prevents Anthem from asserting privilege over two documents: (i) a confidential memorandum (the "Risk Filtration Memorandum" or "Memorandum"), designated at the time as privileged, which was drafted with attorney participation in preparation for a meeting with the Centers for Medicare and Medicaid Services ("CMS") to discuss the results of an internal investigation directed by Anthem's in-house attorneys ("Anthem Legal"); and (ii) a redacted document (the "Comment Grid") containing comments provided by—and directly responding to—Anthem Legal in connection with recently promulgated CMS rules. These documents are clearly privileged, and nothing in the recent testimony materially alters the proper analysis for the Court.

      **A.  The Risk Filtration Memorandum Reflects Advice and Input by Anthem Legal**

      The Risk Filtration Memorandum details the results of Anthem Legal's internal investigation concerning potential flaws in Anthem's filtering logic process, which was discussed in detail in Anthem's Response to the Motion to Compel. *See* Anthem Response in Opp'n to Mot. to Compel ("Response"), Dkt. 339 at 7, 16-20; *see also* Declaration of Amy Hafey in Support of Anthem's Opp'n to Mot. to Compel ("Hafey Decl."), Dkt. 335 ¶¶ 2-25 (detailing filter logic investigation by Anthem Legal). Anthem executives met with CMS officials in February 2015 to address Anthem's remediation of issues with its filtering logic, which included changes to the filter that it used to screen certain data before it was submitted to CMS. Declaration of Leah Hirsch in Support of Anthem's Letter Regarding Plaintiff's Mot. to Compel ("Hirsch Decl.") ¶ 3. In anticipation of this meeting, Anthem Legal and Anthem's Director of Government Relations, Leah

Hirsch, participated in drafting the Memorandum along with other Anthem personnel so that Anthem executives preparing for the meeting would understand the steps Anthem Legal had taken and the reasons for the remediation. *Id.*

The Risk Filtration Memorandum is demonstrably privileged on its face. Anthem has already described in its Response why the internal investigation described in the Memorandum is privileged. *See, e.g.*, Response at 7, 16-20; Hafey Decl. ¶¶ 2-25. Because the draft Memorandum included analysis from Anthem's internal privileged investigation, each draft of the Memorandum was prominently labeled "Confidential Communication Subject to Attorney Client Privilege." Hirsch Decl. ¶ 4; *see also id*. Exs. 1A, 2A; Supplemental Declaration of James A. Bowman in Support of Anthem's Letter Regarding Plaintiff's Mot. to Compel ("Bowman Decl.") Ex. 3 (attaching versions of the Memorandum). The final version of the Memorandum is addressed to Marc Russo, then-President of Anthem Medicare, and copies Anthem's General Counsel Thomas Zielinski and Anthem's Managing Senior Associate General Counsel Amy Hafey. Hirsch Decl. ¶ 4, Ex. 2A. And comments in the drafts of the Memorandum reflect that Anthem Legal was providing input on the Memorandum as it was being revised. *See* Bowman Decl. Ex. 3.

Anthem Legal was heavily involved in drafting this Memorandum, because it described the action taken and conclusions drawn from the prior privileged investigation into the issues with the filtering logic. In January 2015, Mr. Zielinski requested that the Memorandum be prepared for his review in advance of the anticipated CMS meeting. Bowman Decl. Ex. 1. Because Ms. Hirsch, who coordinated the Memorandum's drafting, did not have personal knowledge of the legal investigation, Anthem Legal supplied significant and detailed information regarding the investigation and its conclusions in the draft Memorandum. Hirsch Decl. ¶ 4. Ms. Hirsch also consulted with Ms. Hafey in revising and finalizing the Memorandum. *Id.* Anthem personnel providing information for the Memorandum took care to note that the information included privileged, attorney-client information. *See* Bowman Decl. Ex. 2. Correspondence shows Ms. Hafey provided information relevant to the Memorandum to Ms. Hirsch. *Id.* Ex. 4. And in addition to addressing the Memorandum to Mr. Zielinski and Ms. Hafey, contemporaneous records show Ms. Hirsch also sent complete versions of the Memorandum to both attorneys. *Id.* Ex. 5.

In preparation for the meeting with CMS, Anthem personnel—with the knowledge of Anthem Legal (*see id*. Ex. 1)—also sought the specialized knowledge of Thomas Hutchinson, who was a retained outside consultant at the healthcare law firm Epstein Becker Green; Mr. Hutchinson had previously served as a senior CMS official with responsibility for the Medicare Advantage program.[1] Hirsch. Decl ¶ 5. Because of his specialized expertise regarding CMS's assessment of disclosures like this one, Mr. Hutchinson was in a position to provide critical input to Anthem Legal for use in the Memorandum regarding the internal investigation into filter logic. *See Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 19 (2d Cir. 2020) (attorney-client privilege extends to communications with external consultants retained for the purpose of aiding counsel so long as they are "'necessary, or at least highly useful, for the effective consultation between the client and the lawyer'" (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961))).

---

[1] A version of Anthem's privilege log erroneously identified Mr. Hutchinson as an attorney; while he is affiliated with a law firm and Anthem routinely consulted him to facilitate the rendering of legal advice, Mr. Hutchinson is not an attorney and did not himself provide legal advice to Anthem.

When Ms. Hirsch contacted Mr. Hutchinson requesting his input on the Risk Filtration Memorandum, which she attached to an email, she labeled both the email to Mr. Hutchinson and the attached Memorandum "Confidential Communication Subject to Attorney Client Privilege." Hirsch Decl. ¶ 5, Exs. 1, 1A. Notably, Ms. Hirsch testified that this was not how she usually communicated with Mr. Hutchinson; because of her role as Director of Government Relations, she frequently sought advice from Mr. Hutchinson as a consultant on issues related to policy and government relations. Because she did not consider these inquiries legal advice, she did not label them as such. *Id.* ¶ 7. But because in this specific instance she was sharing a legal document discussing an internal investigation conducted by Anthem Legal, she understood this particular Memorandum to be privileged and labeled it appropriately, *see id.* ¶ 8, and expected her communication with Mr. Hutchinson to be kept confidential. *Id.* ¶ 6. After Mr. Hutchinson provided his input on the Memorandum, Ms. Hirsch emailed Mr. Hutchinson to thank him, reattaching a draft of the Memorandum reflecting his comments. *Id.* ¶ 10, Exs 2, 2A.

Even though the document bears every hallmark of privilege, and even though courts have held that the attorney-client privilege applies when non-lawyers like Mr. Hutchinson are consulted in confidence to facilitate legal advice, *see Sampedro*, 818 F. App'x at 19, Plaintiff nevertheless insists that disclosure of this Memorandum to Mr. Hutchinson was not privileged.

Plaintiff points to no actual facts that undermine Anthem's assertion of privilege. Instead, Plaintiff relies on testimony it elicited from Ms. Hirsch during her deposition in which she was not actually shown any version of the Memorandum. At her deposition, Plaintiff asked Ms. Hirsch generally whether Mr. Hutchinson ever provided her with legal advice, to which she responded no. Hirsch Tr. 66:22-25. Plaintiff later showed Ms. Hirsch her email thanking Mr. Hutchinson for his input on the draft Memorandum—but not the Memorandum itself, nor any other communications that relate to the Memorandum. Hirsch Decl. ¶ 10. Ms. Hirsch testified that she could not recall the purpose of this communication, though she said she did not believe she sent the email to Mr. Hutchinson to seek legal advice from him. Hirsch Tr. 117:11-16. Ms. Hirsch did testify, however, that she recalled instances in which she sent information to Mr. Hutchinson at the direction of Anthem Legal, and it was possible that she had sent this email to Mr. Hutchinson at the direction of Anthem Legal. *Id.* 121:23-122:11.

Plaintiff's argument that the Risk Filtration Memorandum is not privileged relies entirely on these questions asked in isolation to Ms. Hirsch, where she did not have the benefit of the privileged Memorandum or the full documentary record showing the involvement of Anthem Legal. But simply because Ms. Hirsch testified that she did not send the Memorandum to Mr. Hutchinson for purposes of obtaining *legal* advice is irrelevant to the legal analysis where Mr. Hutchinson was providing specialized consulting advice that was "highly useful" for the effective provision of legal advice by Anthem Legal and Ms. Hirsch sought that information from him in coordination with Anthem Legal. *Sampedro*, 818 F. App'x at 19.

More critically, Ms. Hirsch's deposition testimony certainly cannot be dispositive where the witness, after being afforded the opportunity to actually review the document in question and refresh her recollection, believes she sent it to facilitate the rendering of legal advice. And that is exactly what happened here. As her declaration shows, now that Ms. Hirsch has had the opportunity to review the Memorandum and relevant, privileged correspondence relating to it, she has testified that she sent this privileged Memorandum to Mr. Hutchinson for the purpose of

3

obtaining his knowledge and expertise in coordination with Anthem Legal. Hirsch Dec. ¶ 10. Accordingly, the Court should confirm Anthem's privilege assertion over the Memorandum.

### B. Ms. Hirsch's Testimony Changes Nothing About the Redacted Comment Grid

Plaintiff also argues that redacted portions of the Comment Grid cannot be privileged because Ms. Hirsch testified that the document as a whole was not created for the purpose of providing or receiving legal advice. Hirsch Tr. 82:20-85:1. But the testimony on which Plaintiff relies is utterly beside the point. Anthem has not withheld the entire document. It has only redacted the specific portions of the Comment Grid that reflect Anthem Legal's advice or comments that directly responded to that advice. Courts regularly affirm redactions of legal advice in otherwise nonprivileged documents. *See Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 934712, at *2 (S.D.N.Y. Mar. 9, 2017) (promoting redactions of legal advice in hybrid documents). If an attorney-client communication could only be privileged if it was contained in a document created expressly for the purpose of providing or receiving legal advice, there would never be a need for redaction protocols in litigation. The very point of redactions is to protect from discovery attorney-client communications contained in a larger document, even where the remainder of the document does not reflect privileged communications. If the Court adopts Plaintiff's argument, then essentially any input from in-house counsel on any business document—from press releases to operational policies—would be *ipso facto* discoverable. But that is not the law.

But putting this incorrect legal standard aside, the specific testimony upon which Plaintiff relies does not materially alter the record before the Court. The Comment Grid received extensive treatment in the parties' original briefing, including declarations by the actual creator of the document, Danielle Horne, and the Anthem Legal attorney who provided or solicited the redacted comments. Response at 20-23; Declaration of Danielle Horne in Support of Anthem's Opp'n to Mot. to Compel ("Horne Decl."), Dkt. 337; Declaration of Matthew L. Steimel in Support of Anthem's Opp'n to Mot. to Compel ("Steimel Decl."), Dkt. 336. Rather than accept the testimony of the people who actually drafted the documents and comments at issue, Plaintiff now insists that the Court instead rely solely on the testimony of Ms. Hirsch, who was never shown the Comment Grid during her deposition, and who testified she never discussed with Ms. Horne why Ms. Horne circulated the Comment Grid. Tr. 84:7-11; 84:24-85:1.

In contrast, Ms. Horne explained that she "included several members of Anthem Legal on that communication for one purpose: to solicit and facilitate the provision of legal advice to Anthem related to the 2014 Proposed Rule." Dkt. 337 at ¶ 7.[2] And Ms. Hirsch did not dispute in her testimony that Mr. Steimel provided legal advice and asked questions of Anthem business personnel, who then responded to Mr. Steimel's questions to further aid Anthem Legal's analysis. Horne Decl. ¶¶ 3, 6; Steimel Decl. ¶¶ 11-12. Thus, the Court should confirm the propriety of Anthem's redactions in the Comment Grid.

---

[2] Exhibit 1 to the Declaration of Danielle Horne (ANTHEM_SDNY_00094055) is a duplicate of Exhibit 2051 (ANTHEM_SDNY_00118964) shown to Ms. Hirsch. Anthem also previously submitted the at-issue documents in connection with its Response. *See* PRIVID-00000401 (Risk Filtration Memorandum); PRIVID-00001029, PRIVID-00001034 (Comment Grid).

Dated: August 15, 2025

Respectfully submitted,

By: /s/ James A. Bowman

JAMES A. BOWMAN, *Pro Hac Vice*
ADAM LEVINE, *Pro Hac Vice*
HANNAH E. DUNHAM, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jbowman@omm.com
alevine@omm.com
hdunham@omm.com

K. LEE BLALACK, II, *Pro Hac Vice*
ANWAR GRAVES, *Pro Hac Vice*
WILLIAM BUFFALOE, *Pro Hac Vice*
BRIAN D. BOYLE, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
lblalack@omm.com
agraves@omm.com
wbuffaloe@omm.com
bboyle@omm.com

DAVID DEATON, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
ddeaton@omm.com

CHRISTOPHER P. BURKE, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
cburke@omm.com

        JOHN MARTIN, *Pro Hac Vice*
        HEYWARD BONYATA, *Pro Hac Vice*
        **NELSON MULLINS RILEY & SCARBOROUGH LLP**
        1320 Main Street, 17th Floor
        Columbia, South Carolina 29201
        Telephone: (803) 255-9655
        john.martin@nelsonmullins.com
        heyward.bonyata@nelsonmullins.com

        *Attorneys for Defendant Anthem, Inc.*

cc: Assistant United States Attorney Rebecca Sol Tinio, Esq.
    Assistant United States Attorney Peter Max Aronoff, Esq.
    Assistant United States Attorney Charles Salim Jacob, Esq.
    Assistant United States Attorney Adam M. Gitlin, Esq.
    Assistant United States Attorney Dana Walsh Kumar, Esq.
    Assistant United States Attorney Rachael Doud, Esq.
    Assistant United States Attorney Pierre Armand, Esq.
    Trial Attorney Martha Glover, Esq.