UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

UNITED STATES OF AMERICA,

                                        Plaintiff,

                    -against-

ANTHEM, INC.,

                                        Defendant.

-------------------------------------------------------------x

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: _8/22/2025_          │
└─────────────────────────────────┘
```

**20-CV-2593 (ALC) (KHP)**

**OPINION AND ORDER ON
MOTION TO COMPEL
DOCUMENTS WITHHELD AS
PRIVILEGED**

**KATHARINE H. PARKER, United States Magistrate Judge:**

This action concerns claims for violations of the False Claims Act ("FCA"), 31 U.S.C. §

3729 *et seq.* brought by the United States of America ("the Government") against Anthem, Inc.

("Anthem").  The Government now moves to compel production of documents redacted or

withheld by Anthem as privileged.  (ECF No. 318)  For the reasons that follow, the

Government's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Anthem is a Medicare Advantage Organization ("MAO").  It contracts with the Centers

for Medicare and Medicaid Services ("CMS"), a part of the U.S. Department of Health and

Human Services ("HHS"), to offer a variety of private health plan options for individuals eligible

for Medicare Part C programs.[1]  In general, MAOs are paid by the government based on the

reasonable costs incurred delivering Medicare-covered services to plan members.  More

specifically, the government pays the MAO a set rate per person, per year, and the MAO

---

[1] Health plan options can include health maintenance organizations ("HMOs"), provider sponsored associations
("PSOs") and preferred provider organizations ("PPOs").  The vast majority of plans also cover Medicare Part D
prescription drug benefits.

assumes the risk of providing all care for the inclusive amount.  MAOs are required to submit

diagnosis codes applicable to beneficiaries in their plans, which CMS uses to calculate

"capitated" payments to each MAO.  More money is paid to the MAO for plan members with

certain serious illnesses or chronic conditions, such as diabetes or heart disease.

CMS promulgates various regulations and rules applicable to MAOs.  Among other

things, CMS requires MAOs to implement effective compliance programs to ensure that

information submitted to CMS is accurate and truthful to "prevent, detect and correct fraud,

waste and abuse."  *See* 65 Fed. Reg. 40170-01 at 40263 (June 29, 2000); 42 C.F.R. §

422.503(b)(4)(vi).  And, in becoming and remaining an MAO, Anthem entered into contracts

with CMS which included a requirement to delete inaccurate diagnosis codes previously

submitted.  MMC Manual, Chap. 7 § 40 (June 2013).  MAOs submit attestations with their

submissions to CMS that their diagnosis data is "accurate, complete and truthful" according to

their "best knowledge, information and belief."  (Amended Complaint ("AC"), ECF No. 26 at ¶ 4)

In this action, the Government alleges that Anthem knowingly disregarded its duty to

ensure the accuracy of risk adjustment diagnosis data that it submitted to CMS.  In particular,

Anthem utilized a vendor to conduct "retrospective chart reviews."  During these reviews,

conducted after Anthem made a submission of diagnosis data to CMS, the vendor would obtain

medical records from beneficiaries' medical providers.  It would then review the medical

records to identify all diagnosis codes supported by the records to identify and report to CMS

previously unreported health conditions documented in the records.  The exercise was additive

only; meaning, if additional health conditions were identified in the medical records, Anthem

would update CMS and add diagnosis codes with a new certification attesting to the accuracy

and truthfulness of its submission.  The process had the effect of increasing reimbursements to Anthem.  When conducting the retrospective chart reviews and updating CMS, Anthem did not look for or remove previously submitted diagnosis codes that were not supported by the medical records or otherwise correct other types of errors discovered during the review.  The Government contends this additive-only process constituted fraud and resulted in millions of dollars of overpayments by the government to Anthem.  The payment years at issue are 2013 to 2016.  Anthem vigorously denies the allegations of fraud and claims that it complied with applicable law and regulations at all times.  It contends that the Government was well aware of Anthem and other companies' conduct of retrospective chart review and knew and approved of Anthem and other MAOs engaging in an additive-only process.  It asserts that the retrospective chart reviews were consistent with all statutes and applicable regulations.  Additionally, it asserts that to the extent there were errors in its submissions to CMS, they were not material or intentionally false submissions.

From 2014 to 2017, Anthem's Medicare Advantage ("MA") business operated in an environment with multiple FCA investigations, *qui tam* suits (under which Anthem was a defendant or indirectly involved), and U.S. Department of Justice ("DOJ") scrutiny of MAOs' risk adjustment practices.  (ECF No. 339, at 9)  Anthem was named as a defendant or indirectly involved in the following *qui tam* lawsuits under the FCA during this period: *Swoben v. SCAN Health Plan*, 2:09-cv-05013 (C.D. Cal.) ("*Swoben*") – Anthem was initially a named defendant under the name WellPoint, Inc.; *United States ex rel. Silingo v. Wellpoint, Inc.*, 8:13-cv-01348 (C.D. Cal.) ("*Silingo*") – Anthem was a named defendant; *United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, 3:14-cv-00118 (N.D. Tex.) ("*Ramsey-Ledesma*") – Anthem was not a

named defendant, but its external vendor, Censeo Health, was a named defendant; and *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, 2:16-cv-08697 (C.D. Cal.) – Anthem was not a named defendant, but one of its primary competitors, UnitedHealthcare, was a named defendant. (*Id.*, at 9-10)

On December 15, 2016, the DOJ served Anthem with a Civil Investigative Demand ("CID") that initiated the investigation that preceded this lawsuit. (*Id.*, at 10) The CID was related to Anthem's chart reviews and potential overpayments submitted to CMS for risk adjustment under its Medicare program. (*Id.*; Bowman Decl. at ¶ 15) The CID, along with other lawsuits and investigations, prompted Anthem's Legal Department ("Anthem Legal") to issue at least six litigation holds to relevant Anthem employees and external vendors involved in Anthem's MA business operations, instructing them to retain documents related to Anthem's MA risk adjustment program. (ECF No. 339, at 10; Hafey Decl. at ¶¶ 15-17, 24; Ruskin Decl. at ¶¶ 14, 15, 19)

During this same period, CMS issued several new MA program regulations. (ECF No. 339, at 10) Anthem alleges the new regulations increased the risk of DOJ enforcement actions against Anthem. (*Id.*) CMS's 2014 regulatory action included three proposals: (1) a request for public comment on whether to require MAOs to use chart reviews to validate that previously submitted diagnosis codes were documented in medical records; (2) a request to specify the definition of overpayments from the MA program and processes MAOs must follow to identify and return overpayments to CMS; (3) and requiring MAOs to report and return overpayments from the MA program within 60 days of identification. (*Id.*; 42 C.F.R. § 422.326)

Due to Anthem's alleged increased litigation risk, Anthem Legal initiated a number of privileged workstreams and provided legal advice to the impacted MA business units.  (ECF No. 339, at 11; Hafey Decl. at ¶¶ 6, 13; Ruskin Decl. at ¶¶ 15, 16)  Anthem Legal also conducted targeted legal investigations—tracked separately from general business and compliance audits—that examined areas of risk, including those arising from pending litigation.  (ECF No. 339, at 11; Ruskin Decl. at ¶ 7; Steimel Decl. at ¶¶ 8-9)  Moreover, communications and documents were labeled as attorney-client privileged and segregated from audit materials, and counsel was included on communications and given updates from the investigation team.  (ECF No. 339, at 11-12; Steimel Decl. at ¶ 13)  Anthem Legal often worked with outside counsel on these matters, including O'Melveny & Myers LLP ("O'Melveny") and Hogan Lovells LLP.  (ECF No. 339, at 11)

Anthem Legal also utilized technical consultants with expertise in MA risk adjustment data and business practices.  (*Id.* at 12)  In 2014, Anthem Legal retained MMC 20/20, Inc. ("MMC") to investigate a flaw in Anthem's adjustment filtering system (which was supposed to automatically filter out diagnosis codes ineligible for submission to the MA program under certain CMS technical requirements).  (*Id.*; Hafey Decl. at ¶¶ 10-13)  Anthem Legal engaged MMC directly and the workstream was designated as both attorney-client privileged and attorney work product.  (ECF No. 339, at 12)

Anthem claims that every targeted investigation of MA business operations initiated by Anthem Legal followed the Privilege Guidelines.  (*Id.*, at 13; Steimel Decl. at ¶ 8; Ruskin Decl. at ¶¶ 7, 26)  Anthem Legal created the Privilege Guidelines to ensure documents created as part of attorney-directed investigations—such as audit workplans, findings, and related

communications—were treated as privileged and maintained in a manner consistent with the protections afforded under the attorney-client privilege and work product doctrine. (ECF No. 339, at 13)

Documents generated as part of these legally directed reviews were shared only with counsel. (*Id.*; Hafey Decl. at ¶ 27; Steimel Decl. at ¶¶ 10-11; Ruskin Decl. at ¶ 7)  Further, the Privilege Guidelines mandated that MA business investigations be treated as separate and distinct from routine business practices. (ECF No. 339, at 13; Steimel Decl. at ¶ 8; Ruskin Decl. at ¶¶ 7, 26)  The guidelines also required documents pertaining to larger legal investigations to be marked, segregated, and supervised to protect confidentiality. (ECF No. 339, at 13; Ruskin Decl. at ¶ 26)

Anthem Legal also collected comments from Anthem employees to examine the impact of proposed CMS regulations. (ECF No. 339, at 13)  For example, Anthem Legal offered legal advice to MA business units through a "comment grid" related to a proposed CMS overpayment rule. (*Id.*, at 13-14; Steimel Decl. at ¶¶ 6-7)  Anthem alleges the employee comments aided Anthem's analysis of the legal implications of new CMS regulations and assisted Anthem's Public Policy team in drafting Anthem's comments on the proposal. (ECF No. 339, at 13-14; Steimel Decl. at ¶¶ 6-7)

Since the DOJ's investigation commenced in 2016, Anthem has produced over 35,000 documents to the Government. (ECF No. 339, at 14)  Since November 2024, Anthem and the Government have had five meetings where Anthem has provided descriptions of the factual and legal bases for asserting privilege over each challenged document. (*Id.*)  The instant motion, supplemented on August 15, 2025 with arguments related to the deposition testimony

of Leah Hirsch, Anthem's Director of Government Relations for the Executive Branch, as to

three of the documents at issue (ECF No. 395), concerns approximately 70 documents over

which Anthem has asserted attorney-client privilege and/or work product protection. (*Id.*)

These documents relate to the Government's Second and Third Sets of Requests for Production

to Anthem. (ECF No. 318, at 8) The Government challenges Anthem's assertion of privilege

over the documents.

## LEGAL STANDARDS

Motions to compel are "entrusted to the sound discretion of the district court," *United

States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000), cert. *denied*, 531 U.S. 1015, and "[a] trial

court enjoys wide discretion in its handling of pre-trial discovery," *In re Finch, Inc.*, 330 F.3d

104, 108 (2d Cir. 2003) (citations and quotations marks omitted). Although the Government

brings this motion, the party asserting the privilege—here, Anthem—bears the burden of

showing that a given document is privileged. *Walsh v. CSG Partners, LLC*, 544 F.Supp.3d 389,

393 (S.D.N.Y. 2021).

1. *Attorney-Client Privilege*

The attorney-client privilege protects communications between client and counsel made

for the purpose of obtaining or providing legal advice that were intended to be and in fact kept

confidential. *In re County of Erie*, 473 F.3d 413, 418-419 (2d Cir. 2007); *United States v. Constr.

Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). As the U.S. Supreme Court explained

in *Upjohn Co. v. United States*, the privilege encourages full and frank communications between

a client and counsel, which in turn promotes an understanding of and compliance with the law

and the administration of justice. 449 U.S. 383, 389 (1981). The privilege is narrowly

construed, however, because it renders relevant information undiscoverable. *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418.

While in-house lawyers commonly provide legal advice protected by the privilege, they also sometimes provide business advice which is unprotected. *Id.* at 418, 420; *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036-37 (2d Cir. 1984). When determining the predominant purpose of a communication between a company's employees and its in-house lawyers, a court must assess the communication "dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting legal authorities and advice that can be given by a non-lawyer." *In re County of Erie*, 473 F.3d at 420-421; *WCA Holdings III, LLC*, 2025 WL 1434375, at *4 (S.D.N.Y. May 17, 2025). The determination "also may be informed by the overall needs and objectives that animate the client's request for advice." *In re County of Erie*, 473 F.3d at 421. The fact that a lawyer may highlight collateral non-legal risks and costs relating to "expense, politics, insurance, commerce, morals and appearances" or report "what other persons are doing or thinking about the matter" in the course of rendering legal advice does not compromise the privilege so long as the predominant purpose of the communication was to render legal advice. *Id.* at 420.

Courts also have applied the privilege to communications among non-lawyer employees of a corporation where the purpose of the communication was to provide information to counsel or aid counsel in providing legal advice. *Upjohn Co.*, 449 U.S. at 394; *People's United Bank v. PeoplesBank*, No. 08-cv-1858 (PCD), 2009 WL 10689492, at *2 (D. Conn. Dec. 28, 2009); *see also Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988) (attorney-client privilege protects the giving of information from an employee to a superior for transmission to lawyer if

8

made for the purpose of securing legal advice, requested by corporate superior, provided within the scope of the employees' corporate duties and confidentiality maintained).

Generally, attorney-client privilege is waived "if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the mater or communication over which the privilege is claimed." *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 102 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bhd. of Teamsters*, 961 F. Supp. 665, 673 (S.D.N.Y. 1997)); *see also Gruss v. Zwirn*, No. 09-cv-6441 (PGG) (MHD), 2013 WL 3481350, at *11 (S.D.N.Y. July 10, 2013) (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993)); *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000). The scope of the waiver of the attorney-client privilege is determined based on the "fairness doctrine" as described by the Second Circuit in *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987); *see also People v. Bierenbaum*, 748 N.Y.S.2d 563 (N.Y. App. Div. 1st Dep't 2002) (citing *von Bulow*); *Farrow v. Allen*, 608 N.Y.S.2d 1 (N.Y. App. Div. 1st Dep't 1993) (same).

However, there are exceptions to waiver. For example, "an agent, such as a financial advisor, may have communications with an attorney that 'are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer.'" *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 01-CV-8854 (LTS) (THK), 2006 WL 1004472, at *3 (S.D.N.Y. April 18, 2006); *see also United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) ("[T]he inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client."). This exception is commonly called the "translator exception." *United*

*States v. Kovel*, 296 F.2d 918, 920-23 (2d Cir. 1961); *see also People v. Osorio*, 549 N.E.2d 1183

(N.Y. 1989) ("[C]ommunications made to counsel through a hired interpreter, or one serving as

an agent of either attorney or client to facilitate communication, generally will be privileged.")

(citing *Kovel*, 296 F.2d 918.).  "The scope of this exception is not to be defined by a third party's

employment or function, but the party asserting the agency exception must show: (1) a

reasonable expectation of confidentiality under the circumstances, and (2) that disclosure to

the third party was necessary for the client to obtain informed legal advice."  *Homeward*

*Residential, Inc. v. Sand Canyon Corp.*, 12-cv-7319 (JFK) (JLC), 2017 WL 4676806, at *5 (S.D.N.Y.

Oct. 17, 2017) (internal quotation marks omitted) (emphasis added).

Another exception to waiver is the "functional equivalent" doctrine.  This theory

recognizes that an independent contractor of a client may be a de facto employee of the

employer for purposes of privilege.  Under this exception, courts must assess "whether the

consultant had primary responsibility for a key corporate job," the closeness and longevity of

the relationship between the consultant and the company's management and/or leadership on

matters critical to the company's position in litigation, and whether the consultant has

information not possessed by others at the company, whether the consultant served as the

company's representative to third parties, and whether the consultant sought legal advice from

corporate counsel to guide his/her work for the company, among other factors.  *Exp.-Imp. Bank*

*of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005); *Walsh*,

544 F. Supp. 3d at 392; *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*,

352 F. Supp.3d 207, 213 (E.D.N.Y. 2019).  This exception is limited.  Indeed, one court has

observed that if this doctrine "were extended to every situation where a financial consultant

worked exhaustively to guide a company through a restructuring deal, the exception would

swallow the basic rule . . . that there is no privilege protecting communications between clients

and their accountants." *Exp.-Imp. Bank*, 232 F.R.D. at 114.

### 2. *Work Product Doctrine*

"Federal law governs the applicability of the work product doctrine in all actions in

federal court." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (citation

omitted).  Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents and

tangible things prepared by a party or its representative in anticipation of litigation are

protected under the work product doctrine.  *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer*,

No. 00-cv-0738 (JSM), 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (if document "was

prepared 'because of existing or expected litigation'" it is eligible for work product protection)

(quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).

The work product doctrine exists to promote our adversarial system of jurisprudence

and permit attorneys to work "with a certain degree of privacy free from unnecessary intrusion

by opposing parties and their counsel."  *Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947); *see*

*also United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (work product doctrine exists to

"promote the adversary system by safeguarding the fruits of an attorney's trial preparation

from the discovery attempts of an opponent.").  Work product includes (1) opinion work

product, consisting of the mental impressions, conclusions, opinions, and legal theories of an

attorney or other representative of a party which receives heightened protection; and (2) fact

work product, consisting of factual material and subject to disclosure upon a showing of

substantial need and an inability to obtain the equivalent without undue hardship.  *Upjohn Co.*,

449 U.S. at 400; *Hickman*, 329 U.S. at 511; *In re Grand Jury Subpoena Dated July 6, 2005*, 510

F.3d 180, 183-84 (2d Cir. 2007); *Adlman*, 134 F.3d at 1204.

  The key factor in determining applicability of this doctrine is whether the documents or

things were prepared "with an eye toward," "in anticipation of," or "because of the prospect of

litigation." *Hickman*, 329 U.S. at 510-11; *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir.

2015). The Second Circuit has noted that the rule encompasses documents prepared to assist

in the making of a business decision "expected to result in . . . litigation." *Adlman*, 134 F.3d at

1199. For example, if a company is contemplating a corporate transaction and requests an

attorney's assessment of potential litigation and its likely outcome to aid in its business decision

about the transaction, the attorney's strategies and assessments would be opinion work

product protected under the work product doctrine. *Id.* at 1199-1200. The mental impressions

of attorneys are given broad protection under the work product doctrine provided there is

some anticipated litigation or prospect of litigation.

  By contrast, the doctrine does not protect documents created "in the ordinary course of

business or that would have been created in essentially similar form irrespective of the

litigation." *Adlman*, 134 F.3d at 1202. In that instance, a court must determine if the materials

would have been prepared in essentially similar form irrespective of the litigation; if the answer

to this question is "yes," the document is not work product. *See Schaeffler*, 806 F.3d at 43

(citing *Adlman*, 134 F.3d at 1202); *In re Symbol Techs. Inc. Sec. Litig.*, No. 05-cv-3923 (DRH)

(AKT), 2017 WL 1233842, at *8 (E.D.N.Y. Mar. 31, 2017); *Clarke v. J.P. Morgan Chase & Co.*, No.

08-cv-2400 (CM) (DF), 2009 WL 970940, at *7 (S.D.N.Y. Apr. 10, 2009).

Unlike the attorney-client privilege, the work product doctrine is not waived merely because the material is disclosed to a third party. *See, e.g., Adlman*, 134 F.3d at 1200 n.4 (work product may be shown to others "simply because there [is] some good reason to show it" without waiving the protection). Protection is waived only when work product is disclosed to a third party in a manner that is inconsistent with the purpose of the protection. *See In re Steinhardt Partners, L.P.*, 9 F.3d at 235; *In re Symbol Techs.*, 2017 WL 1233842, at *9 (disclosure that substantially increases the opportunities for potential adversaries to obtain the information results in a waiver of work product protection); *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. at 314 (the purpose of the work product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him").

However, as noted above, a court may order production of fact work product upon a showing of "substantial need" by the party seeking the documents. U.*S. Sec. and Exch. Comm'n v. Collector's Coffee Inc.*, 337 F.R.D. 70, 78 (S.D.N.Y. 2020). To make this showing, the party seeking the documents must demonstrate the documents are "essential to the preparation" of the case. *Hickman*, 329 U.S. at 511. The documents must be "crucial to the determination of whether the [party] could be held liable for the acts alleged, or carries great probative value on contested issues." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010). Mere relevance is insufficient to establish substantial need. U.*S. Sec. and Exch. Comm'n*, 337 F.R.D. at 79. Similarly, a desire to use documents for impeachment purposes alone does not establish substantial need. *Id.* There must be a more concrete reason articulated by the party seeking the documents to show substantial need, such as that a document would fill in an important gap in crucial facts or conflict with evidence expected at trial. *Id.*

13

Under Federal Rule of Evidence 502(a), when disclosure of work product or privileged information is made in a federal proceeding, waiver is generally limited to the precise communication or information disclosed.  Fed. R. Evid. 502(a); Fed. R. Evid. 502 Advisory Committee's Note (revd. 11/28/2007).  But the waiver will extend to all undisclosed communications and information if (1) the disclosure was voluntary or intentional, (2) the disclosed and undisclosed information concerns the same subject matter, and (3) in fairness ought to be considered together.  Fed. R. Evid. 502(a); *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *9 (citations omitted).

## DISCUSSION

In its motion to compel, the Government makes four arguments regarding the challenged documents.  (ECF No. 318, at 6-8, 11-27)  First, the Government argues certain "operational" documents are not privileged since they are not attorney-client communications or protected work product.[2]  (*Id.*, at 6, 11-14)  Anthem asserts these documents were prepared under Anthem Legal's supervision for the purpose of providing legal advice and therefore were properly redacted and withheld.  (ECF No. 339, at 8, 31-34)  To the extent that documents, or portions of documents, contain purely operational information, those documents or portions of documents are not privileged and should be produced.  *See Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, No. 95 Civ. 4856 (SS), 1996 WL 474177, at *2 (S.D.N.Y. Aug. 21, 1996) (finding that purely operational content is not privileged).  The Court has reviewed these

---

[2] The documents the Government claims are not privileged because they are operational in nature and do not reflect legal advice or were not drafted by or include an attorney have the following Document IDs: PRIVID-00000046; PRIVID-00000099; PRIVID-00000116; PRIVID-00000139; PRIVID-00000159; PRIVID-00000235; PRIVID-00000236; PRIVID-00000267; PRIVID-00000293; PRIVID-00000309; PRIVID-00000401; PRIVID-00000669; PRIVID-00000790; PRIVID-00000809; and PRIVID-00000914.

14

documents considering the context in which they were created and has made determinations specific to the contents of the documents reviewed. The Court's determinations along with its reasoning are attached to this Opinion and Order in Appendix A.

Second, the Government argues certain documents related to MMC's consulting work are not privileged because the work of MMC was operational and business in nature, and MMC did not assist Anthem's counsel in providing legal advice.[3] (ECF No. 318, at 7, 15-19) The Government further argues that legal advice cannot be given by someone who is not an attorney and claims it has a substantial need for these documents and is unable to obtain the equivalent elsewhere. (*Id.*) Anthem counters that MMC was retained by Anthem Legal to assist with complex legal investigations, as MMC possessed specialized knowledge of the risk adjustment process that Anthem Legal did not. (ECF No. 339, at 7, 21-25) Anthem further alleges Anthem Legal directed MMC's work and relied on MMC's findings to help Anthem navigate pending FCA actions. (*Id.*) In so far as documents, or portions of documents, contain information related to MMC's consulting work that is purely business and operational in nature, those documents or portions of documents are not privileged and should be produced. *See Byrnes v. Empire Blue Cross Blue Shield*, No. 98 Civ. 8520 (BSJ) (MHD), 1999 WL 1006312, at *5 (S.D.N.Y. Nov. 4, 1999) (finding that business and operational information is not privileged even if it was funneled through counsel). The Court has reviewed these documents considering the context in which they were created and has made determinations specific to the contents of

---

[3] The documents the Government claims are not privileged because they relate to work performed by MMC that was operational or business in nature have the following Document IDs: PRIVID-00000099; PRIVID-00000137; PRIVID-00000139; PRIVID-00000145; PRIVID-00000179; PRIVID-00000289; PRIVID-00000294; PRIVID-00000309; PRIVID-00000444; PRIVID-00000452; PRIVID-00000790; PRIVID-00000832; PRIVID-00000856; and PRIVID-00000986.

the documents reviewed.  The Court's determinations along with its reasoning are attached to this Opinion and Order in Appendix A.

Third, the Government argues Anthem improperly redacted certain documents, including an Excel spreadsheet with comments from Anthem employees on new regulations proposed by CMS (regarding overpayments from the MA program), the so-called "comment grid," because they were not created by counsel or created to provide legal advice to Anthem.[4] (ECF No. 318, at 7, 19-21)  The Government notes that Anthem initially produced these documents to the Government without redactions but thereafter clawed them back, and re-produced them with redactions, claiming they were privileged.  (*Id.*)  The Government further argues the spreadsheet at issue was created by a third-party consultant, Avalere Health ("Avalere"), to assist the Anthem Public Policy Department's response to the proposed CMS rules.  (*Id.*)  Additionally, the Government argues that in the event privilege is found, it was waived when the spreadsheet was shared with Avalere and about 150 Anthem employees who had no need for the purported legal advice.  (*Id.*)  Anthem claims this argument is irrelevant because Anthem only redacted information containing legal advice from attorneys or requests for information to aid Anthem Legal in providing legal advice.  (ECF No. 339, at 8, 25-31)  With respect to information contained in the documents and spreadsheet reflecting legal advice or work product by an in-house attorney or communications where "the predominant purpose [is] to . . . obtain or provide legal advice," that information is privileged and may be withheld. *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) (quoting I*n re*

---

[4] The documents the Government claims are not privileged because they relate to Anthem's public policy work, including documents created by, and shared with, Anthem's third-party consultant, Avalere, have the following Document IDs: PRIVID-00000045; PRIVID-00000156; and PRIVID-00000286.

*County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)).  However, the remaining content is not

privileged and should be produced.  The Court has reviewed these documents considering the

context in which they were created and has made determinations specific to the contents of

the documents reviewed.  The Court's determinations along with its reasoning are attached to

this Opinion and Order in Appendix A.

Finally, the Government argues Anthem improperly withheld documents related to

routine audits since the audits were conducted primarily for non-legal purposes.[5]  (ECF No. 318,

at 8, 21-27)  The Government asserts that it cannot readily obtain the substantial equivalent of

these documents by other means and therefore Anthem should produce those documents.

(*Id.*)  Conversely, Anthem argues that the audits were related to legal investigations—initiated

by Anthem Legal in response to an identifiable need for legal advice including active litigation

against Anthem—and were identified as privileged using the Privilege Guidelines.  (ECF No. 339,

at 7, 16-21)  To the extent that the documents, or portions of documents, related to the audits

reflect legal advice or work product by an in-house attorney or where the materials

predominantly convey legal advice, that information is privileged and may be withheld.  *See*

*Pearlstein*, 2019 WL 1259382, at *4 (quoting I*n re County of Erie*, 473 F.3d at 420).  However,

materials created or compiled for an audit are not necessarily privileged unless they meet the

---

[5] The documents the Government claims are not privileged because they relate to non-privileged routine audits have the following Document IDs: PRIVID-00000126; PRIVID-00000127; PRIVID-00000149; PRIVID-00000179; PRIVID-00000232; PRIVID-00000236; PRIVID-00000255; PRIVID-00000467; PRIVID-00000479; PRIVID-00000501; PRIVID-00000511; PRIVID-00000512; PRIVID-00000521; PRIVID-00000530; PRIVID-00000533; PRIVID-00000536; PRIVID-00000540; PRIVID-00000555; PRIVID-00000556; PRIVID-00000560; PRIVID-00000592; PRIVID-00000597; PRIVID-00000610; PRIVID-00000620; PRIVID-00000621; PRIVID-00000668; PRIVID-00000679; PRIVID-00000680; PRIVID-00000685; PRIVID-00000705; PRIVID-00000710; PRIVID-00000722; PRIVID-00000723; PRIVID-00000755; PRIVID-00000760; PRIVID-00000783; PRIVID-00000784; PRIVID-00000787; PRIVID-00000802; PRIVID-00000804; PRIVID-00000806; PRIVID-00000831; PRIVID-00000893; and PRIVID-00000952.

elements of the attorney-client privilege or work product doctrine.  *See, e.g., In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 279-85 (S.D.N.Y. 1995) (finding that the materials related to an audit were not necessarily privileged even though the company foresaw securities fraud litigation; for privilege to apply, they must still meet the element of the attorney-client privilege or work product doctrine).  The Court has reviewed these documents considering the context in which they were created and has made determinations specific to the contents of the documents reviewed.  The Court's determinations along with its reasoning are attached to this Opinion and Order in Appendix A.

## CONCLUSION

For the reasons above and given in Appendix A, the Government's motion is GRANTED in part and DENIED in part.  Anthem shall produce the documents indicated in Appendix A, including duplicates and near duplicates, within two weeks from the date of this opinion. Further, Anthem shall produce a revised privilege log within twenty-one (21) days from the date of this opinion.

DATED: August 22, 2025
     New York, New York

KATHARINE H. PARKER
United States Magistrate Judge

# APPENDIX A

# COURT DETERMINATIONS AS TO SUBMITTED DOCUMENTS

| Document ID | Privilege Claimed | Court Determination | Ordered |
|---|---|---|---|
| PRIVID-00000045 | Attorney-Client | AC privilege does not apply. The "comment grid" in the spreadsheet, which was redacted by Anthem, was not created by counsel and was not created for the predominant purpose of obtaining or providing legal advice. It was created by Avalere, a third-party consultant, primarily to facilitate Anthem's public policy response to CMS and reflects business/ operational information. Indeed, the comments do not appear to seek or provide legal advice, but instead, appear to be impressions for Anthem's government relations team to convey to CMS with respect to the regulations at issue. And even if it was privileged, Anthem has failed to prove that the privilege was not waived when it was sent to at least 150 Anthem employees, many of whom had no need to know the subject matter of any purportedly privileged communications in the document. | Produce in full |
| PRIVID-00000046 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain contains information prepared at the direction of Anthem Legal in anticipation of litigation regarding Anthem's risk adjustment program. No waiver applies. | May be withheld |
| PRIVID-00000099 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document contains information prepared at the direction of Anthem Legal in anticipation of litigation regarding Anthem's risk adjustment program. | Redactions made for privilege are appropriate |

| | | | |
|---|---|---|---|
| | | Privileged communications have been appropriately redacted. No waiver applies. | |
| PRIVID-00000116 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document conveys legal advice regarding Anthem's risk adjustment program. The document also contains information prepared in anticipation of litigation in light of the litigation in *Censeo*. No waiver applies. | May be withheld |
| PRIVID-00000126 | Attorney-Client; Work Product | WP doctrine applies; no need to address AC privilege. This spreadsheet details plans for a claims audit related to coding admitting diagnoses completed under the direction and supervision of Anthem Legal to provide advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000127 | Attorney-Client; Work Product | WP doctrine applies; no need to address AC privilege. This spreadsheet details plans for a claims audit related to coding admitting diagnoses completed under the direction and supervision of Anthem Legal to provide advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000137 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. The redacted slides in this presentation are labeled "Legal Work Product – Confidential and Privileged" and reflect legal analysis related to Anthem's filter logic and were prepared in anticipation of litigation concerning issues with Anthem's filter logic at the direction of Anthem Legal. No waiver applies. | Redactions made for privilege are appropriate |

| PRIVID-00000139 | Attorney-Client; Work Product | AC privilege does not apply; WP doctrine also does not apply. This email chain titled "Weekly Revenue Update" does not contain any attorneys and does not convey any legal advice. It contains purely business/operational information that is not privileged. Anthem has failed to show how this document would have been prepared any differently in light of any purportedly anticipated litigation. *See United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). | Produce in full |
| --- | --- | --- | --- |
| PRIVID-00000145 | Attorney-Client; Work Product | AC privilege applies in part; there is no need to address WP doctrine. This email chain labeled "Privileged and Confidential" contains communications reflecting legal advice regarding the regulations to be applied by MMC with respect to issues related to Anthem's filter logic. Privileged communications have been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000149 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document is labeled "Privileged Attorney-Client Communication Attorney Work Product – Prepared In Anticipation of Litigation" and reflects the legal advice of attorneys Kelly Kappes and Matthew Steimel and was prepared in anticipation of litigation regarding the legal investigation of Anthem's Medicare risk adjustment programs. No waiver applies. | May be withheld |

| PRIVID-00000156 | Not privileged; reproduced without redactions on March 14, 2025 | The Court agrees with Anthem's determination that this document is not privileged. | Produce in full

*The Court notes that this document has already been produced.* |
| PRIVID-00000159 | Attorney-Client; Work Product | AC privilege applies in part; WP doctrine does not apply. This email chain titled "Are we still on track for the delivery of expanded chart review 5/1?" contains only 1 sentence that is protected by the AC privilege – the second sentence of the email dated April 6, 2015, at 10:54 AM from Cahow, Eric E. That sentence may be redacted. Otherwise, the email chain contains purely business/operational information that is not privileged. | Redact and produce in part |
| PRIVID-00000179 | Attorney-Client; Work Product | AC privilege does not apply; WP doctrine also does not apply. This email chain does not contain attorneys and does not reflect legal advice. The email contains purely business/operational information. Further, there is nothing to indicate it was created in anticipation of litigation. | Produce in full |
| PRIVID-00000232 | Attorney-Client | AC privilege applies. This document reflects information assigned to attorneys Daniele Ruskin and Matthew Steimel regarding privileged activities and advice from outside counsel about audit methodologies. Privileged information has been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000235 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document is labeled "Privileged and | May be withheld |

| | | Confidential Attorney Work Product For Purposes of Discussion Only" and contains the legal advice of Daniele Ruskin, an attorney, and was prepared in anticipation of litigation regarding RADV audits. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000236 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document is labeled "Privileged and Confidential Attorney Work Product For Purposes of Discussion Only" and contains the legal advice of Daniele Ruskin, an attorney, and was prepared in anticipation of litigation regarding RADV audits. No waiver applies. | May be withheld |
| PRIVID-00000255 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document is labeled "Privileged and Confidential" and reflects the legal advice of Daniele Ruskin, an attorney, regarding the 2-way look program and was created in anticipation of litigation in light of the litigation in *Swoben*. No waiver applies. | May be withheld |
| PRIVID-00000267 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This presentation was created in anticipation of litigation in light of the litigation in *Swoben*. It also reflects legal advice regarding the 2-way look program. No waiver applies. | May be withheld |
| PRIVID-00000286 | Attorney-Client | AC privilege applies. This draft letter with markups was submitted to Anthem Legal for legal review regarding the proposed changes to CMS rules and regulations. It reflects legal advice from in-house counsel. No waiver applies. | May be withheld |

| PRIVID-00000289 | Attorney-Client; Work Product | AC privilege does not apply; WP doctrine also does not apply. This email chain does not contain attorneys and does not reflect legal advice. The email contains purely business/operational information. Further, there is nothing to suggest it was created in anticipation of litigation. Anthem has also failed to show how this email would have been drafted any differently in light of any purportedly anticipated litigation. *See United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). | Produce in full |
|---|---|---|---|
| PRIVID-00000293 | Attorney-Client; Work Product | This email chain was prepared in anticipation of litigation and reflects the legal advice of O'Melveny & Myers regarding changes to the process for RADV audits. Privileged communications have been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000294 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain contains information prepared at the direction of Anthem Legal in anticipation of litigation regarding Anthem's chart review methodology. Privileged communications have been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000309 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. The redacted slide in this presentation contains information for discussion with O'Melveny & Myers regarding its legal analysis of Anthem's risk adjustment program and was prepared in | Redactions made for privilege are appropriate |

| | | anticipation of litigation concerning issues with Anthem's filter logic. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000401 | Attorney-Client | AC privilege does not apply. The author of the document, Brian Matthew Cogdill, is a non-attorney. Further, Leah Hirsch, also a non-attorney, sent the document to Thomas Hutchinson, a non-attorney government relations consultant. Hirsch testified that she was "not seeking any legal advice from Mr. Hutchinson" when she sent him the document. There is nothing to suggest the document was create for the purpose of obtaining or providing legal advice. To the contrary, it appears the document was created to obtain advice regarding government relations. And even if the document was initially protected by the AC privilege, the privilege was waived when it was shared with Hutchison who did not need to know the subject matter of any purportedly privileged communications in the document. Anthem does not argue that this document is protected by the WP doctrine, so the Court does not address it. | Produce in full |
| PRIVID-00000444 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain contains information prepared at the direction of Anthem Legal in anticipation of litigation regarding Anthem's chart review methodology. Privileged communications have been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |

| PRIVID-00000452 | Attorney-Client | AC privilege applies. This document reflects information for discussion with Thomas Zielinski, an attorney, for the purpose of seeking legal advice concerning audit findings related to Anthem's non-risk adjustment compliance programs. No waiver applies. | Redactions made for privilege are appropriate |
|---|---|---|---|
| PRIVID-00000467 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This spreadsheet prepared in anticipation of litigation and in connection with compliance audits directed by attorneys Kelly Kappes and Matthew Steimel. It is attached to an email cc'ing Anthem Legal's in-house attorneys, containing data related to an audit that was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000479 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document reflects the legal advice of Matthew Steimel, an attorney, on Anthem's risk adjustment program and contains a meeting summary prepared in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000501 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel-Internal Distribution Use Only" and was created in anticipation of litigation in light of the litigation in *Censeo*. It was directed and supervised by Anthem Legal to provide legal | May be withheld |

| | | advice on FCA liability in anticipation of litigation. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000511 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This spreadsheet was prepared in anticipation of litigation and in connection with a claims audit directed by Anthem Legal. It was attached to an email cc'ing Anthem Legal's in-house attorneys and was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000512 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document was prepared in anticipation of litigation and in connection with a claims audit directed by Kelly Kappes, an attorney. No waiver applies. | May be withheld |
| PRIVID-00000521 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This spreadsheet was prepared in anticipation of litigation and at the direction of Anthem Legal in connection with the chart review analysis. It was attached to an email cc'ing Anthem Legal's in-house attorneys, containing the medical records to be collected for an audit that was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000530 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This presentation was created in anticipation of litigation and submitted to Matthew Steimel, an attorney, for legal advice in connection with | May be withheld |

| | | the assessment of a claims audit. It was attached to an email cc'ing Anthem Legal's in-house attorneys, detailing the results, next steps, and legal advice regarding an audit of Censeo that was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000533 | Attorney-Client; Work Product | WP doctrine applies; no need to address the AC privilege. This spreadsheet was created in anticipation of litigation and prepared at the direction of Anthem Legal in connection with the chart review analysis. It was attached to an email cc'ing Anthem Legal's in-house attorneys, containing the medical records to be collected for an audit that was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000536 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address the AC privilege. This spreadsheet was created in anticipation of litigation and in connection with a claims audit directed by Anthem Legal. It was attached to an email cc'ing Anthem Legal's in-house attorneys, containing the medical records to be collected for an audit that was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |

| PRIVID-00000540 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel Confidential – Internal Distribution Use Only" and seeks legal advice from attorneys Daniele Ruskin, Matthew Steimel, and Kelly Kappes regarding the legal investigation of Anthem's Medicare risk adjustment programs. It was created in anticipation of litigation with respect to those programs. No waiver applies. | May be withheld |
| --- | --- | --- | --- |
| PRIVID-00000555 | Attorney-Client; Work Product | WP doctrine applies; no need to address AC privilege. This document was prepared in anticipation of litigation and at the direction of Kelly Kappes, an attorney, regarding the legal investigation of Anthem's Medicare risk adjustment programs. No waiver applies. | May be withheld |
| PRIVID-00000556 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This spreadsheet was prepared in anticipation of litigation and in connection with a claims audit directed by Anthem Legal. It contains member medical records to be collected for an audit that was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000560 | Attorney-Client | AC privilege applies. This document reflects information provided at the direction of attorneys Kelly Kappes and Matthew Steimel in connection with assessment of RADV audits | May be withheld |

| | | | |
|---|---|---|---|
| | | and seeks legal advice on related topics. No waiver applies. | |
| PRIVID-00000592 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document is labeled "99211 Audit - Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel" and seeks legal advice from attorneys Kelly Kappes and Matthew Steimel regarding the legal investigation of Anthem's Medicare risk adjustment programs. It was also created in anticipation of litigation with respect to these programs. No waiver applies. | May be withheld |
| PRIVID-00000597 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel" and was prepared in anticipation of litigation and at the direction of attorneys Kelly Kappes and Matthew Steimel regarding requirements for the compliance audit methodology. It contains information on audits directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000610 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain is titled "RE: Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel: Audit List Data Elements" and copies Anthem Legal, including attorney Matthew Steimel. It contains information regarding | May be withheld |

| | | requirements for a claims audit directed by Matthew Steimel to provide advice on FCA liability in anticipation of litigation. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000620 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain is titled "SECURE Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel: 99211" and copies Anthem Legal, including attorney Matthew Steimel. It contains information regarding requirements for a claims audit directed by Matthew Steimel to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000621 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This spreadsheet contains the results of an audit that was directed and supervised by the Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. Attorney Matthew Steimel was cc'd on the email in which this spreadsheet was attached. No waiver applies. | May be withheld |
| PRIVID-00000668 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain titled "SECURE: Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel: Censeo Audit_ChaseList_072215 .csv" copies Anthem Legal's in-house attorneys. It discusses Anthem's collection of data for an audit of Censeo directed and supervised by | May be withheld |

| | | | |
|---|---|---|---|
| | | Anthem Legal to provide advice on FCA liability in anticipation of litigation. No waiver applies. | |
| PRIVID-00000669 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This email chain titled "FW: Confidential Communication Subject to Attorney Client Privilege: Censeo Health" contains requests for legal advice from cc'd attorneys Kelly Kappes and Matthew Steimel regarding an audit and was sent in anticipation of litigation in light of the litigation in *Censeo*. No waiver applies. | May be withheld |
| PRIVID-00000679 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This chart was prepared in anticipation of litigation and in connection with compliance audits directed by attorneys Kelly Kappes and Matthew Steimel. The chart was embedded in an internal email chain marked Privileged, copying all of Anthem Legal's in-house attorneys, and discussing the implementation of an audit directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000680 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain titled "RE: Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel: Admitting Diagnosis" copies attorneys Daniele Ruskin, Matthew Steimel and Kelly Kappes. It was sent in anticipation of litigation and prepared in connection with claims audit directed by attorneys Daniele Ruskin and | May be withheld |

| | | Matthew Steimel. It discusses the implementation of an audit directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000685 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This spreadsheet was prepared in anticipation of litigation and in connection with compliance audits directed by attorneys Kelly Kappes and Matthew Steimel. It contains information about medical records to be collected as part of an audit directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. The spreadsheet was attached to an email chain marked Privileged and cc'ing Anthem Legal's in-house attorneys. No waiver applies. | May be withheld |
| PRIVID-00000705 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This email chain is titled "RE: Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel Audit_ChaseList_072215.csv" and was prepared at the direction O'Melveny & Myers regarding the legal analysis of Anthem's risk adjustment programs to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000710 | Attorney-Client; Work Product | AC privilege applies; there is no need to address WP doctrine. This email contains the legal advice of O'Melveny & Myers regarding its | Redactions made for privilege are appropriate |

| | | legal analysis of Anthem's risk adjustment program. Privileged communications have been appropriately redacted. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000712 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document was prepared in anticipation of litigation and in connection with a claims audit directed by Anthem Legal. It is attached to an email directed to Anthem Legal's in-house attorneys that relates to an audit that was directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000722 | Attorney-Client; Work Product Compilation | WP doctrine applies; there is no need to address AC privilege. This document is labeled "Privileged & Confidential Attorney-Client Privileged Legal Investigation Directed By Counsel" and was gathered in anticipation of litigation and at the request of O'Melveny & Myers in connection with its review of Anthem's compliance activities. The document was attached to an email marked Privileged between Anthem Legal and O'Melveny & Myers. No waiver applies. | May be withheld |
| PRIVID-00000723 | Attorney-Client; Work Product Compilation | WP doctrine applies but was waived; there is no need to address AC privilege. This document was gathered in anticipation of litigation and at the request of O'Melveny & Myers in connection with its review of Anthem's compliance activities. As indicated by the parties, a duplicate of this document, with | Produce in full<br><br>*The Court notes that this document has already been produced.* |

| | | beginning Bates stamp ANTHEM_SDNY_ 00177310, was produced on April 4, 2025. | |
|---|---|---|---|
| PRIVID-00000755 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel-Internal Distribution Use Only" and is addressed to attorney Matthew Steimel. It was created in anticipation of litigation and provides information regarding a claims audit directed by Matthew Steimel. It summarizes the results of an audit of Censeo directed and supervised by Anthem Legal to provide legal advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000760 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel Confidential – Internal Distribution Use Only" and is addressed to attorneys Daniele Ruskin and Matthew Steimel. It was prepared in anticipation of litigation and provides information in connection with a claims audit directed by Daniele Ruskin and Matthew Steimel. It summarizes the results of an audit directed and supervised by Anthem Legal to provide advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000783 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document is labeled | May be withheld |

| | | "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel" and contains a meeting summary prepared in anticipation of litigation regarding requirements for claims audit directed by Matthew Steimel. It contains information on audits directed and supervised by Anthem Legal to provide advice on FCA liability in anticipation of litigation. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000784 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This presentation is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel" and was prepared in anticipation of litigation and in connection with claims audit directed by attorneys Kelly Kappes and Matthew Steimel. It summarizes the results of several audits directed and supervised by Anthem Legal to provide advice on FCA liability in anticipation of litigation. No waiver applies. | May be withheld |
| PRIVID-00000787 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel" and contains a meeting summary created in anticipation of litigation and providing information for discussion with attorneys Kelly Kappes and Matthew Steimel regarding a claims audit. No waiver applies. | May be withheld |
| PRIVID-00000790 | Attorney-Client | AC privilege applies in part. The document reflects legal advice from outside counsel | Redactions made for privilege are appropriate |

| | | regarding strategy related to the adoption of 2-way look program in light of the litigation in *Swoben*. Privileged communications have been appropriately redacted. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000802 | Attorney-Client | AC privilege applies. This spreadsheet contains information included at the direction of Daniele Ruskin and Matthew Steimel regarding their legal analysis of Anthem's risk adjustment program. Specifically, it includes the legal topics that Daniele Ruskin is going to present which reflect her legal advice and explicitly referencing advice from O'Melveny & Myers. Privileged information has been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000804 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This document is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel" and was prepared in anticipation of litigation at the direction of attorneys Daniele Ruskin and Matthew Steimel. It discusses the status of the Medicare Risk Adjustment compliance audits. No waiver applies. | May be withheld |
| PRIVID-00000806 | Attorney-Client; Work Product | AC privilege applies; there is no need to address WP doctrine. This document is labeled "Privileged & Confidential Attorney-Client Privileged" and provides information for discussion with O'Melveny & Myers and Daniele Ruskin in connection with Anthem's risk adjustment program. It contains the legal topics that Daniele Ruskin is going to present, | Redactions made for privilege are appropriate |

| | | reflecting her legal advice and explicitly referencing advice from O'Melveny & Myers. Privileged information has been appropriately redacted. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000809 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document marked "Privileged & Confidential Attorney-Client Privileged" was prepared in anticipation of litigation at the direction of Anthem Legal and contains legal advice from O'Melveny & Myers regarding Anthem's risk adjustment program. No waiver applies. | May be withheld |
| PRIVID-00000831 | Attorney-Client; Work Product | AC privilege applies; WP doctrine also applies. This document was created in anticipation of litigation related to issues with its filter logic and conveys legal advice of Anthem Legal regarding engagement of consultants for Medicare Risk Adjustment chart review analysis. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000832 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This spreadsheet contains portions that were created in anticipation of litigation and provide information at the direction of Anthem Legal regarding risk adjustment data gathering, reporting, and/or use. Privileged information has been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000856 | Attorney-Client; Work Product | WP doctrine applies; no need to address AC privilege. This spreadsheet was created in anticipation of litigation and was attached to a parent email from Daniele Ruskin, an attorney, | May be withheld |

| | | forwarding documents received from O'Melveny & Myers, who received the documents from a consultant as part of their oversight work directed by O'Melveny & Myers. No waiver applies. | |
|---|---|---|---|
| PRIVID-00000893 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This spreadsheet is labeled "Privileged & Confidential; Attorney-Client Privileged; Legal Investigation Directed By Counsel" and was prepared in anticipation of litigation and at the direction of Amy Hafey, an attorney, regarding the legal investigation of Anthem's Medicare risk adjustment programs. No waiver applies. | May be withheld |
| PRIVID-00000914 | Attorney-Client; Work Product | AC privilege applies in part; there is no need to address WP doctrine. This document contains communications reflecting the legal advice of Daniele Ruskin, an attorney, regarding the impact of the litigation in *Swoben* and potential litigation regarding Anthem's risk adjustment program. Privileged communications have been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000952 | Attorney-Client | AC privilege applies. This presentation conveys legal advice of attorneys Daniele Ruskin and Matthew Steimel regarding legal implications and next steps concerning risk adjustment data gathering, reporting, and/or use. Privileged information has been appropriately redacted. No waiver applies. | Redactions made for privilege are appropriate |
| PRIVID-00000986 | Attorney-Client; Work Product | WP doctrine applies; there is no need to address AC privilege. This presentation was | Redactions made for privilege are appropriate |

| | | | |
|---|---|---|---|
| | | created in anticipation of litigation regarding filter logic issues and reflects the legal advice of Anthem Legal regarding the engagement of consultants for the Medicare Risk Adjustment chart review analysis. Privileged information has been appropriately redacted. No waiver applies. | |
| PRIVID-00001029 | Attorney-Client; Work Product | AC privilege does not apply; WP doctrine also does not apply. The "comment grid" in the spreadsheet, which was redacted by Anthem, was not created by counsel, was not created for the predominant purpose of obtaining or providing legal advice, and was not created in anticipation of litigation. It was created by Avalere, a third-party consultant, primarily to facilitate Anthem's public policy response to CMS and reflects business/operational information. Indeed, Leah Hirsch testified that the "comment grid" was "not for legal advice," but instead, was for Danielle Horne, Anthem's public policy director, to "understand[] the business's views on the proposed [CMS] rule." She added that the "comment grid" was in a "typical email" that the policy team would send out when a rule is promulgated by CMS "to get feedback and input from the business." And even if it was privileged, Anthem has failed to prove that the privilege was not waived when it was sent to at least 150 Anthem employees, many of whom had no need to know the | Produce in full |

| | | subject matter of any purportedly privileged communications in the document. | |
|---|---|---|---|
| PRIVID-00001034 | Attorney-Client; Work Product | AC privilege does not apply; WP doctrine also does not apply. The "comment grid" in the spreadsheet, which was redacted by Anthem, was not created by counsel, was not created for the predominant purpose of obtaining or providing legal advice, and was not created in anticipation of litigation. It was created by Avalere, a third-party consultant, primarily to facilitate Anthem's public policy response to CMS and reflects business/operational information. Indeed, Leah Hirsch testified that the "comment grid" was "not for legal advice," but instead, was for Danielle Horne, Anthem's public policy director, to "understand[] the business's views on the proposed [CMS] rule." She added that the "comment grid" was in a "typical email" that the policy team would send out when a rule is promulgated by CMS "to get feedback and input from the business." And even if it was privileged, Anthem has failed to prove that the privilege was not waived when it was sent to at least 150 Anthem employees, many of whom had no need to know the subject matter of any purportedly privileged communications in the document. | Produce in full |