

| | | |
|---|---|---|
| O'Melveny & Myers LLP<br>1625 Eye Street, NW<br>Washington, DC 20006-4061 | T: +1 202 383 5300<br>F: +1 202 383 5414<br>omm.com | File Number: |

October 1, 2025

**Anwar Graves**
D: +1 202 383 5191
agraves@omm.com

<u>**VIA ELECTRONIC DELIVERY AND COURT FILING**</u>

The Honorable Katharine H. Parker
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, New York 10007

Re:   <u>*United States v. Anthem, Inc.*, 1:20-cv-02593-ALC-KHP</u>

Dear Judge Parker:

We represent Defendant Anthem, Inc. ("Anthem") in the above-referenced action. Pursuant to the Court's September 3, 2025 Order (Dkt. 403), we write in response to Plaintiff's letter of September 17, 2025 (Dkt. 405) ("Plaintiff's Letter") concerning Plaintiff's assertion of privilege over three documents that it produced to Anthem and subsequently clawed back during depositions. Plaintiff has not met its burden of showing that the documents Plaintiff has redacted for privilege reflect the provision of, or request for, legal advice.

As the Court has already explained in its order on Plaintiff's recent challenge to Anthem's privilege assertions, "attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that were intended to be and in fact kept confidential." 8/22/25 Opinion (Dkt. 400) (the "Opinion") at 7 (citing *In re Cty. of Erie*, 473 F.3d 413, 418-19 (2d Cir. 2007); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). Communications among non-lawyers are protected by the privilege only where "the purpose of the communication was to provide information to counsel or aid counsel in providing legal advice." *Id.* at 8 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)). Passing references to attorneys by non-lawyers, personal views expressed by non-lawyers to other non-lawyers in response to attorney comments, or speculation by non-lawyers about how attorneys may react to certain scenarios are not protected by the privilege. *See United States ex rel. Thomas v. Duke Univ.*, 2018 WL 4211375, at *10 (M.D.N.C. Sept. 4, 2018) (holding that mere references to counsel involvement and speculative comments by non-lawyers are not privileged). Where only portions of a document reflect legal advice, only those portions may be withheld; any redactions must be surgically applied so that the redactions do not encompass communications *not* reflecting privilege. *See In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) (attorney-client privilege should be "strictly confined within the narrowest possible limits consistent with the logic of its principle.").

Despite this guidance from the Court, Plaintiff has clawed back and subsequently produced in redacted form three previously produced emails[1] on the grounds that they all reflect legal advice, or a request for legal advice, from attorneys within the Office of the General Counsel ("OGC") at the Centers for Medicare and Medicaid Services ("CMS"). But these three emails reflect communications among CMS staff who are neither attorneys nor employed by the OGC. Indeed, not one OGC attorney appears on any portion of any challenged email, and none of these documents bear any markings demonstrating that OGC attorneys reviewed or provided any comments on the substance of the documents. Therefore, as the Court articulated in its Opinion, such redactions are only appropriate where "the purpose of the communication was to provide information to counsel or aid counsel in providing legal advice." Opinion at 8 (citing *Upjohn*, 449 U.S. at 394). These documents demonstrably do not meet that *Upjohn* standard, nor are they consistent with how the Court has already applied that standard to Anthem's documents in this case.

The first document, US_014680774-76 (the "Reg Text Document"), is an email in which non-attorney staff at CMS discuss possible language for a new regulation that would subsequently be proposed a few months later (the "2014 Proposed Rule"). The unredacted portions of the document make abundantly clear that the "predominant purpose of the communication [wa]s [not] to render or solicit legal advice" and that the portions of the document that Plaintiff redacted do not all reflect the OGC's legal advice. *Clarke v. J.P. Morgan Chase & Co.*, 2009 WL 970940, at *4 (S.D.N.Y. Apr. 10, 2009) (citing *In re Cty. of Erie*, 473 F.3d at 420). The redacted sentence is preceded by the statement, "[t]his is *my* first crack at this language," and shortly after the redacted portion ends, the author then writes, ***"[d]o we ask OGC*** for their view of this approach before or after we talk to [our supervisor]?" *See* US_014680775 (emphasis added). The plain language of this document demonstrates that a CMS employee was proposing language for a new regulation and inquiring as to the timing of when this language should be shared with OGC. And the replies to that email do not even contain a response to that inquiry but rather concern the timing of when the draft regulation will be provided to policy officials at CMS. Therefore, "it could reasonably be concluded that the e-mail was distributed [] not for the purpose of conveying [or seeking] counsel's advice, but rather for the purpose of beginning an effectuation of a [] policy change. If that is the case, then it is another reason why the e-mail should not be considered privileged." *Clarke*, 2009 WL 970940, at *4.

---

[1] Plaintiff devotes a considerable portion of its Letter to repeating an argument it made at the July case management conference, which the Court should no more entertain now than it did in July: that Anthem is not entitled to dispute the assertion of privilege over any document that Plaintiff claws back because a document that was originally produced in *United States ex rel. Poehling v. UnitedHealth Group*, 16-cv-08697 (C.D. Cal.) ("*Poehling*") and then subsequently produced to Anthem suddenly becomes "not produced" when one of Plaintiff's attorneys here belatedly asserts privilege over the produced document. Pl.'s Letter at 1-2. Plaintiff's argument ignores the plain meaning of the word "produced," and, unsurprisingly, Plaintiff has not cited to any case in support of its novel position. The Court should reject Plaintiff's brazen effort to grant itself an unreviewable veto over a challenge to the assertion of privilege for any *Poehling* document it produced to Anthem. Basic principles of fairness require that this Court reserve the authority to resolve any privilege dispute over documents Plaintiff produced to Anthem in compliance with this Court's orders of March 13, 2024 (Dkt. 190) and April 10, 2024 (Dkt. 200).

Plaintiff's Letter, however, states that the redaction relates to a sentence which purportedly reflects OGC's views and another sentence containing the author's "reflect[ion] on the advice from legal counsel in drafting a section, and is attempting to conform her drafting with that advice." Pl.'s Letter at 2-3. Accordingly, if this Court determines that this email was distributed for the purpose of conveying counsel's advice, then only the first sentence should be redacted since a non-attorney's "further reflect[ion]" on, or strategic decision-making in reaction to, legal advice is not privileged. *See United States v. Krug*, 868 F.3d 82, 87 (2d. Cir. 2017) (finding that non-attorney communications were not protected by the attorney-client privilege "[n]otwithstanding that the lawyers for the defendants were nearby and had recently been in communication with their clients" since "the excluded statements were not made for the purpose of obtaining legal advice from a lawyer," were not intended to "share [] advice given from a lawyer," nor were they made "to facilitate a communication with a lawyer."); *Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 1996 WL 474177, at *2 (S.D.N.Y. Aug. 21, 1996) ("[T]o the extent that a document, in whole or in part, deals with the operations of [the party asserting privilege], that portion will not be covered by the attorney-client privilege even if the underlying policy is shaped by advice of counsel.").

The other two documents, US_014680924 and US_14683010 (the "OMB Documents") are two variations of the same email reflecting communications among non-attorneys at CMS discussing questions from the U.S. Office of Management and Budget ("OMB") about the 2014 Proposed Rule. The email also references a CMS subdivision called the Center for Public Integrity ("CPI"). Again, no OGC attorneys are involved in the communications, nor do the unredacted portions of the document bear any markings indicating that OGC attorneys reviewed or provided comments in the document. Like the Reg Text Document, the OMB Documents bear hallmarks of—at best—over-redaction of communications that do not meet the standard for privilege.

For example, Plaintiff has redacted a sentence drafted by CMS official Whitney Johnson in US_014680926 that purports to provide "draft responses to OMB questions," with a series of bolded and numbered questions, and listing proposed responses underneath each question. The redaction appears to be of Question 1 while the response to Question 1 is not redacted. In its Letter, Plaintiff seemingly references the redaction of Question 1 where it argues that "something under active consideration by OGC" is redacted. Pl.'s Letter at 3. But, even if that characterization were true, the substance of nonprivileged communications amongst CMS officials—like a factual question that OMB sent to CMS—does not suddenly become privileged simply because it was subsequently sent to OGC.[2] *See United States v. Walker*, 243 F. App'x 621, 623 (2d. Cir. 2007) ("The attorney-client privilege protects from disclosure the contents of confidential attorney-client communications, but does not prevent disclosure from the client's records the underlying factual information included in attorney-client communications."). This redaction is therefore inappropriate.

The context of the communication also demonstrates that Plaintiff has misread this document since it believes that it "reflects what agency lawyers were asking and how the agency

---

[2] At best, Plaintiff could arguably redact whichever portion of the text indicates OMB's question was being considered by OGC, though not the question itself. But Plaintiff has necessarily disclosed this fact already in order to explain and defend it, rendering any privilege assertion moot.

staffers were responding to those requests from counsel" when it is abundantly clear that agency personnel were responding to questions posed by OMB officials, not lawyers within CMS's OGC. Pl.'s Letter at 3.  Indeed, as mentioned *supra*, Whitney Johnson begins the correspondence by providing draft responses to OMB's questions concerning the 2014 Proposed Rule.  The second question listed is "A102: Reasonable Diligence: Is this defined somewhere?"  *See* US_014680926.  The remainder of the email contains a discussion between the CMS officials included on the email, none of whom are attorneys, concerning the answer to this OMB question.  Plaintiff's Letter offers no explanation for why OMB's first factual question to CMS was privileged but its second factual question was not.

Plaintiff inexplicably asserts that it redacted a portion of John Scott's response in US_014680925-26 because it "reflects what agency lawyers were asking and how the agency staffers were responding to those requests from counsel." Pl.'s Letter at 3.  But, as Johnson notes in US_014680925, these ***were not*** questions from agency counsel; they were instead questions from OMB officials to CMS staff.  Furthermore, and like the Reg Text Document, it is clear that "the e-mail was distributed [] not for the purpose of conveying counsel's advice, but rather for the purpose of beginning an effectuation of a [] policy change"; therefore, it "should not be considered privileged." *Clarke*, 2009 WL 970940, at *4.  But if this Court determines that it was distributed for the purpose of conveying counsel's advice, then only that specific advice should be withheld.  Plaintiff should not be permitted to withhold non-attorney commentary concerning that advice, operational decision-making applying that advice, or any other language that is untethered to the solicitation or rendering of legal advice.  *See Krug*, 868 F.3d at 87; *Bank of NY*, 1996 WL 474177, at *2.  The same principles apply to the redactions in US_014683010.

Given that Plaintiff's erroneous redactions are apparent even without the benefit of reviewing the substance of the redactions, Plaintiff has failed to meet its burden of showing here that its redactions are narrowly restricted to the provision or solicitation of legal advice.  Statements that refer to OMB or CPI instead of OGC bear no indicia of privilege, nor does language proposing responses to OMB's factual questions.  And as with the Reg Text Document, questions speculating about *whether* to ask OGC questions, how OGC might respond to certain questions, or non-attorney work product informed by—but not describing or seeking—attorney advice would similarly not be privileged.

Just weeks ago, in its Opinion, the Court considered a very similar set of issues in connection with redactions of documents over which Anthem had asserted privilege, and concluded that Anthem could *not* maintain the privilege over those redactions.  Specifically, the Court examined a series of statements in a "comment grid" by non-lawyer Anthem employees incorporating and then responding to prior comments from Anthem attorneys interpreting the as-published 2014 Proposed Rule.  The Court concluded that, while documents reflecting the comments of Anthem attorneys were privileged, any subsequent comments by non-lawyers incorporating those attorney comments and providing further responses were *not* privileged and could not be redacted.  *See* Opinion at 16-17.

The same reasoning applies here, except that Anthem's attorneys were indisputably involved in providing comments on the documents over which Anthem asserted privilege; by contrast, there is no evidence that any OGC attorneys actually read or commented on any of the

email correspondence over which Plaintiff has belatedly asserted privilege. Consistent with how the Court ruled on Anthem's assertion of privilege over the comment grid documents, the Court should also hold that statements by non-attorneys are not privileged where they do not reveal or seek legal advice, even if the comments are informed by the prior input of an attorney.

And to the extent that Plaintiff *did* correctly assert privilege over these documents, Plaintiff's "extreme carelessness" in producing privileged communications is enough "to suggest that it [is] not concerned about the protection of privilege." *MTA v. Duffy*, 782 F. Supp. 3d 193, 200-01 (S.D.N.Y. 2025); *see also Irth Sols., LLC v. Windstream Commc'ns LLC*, 2017 WL 3276021, at *13–14 (S.D. Ohio Aug. 2, 2017) (finding waiver of privilege where counsel twice produced documents that contained privileged communications). Despite the Court's admonition at the initial case management conference in April 2023 that "I don't want to have a dispute coming up about clawbacks a week before a deposition when the parties have planned things. That, you know, can create a lot of issues in these kinds of cases," (4/11/23 Tr. 37:21-38:2), Plaintiff has relied entirely on Anthem to conduct Plaintiff's privilege review; waiting until the middle of depositions of CMS witnesses to claw back *each* of the disputed documents even though these documents have now been produced over many years in three separate lawsuits filed by the United States: *Poehling, Anthem,* and *United States ex rel. Taylor v. Kaiser Permanente, et. al.*, 3:21-cv-03894 (N.D. Cal). Plaintiff apparently takes the view that it has no obligation to review its own productions in good faith to identify inadvertently produced documents over which it wishes to assert privilege—despite the ample notice these documents have given it—and instead seems content to simply wait until Anthem attorneys are in the middle of their deposition examinations of CMS witnesses to assert privilege over documents for the first time. This practice only invites more privilege disputes and the increased possibility that depositions must be held open and continued once those disputes are resolved. Such disruptive lassitude suggests Plaintiff is not concerned about protection of its privilege, and thus supports a finding of waiver. To be clear, Anthem is not arguing that Plaintiff has made a broad subject matter waiver of topics associated with CMS staff discussions with OGC. But had Plaintiff conducted even the most rudimentary privilege review upon learning that it might have disclosed privileged documents to Anthem, that review would likely have uncovered these documents well before Anthem presented them to CMS witnesses in the midst of depositions.

In light of the above, Anthem respectfully requests that the Court reject Plaintiff's baseless assertions of privilege over the three clawed back documents.

Dated: October 1, 2025	Respectfully submitted,

By: */s/ Anwar Graves*

ANWAR GRAVES, *Pro Hac Vice*
K. LEE BLALACK, II, *Pro Hac Vice*
WILLIAM BUFFALOE, *Pro Hac Vice*
BRIAN DAVID BOYLE
BENJAMIN D. SINGER
RAHUL KOHLI, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
agraves@omm.com
lblalack@omm.com
wbuffaloe@omm.com
bboyle@omm.com
bsinger@omm.com
rkohli@omm.com

JAMES A. BOWMAN, *Pro Hac Vice*
ADAM LEVINE, *Pro Hac Vice*
HANNAH E. DUNHAM, *Pro Hac Vice*
SHELBY CUMMINGS, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jbowman@omm.com
alevine@omm.com
hdunham@omm.com
scummings@omm.com

DAVID DEATON, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
ddeaton@omm.com

      CHRISTOPHER P. BURKE, *Pro Hac Vice*
      **O'MELVENY & MYERS LLP**
      1301 Avenue of the Americas, Suite 1700
      New York, New York 10019
      Telephone: (212) 326-2000
      Facsimile: (212) 326-2061
      cburke@omm.com

      JOHN MARTIN, *Pro Hac Vice*
      HEYWARD BONYATA, *Pro Hac Vice*
      **NELSON MULLINS RILEY & SCARBOROUGH LLP**
      1320 Main Street, 17th Floor
      Columbia, South Carolina 29201
      Telephone: (803) 255-9655
      john.martin@nelsonmullins.com
      heyward.bonyata@nelsonmullins.com

      *Attorneys for Defendant Anthem, Inc.*

cc:  Assistant United States Attorney Rebecca Sol Tinio, Esq.
    Assistant United States Attorney Peter M. Aronoff, Esq.
    Assistant United States Attorney Charles S. Jacob, Esq.
    Assistant United States Attorney Adam M. Gitlin, Esq.
    Assistant United States Attorney Dana Walsh Kumar, Esq.
    Assistant United States Attorney Rachael L. Doud, Esq.
    Assistant United States Attorney Pierre Armand, Esq.
    Trial Attorney Martha Glover, Esq.