USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/25/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                               Plaintiff,

                    -against-

ANTHEM, INC.,

                                               Defendant.
-----------------------------------------------------------------x

20-CV-2593 (ALC) (KHP)

**OPINION AND ORDER ON ANTHEM'S REQUEST TO SERVE AN ADDITIONAL RFP**

**KATHARINE H. PARKER, United States Magistrate Judge:**

This action concerns claims for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* brought by the United States of America ("Plaintiff" or the "Government") against Anthem, Inc. ("Defendant" or "Anthem"). Pursuant to the Court's Order at ECF No. 403, Anthem now requests leave to serve a single request for production ("RFP") on Plaintiff. (ECF No. 408) For the reasons that follow, Anthem's motion is DENIED.

## BACKGROUND

The Court assumes knowledge of the facts. For context, in 2009, the Centers for Medicare & Medicaid Services ("CMS") conducted an audit of one of Anthem's Medicare Advantage contracts which found that Anthem had been underpaid due to diagnosis codes not being submitted. As a result, Anthem developed a Corrective Action Plan ("CAP") to remediate the audit's findings and, on September 29, 2010, submitted its proposed CAP to CMS. Part of its remediation was to implement a retrospective chart review program to identify additional diagnosis codes, and Anthem's CAP submission included a description of how it was going to conduct chart reviews. Among other things, it advised that it had implemented the program that included "a review of the member's record to collect additional diagnosis data not

1

collected on the member's claims or encounter data" which would enhance its "ability to more completely capture diagnosis data not captured on the claim form." (ECF No. 408-3) Notably, documents concerning the audit, Anthem's submissions to CMS in response to the audit, and CMS's closure of the audit have already been exchanged in discovery.

Anthem's latest document request seeks "All HHS and CMS Communications, memoranda, presentations, drafts, notes, agendas, meeting minutes, or analysis concerning Anthem's Corrective Action Plan ("CAP") Materials from September 29, 2010 to December 31, 2011." (ECF No. 408) The request is aimed at obtaining evidence concerning CMS's awareness of, and communications about Anthem's retrospective chart-review practices. It seeks this information from those CMS custodians who were involved in evaluating the CAP materials to learn about internal CMS communications leading up to the closure of the audit after Anthem submitted the above-referenced remediation plan.

To resolve the instant discovery dispute, it is important to consider discovery that has already been exchanged, including on the topic of chart reviews. At the outset of this case, Anthem served 33 broad RFPs. Although the Court narrowed the scope of the requests after motion practice, the Government has produced over 1.3 million documents from approximately 65 custodians in response to Anthem's RFPs. Many of these documents were reproduced from documents exchanged in another litigation involving similar claims against another insurer (the "*Poehling* litigation"); but, the Government also gathered and produced documents derived from separate additional searches specific to Anthem and the precise claims in this litigation. Among the documents searched for and produced were documents and communications pertaining to chart reviews (*i.e.*, the process Anthem proposed in its CAP and commenced

2

thereafter and that is the subject of this litigation and formal communications between Anthem and HHS/CMS regarding same). Additionally, Anthem has gathered information regarding a rule that was proposed by CMS and published in the Federal Register that would have regulated retrospective chart reviews. *See* Fed. Reg. Vol. 79, No. 7 (Jan. 10, 2014) Proposed Rule. In May 2022, however, the Department of Health and Human Services ("HHS") withdrew the rule that was scheduled to have taken effect in September 2022.[1]

Anthem argues that the additional RFP seeks information "critical" to its defenses in this matter. At the same time it argues that documents already produced in discovery and referenced above show that CMS was well aware that Anthem (and other companies providing Medicare Advantage plans) was conducting retrospective chart reviews that did not include an audit of previously-submitted diagnosis codes.

The Government argues that the additional discovery is disproportional to the needs of the case in light of the discovery already conducted on the topic of chart reviews, the burden involved in finding emails and searching for documents from 15 years ago, the lack of any indicia that there are additional extant documents responsive to the request, and the relatively low importance of obtaining such information, if it exists, considering what has already been produced.

Additionally, on March 13, 2024, this Court issued an Order stating that due to the breadth of discovery already produced in response to Anthem's initial set of RFPs, Anthem would be required to show good cause to propound any additional RFPs. (ECF No. 190) The

---

[1] Withdrawing Rule on Securing Updated and Necessary Statutory Evaluations Timely, 87 Fed. Reg. 32246 (2022) (available at https://www.govinfo.gov/content/pkg/FR-2022-05-27/pdf/2022-11477.pdf <https://perma.cc/ZMA9-S5L4>).

Government argues that Anthem has not shown good cause for propounding this request insofar as it could have easily included this request in its initial RFPs (or raised this request sooner), and that it is too late in the process to require the government to sift through more emails from 15 years ago. (ECF No. 418)

## LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(3). When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Under Rule 26(b), the Court may deny discovery of relevant information if it is not proportional to the needs of the case. And, as of the 2015 amendments to Rule 26, the standard for production hinges on the relevance of the information to the claims and defenses—narrower than the prior standard which permitted discovery designed to lead to the discovery of admissible evidence. Advisory Comm. Notes to Rule 26 (2015).

## DISCUSSION

Even assuming Anthem has shown good cause, I nevertheless find the additional discovery that it seeks is not proportional to the needs of the case. While the Court acknowledges that there are important issues and hundreds of millions of dollars at stake, other factors weigh against finding this additional request proportional to the needs of the

4

case. To start, while it is true that Anthem does not have access to internal communications between and among people working at CMS, Anthem has already obtained and/or produced its communications to CMS about its retrospective chart reviews and CMS's responses to these communications. Anthem is thus in a position to argue – and has argued--that it informed CMS about its retrospective chart reviews and that CMS was well aware of the retrospective chart review process based on these communications. Anthem also has obtained CMS's official responses to its communications and information regarding the proposed CMS rule and its withdrawal which will allow Anthem to present its defense that CMS was fully aware of the retroactive chart review process that the government is now contending was fraudulent.[2] Thus, Anthem's arguments reveal that the information it seeks is not that important in resolving issues—it already has abundant evidence upon which it can present its defense. Anthem has failed to show how any single CMS employee's statement in an internal email (as opposed to official communications and actions in connection with the proposed CMS rule) would be so "critically" important to its defense.[3]

    Indeed, Anthem's conduct in discovery reveals that the information it seeks is not that important insofar as Anthem has known, or should have known, about the topic that is the subject of the RFP since the beginning of this litigation yet has not treated this topic as important up until now. For example, Anthem did not question any of the twelve current or

---

[2] Said another way, Anthem argues it can't have committed fraud when it disclosed what it was doing to the Government and the Government did not object but rather allowed the process for years thereafter and withdrew a proposed rule that would have limited retrospective chart reviews.

[3] It appears that Anthem hopes there might be some internal email or other document in which someone indicated they understood what retrospective chart reviews entailed in connection with the review of the CAP and closing of the audit. Such a communication or document might further bolster its defense under the FCA that it was fully transparent about its chart reviews and conducted them in an effort to provide accurate and complete information to CMS.

former Government witnesses, including the former head of the CMS component that reviewed the CAP, during their depositions about internal communications regarding chart review in response to the CAP.  Additionally, Anthem points to no basis for believing that the needle in the haystack communications from 15 years ago even exist.  In light of the inherent burden in pulling, searching and reviewing records from 15 years ago, and considering the substantial information already produced in this case that will allow Anthem to argue its defense forcefully, the Court finds the additional RFP is not proportional to the needs of this case.

      Separately, Anthem has failed to show good cause for propounding the RFP at this time. It has not pointed to any specific deposition testimony or piece of evidence that has caused it to now seek this information.  And, the RFP is not tailored in the manner this Court contemplated when it ordered that good cause must be shown.  For example, if Anthem had asked and a CMS witness testified about a specific internal presentation or communications about retrospective chart reviews in the time between receiving the CAP and closing out the audit, then there would be good cause for Anthem to propound an RFP tailored to requesting the specific document or communication referenced by the witness.  No such cause has been presented.  In sum, the Court finds it is inappropriate to embark on a broad search for internal government deliberations at this juncture – particularly when Anthem long possessed the underlying documents animating the proposed RFP (*i.e.*, the CAP communications) and when it is speculative whether a search will even locate any additional documents.

## CONCLUSION

For the reasons discussed above, Defendant's motion is DENIED.

**The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 407 and 408.**

DATED: November 25, 2025
       New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge