

O'Melveny & Myers LLP    T: +1 213 430 6000    File Number:
400 South Hope Street    F: +1 213 430 6407
Suite 1900    omm.com
Los Angeles, CA 90071-2811

January 30, 2026

Jim Bowman
D: +1 213 430 6569
jbowman@omm.com

**VIA ELECTRONIC DELIVERY AND COURT FILING**

The Honorable Katharine H. Parker
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, New York 10007

    Re:    *United States of America v. Anthem, Inc.*, 1:20-cv-02593-ALC-KHP

Dear Judge Parker:

We represent Defendant Anthem, Inc. ("Anthem") and write to oppose Plaintiff's belated request for medical record discovery. Because this request contradicts Plaintiff's theory of liability, and because it would lead to a seismic shift in discovery, Anthem respectfully requests that the Court deny this request or hear argument on this issue at the February 18, 2026 case management conference.

**A. Plaintiff Should be Precluded from Seeking Discovery Based on an Entirely New Liability Theory that Contradicts Its Allegations and Past Statements to the Court.**

With the end of fact discovery in sight, Plaintiff—threatened with a potential loss on a nearly identical liability theory in *U.S. ex rel. Poehling v. UnitedHealth Group*, 16-cv-08697 (C.D. Cal.) ("*Poehling*")—improperly seeks to reverse course in this case and reset its entire theory of liability in an effort to avoid repeating *Poehling*'s result. To pursue its new theory, Plaintiff now seeks the production of thousands of medical records from Anthem. But this dispute is not about a simple document request;[1] it is about whether Plaintiff can seek discovery unrelated to its allegations, that it deliberately ignored despite nearly seven years of investigation and litigation, and that it steadfastly represented for years it did not want or need to prove its case.

Plaintiff's theory of liability in the Amended Complaint is straightforward: any diagnosis code that was submitted by a provider, which is not later identified by a retrospective chart review of the medical record for the same encounter, is false. Plaintiff alleges that Anthem violated the False Claims Act because it did not compare "previously-submitted codes against chart review results"

---

[1] Plaintiff's purportedly "realistic and manageable" request is in reality a series of complex requests for thousands of medical records, including records not reviewed as part of Anthem's retrospective chart review program and records outside of Anthem's possession and control. 1/22/26 Tr. 4:3-11. As directed by the Court, Anthem addresses only the threshold issue of the propriety of Plaintiff's pursuit of medical records at this late stage of the litigation and reserves its objections to Plaintiff's specific document requests. Court's 1/22/26 Order (Dkt. 434).

and delete the codes not found by its chart review vendor. Am. Compl. (Dkt. 26) ¶ 132. Plaintiff's claims are based on the presumption that a mere mismatch between a chart review coder and a provider's previously submitted diagnosis is enough to establish that the diagnosis is false. *Id*. at ¶¶ 130-33, 154. That mismatch thus relies ***exclusively*** on the results of a comparison between one set of data (the diagnosis codes submitted by providers) and a second set of data (the diagnosis codes identified for those same encounters from retrospective chart reviews)—not on an examination of medical records.

Plaintiff repeatedly reiterated its commitment to that theory. 7/23/24 Tr. 25:12-26:25 ("[Plaintiff's] case is that [Anthem] failed to delete codes that [it] recognized through that [chart review] program were unsupported". . ."[I]t is our position that Anthem's own [] coder's [] determination that [a code] was unsupported. . . is sufficient evidence to show falsity."); Pl.'s 9/12/23 Ltr. (Dkt. 126) at 2 ("The universe of . . . false diagnosis codes consists of all. . .codes where Anthem's chart review program did not identify a submitted code as supported . . ."); 9/19/23 Tr. 46:3-47:3 (informing the Court that, through its chart review program, Anthem allegedly learned that "the medical records did not support . . . diagnoses" and "what Anthem didn't do with that information is delete the codes . . . [a]nd that's really the crux of our case.").

In almost seven years of pre-complaint investigation and litigation discovery in this case, Plaintiff served more than 70 document requests, but not one was for medical records. And when pressed by the Court, Plaintiff explained that it chose not to seek medical records because it did not need them to prove its case. 1/9/24 Tr. 24:21-43:3 (Plaintiff repeatedly affirming that it does not need medical records to prove its case because it is relying on Anthem's own chart review coders' findings); 7/23/24 Tr. 26:2-27:3 (Plaintiff explaining that discovery of medical records is "not necessary to prove [its] case.").

Plaintiff's avoidance of medical record discovery was a deliberate and strategic decision, not just in this case but also in *Poehling*, to avoid the avalanche of complicated evidentiary issues that necessarily result from litigating falsity on a code-by-code basis. But now, at the tail-end of discovery, Plaintiff has reversed course and demands the very medical records it claimed it did not need. The reason is clear—the Special Master in *Poehling* concluded at summary judgment that Plaintiff's theory of liability is insufficient to prove falsity,[2] and Plaintiff knows it must change course or risk the same result. Instead of the simple comparison of two sets of data that it originally contemplated, Plaintiff now asks this Court to allow it to pursue an entirely new theory of liability that requires the parties to litigate the accuracy of thousands of diagnosis codes.

This is not a run-of-the-mill, late-stage discovery request seeking discrete records to support Plaintiff's claims. Plaintiff's reversal is effectively a request to amend its pleading, long after the deadline to do so has passed and without good cause.[3] *See* Court's 4/11/23 Order (Dkt. 86) (setting

---

[2] *Poehling*, 16-cv-08697 (C.D. Cal. Mar. 3, 2025), R&R, ECF No. 631 at 23-29, 34 (concluding that a mere "unresolved discrepancy" between the doctors' initial diagnosis codes and chart review coders' results was insufficient for jury to conclude that United was overpaid, and recommending summary judgment in favor of United because "[t]he government did not review any medical records" and instead "depends entirely on speculation and assumptions about what the codes found by the United coders actually mean.").

[3] Anthem relied on Plaintiff's allegations in formulating its defense and pursuing discovery, and will thus be unduly prejudiced by Plaintiff's belated change in theory. The parties have all-but completed document

April 14, 2023 deadline for amendments to the pleadings absent good cause); *see* 2000 Amendments to Fed. R. Civ. P. 26 (narrowing scope of discovery to "confine [it] to the claims and defenses asserted in the pleadings," noting that "parties . . . have no entitlement to discovery to develop new claims or defenses . . . not already identified in the pleadings"); *Prudential New York Theatres Inc. v. Radio City Music Hall Corp.*, 47 F.R.D. 533, 534 (S.D.N.Y. 1969) (construing request to serve discovery as asserting new liability theory and denying that request where plaintiff was aware of facts forming the basis of its new theory, which should have been "asserted long before the case came to be almost five years old"); *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 11558096, at *7-11 (D. Del. Dec. 11, 2017) (precluding plaintiffs from asserting new damages theory that required significant new discovery and adjustment to case schedule where, throughout discovery, plaintiffs "double[d] down" on reliance on a different theory that conflicted with its new theory).

Plaintiff's abrupt shift in its liability theory is not predicated on any new information learned in discovery.[4] Plaintiff has **always known** that this Court, the *Poehling* Court, or a jury could reject its theory if it did not present evidence from medical records, but it nevertheless made the strategic decision not to seek any. The Court has already held in this case that belated discovery known to the requesting party for years is improper. *See* Court's 11/25/25 Order (Dkt. 423) (denying Anthem's request to serve RFP, holding that its "conduct in discovery reveals that the information it seeks is not that important insofar as [it] has known, or should have known, about the topic . . . since the beginning of this litigation yet has not treated . . . as important up until now"); *see also Rubik's Brand Ltd. v. Flambeau, Inc.*, 2019 WL 3736256, at *3 (S.D.N.Y. Apr. 29, 2019) (M.J. Parker) (holding defendants would be prejudiced by late-stage amendment where plaintiff knew of facts supporting amendment and "at no point. . .indicate[d] that it [would] pursue an entirely different claim."), *R&R adopted*, 2020 WL 2215250 (S.D.N.Y. May 7, 2020); *In re Agent Orange Prod. Liab. Litig.*, 97 F.R.D. 542, 543 (E.D.N.Y. 1983) (upholding denial of discovery request made two years into litigation where party waited until "eleventh hour of discovery to request

---

discovery, with almost all of Anthem's document discovery limited to the re-production of documents produced in *Poehling*. Court's 3/13/24 Order (Dkt. 190). Anthem also selected and examined witnesses—many of whom have knowledge of diagnosis coding-related standards and guidance, and other topics Plaintiff now seeks to belatedly inject into this case—believing that Plaintiff was not seeking to prove its case via medical records. If Plaintiff is permitted to seek medical records and thereby assert a new theory, those witnesses will need to be re-deposed, as will additional unidentified witnesses. *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2006 WL 2242596, at *4 (S.D.N.Y. Aug. 3, 2006) (finding defendants prejudiced by amendment requiring "additional discovery" that "change[s] the scope of the litigation" where parties were "just short" of discovery deadline); *City of Almaty, Kazakhstan v. Sater*, 2022 WL 1466825, at *4 (S.D.N.Y. Apr. 1, 2022) (M.J. Parker) (finding prejudice where amendment would "entail extensive discovery," including "from parties who have not participated in the case thus far, and . . . significantly delay the resolution of this case."), *R&R adopted*, 2022 WL 1449201 (S.D.N.Y. May 6, 2022).

[4] Plaintiff contends that Anthem admitted that medical records are highly relevant and that Anthem itself indicated that it must seek medical records for its defense. But Anthem never suggested that Plaintiff must seek medical records to prove its all-or-nothing theory of liability; instead, Anthem explained that the theory of liability alleged in the Amended Complaint is fundamentally flawed because it improperly assumes that falsity can be determined based solely on the findings of Anthem's chart review coders. Anthem has also signaled its intention to seek *some* medical records, not to disprove the falsity of every one of Plaintiff's allegedly false diagnosis codes, but instead to provide examples that conclusively demonstrate that the chart review data set alone is not the source of truth for whether a diagnosis code is false. 6/17/25 Tr. 22:3-23:16.

3

documents they could have requested many months ago"). It should reach the same conclusion here.

### B. Allowing Plaintiff to Change Its Theory of Liability and Belatedly Seek Medical Record Discovery Will Substantially Expand the Discovery Needed in this Case.

Because Plaintiff now seeks to prove liability by litigating whether hundreds or thousands of individual diagnosis codes are properly documented in the corresponding medical records, the parties will need to present competing factual and expert evidence to prove their case regarding *each and every* diagnosis code. For example, if Plaintiff contends that Anthem submitted a false diagnosis code for congestive heart failure ("CHF") for Ms. Doe from a May 1, 2013 doctor's visit, to defend against that allegation under Plaintiff's new theory, Anthem would be entitled to introduce evidence demonstrating that CHF is documented in the medical record or that Ms. Doe otherwise has that condition. This requires obtaining medical records for Ms. Doe's other doctors' visits in 2013 and prior or subsequent years, which may reflect test results, scans, prescribed medications, or other information establishing that Ms. Doe in fact has CHF. Anthem will also need documents and testimony from the Centers for Medicare and Medicaid Services ("CMS") and professional coding organizations addressing the standards for documenting a particular diagnosis code.[5]

But medical records and coding guidance are not self-explanatory. Anthem will thus need to depose individuals with specific information or expertise related to the contested codes, such as the physicians who treated Ms. Doe, the office staff who maintained Ms. Doe's medical records, and witnesses who develop or interpret the relevant coding guidance. Both parties' experts will need to analyze this evidence, prepare reports, and provide deposition testimony as to whether the evidence supports the specific CHF diagnosis. This process will repeat for *every* diagnosis code and corresponding set of medical records at issue, hundreds or thousands of times over.

Plaintiff's new theory of liability further complicates summary judgment and trial. Both parties will need to present reports from coding, medical record documentation, and statistical experts to address the propriety of Plaintiff's proposed sample and its effort to extrapolate to a population of approximately 200,000 diagnosis codes and 34,000 providers.[6] The experts, the Court, and ultimately the jury, will need to resolve disagreements over subjective determinations and interpretations about whether each code is "documented" in the medical record for hundreds of beneficiaries. Plaintiff's attempt to change its theory of liability would thus transform this case into a quagmire, with the parties litigating the validity of hundreds or thousands of diagnoses, which will inevitably extend the time needed to complete discovery and lead to a host of new disputed issues. The Court should thus deny Plaintiff's request, limit discovery to the claims and defenses asserted in the pleadings, and have the parties complete discovery within the schedule ordered by the Court.

---

[5] CMS has not issued comprehensive guidance addressing how conditions must be documented in medical records to support the submission of a diagnosis code to CMS. The coding guidance that does exist has changed substantially over time, in many instances depending on the condition at issue.

[6] As previously stated, Anthem objects to the Plaintiff's use of sampling in this litigation and reiterates its request for full briefing on this issue at the appropriate time. 6/17/25 Tr. 26:6-10.

| | |
|---|---|
| Dated:  January 30, 2026 | Respectfully submitted,<br><br>By:  */s/ James A. Bowman*<br><br>JAMES A. BOWMAN, *Pro Hac Vice*<br>ADAM LEVINE, *Pro Hac Vice*<br>HANNAH E. DUNHAM, *Pro Hac Vice*<br>SHELBY A. CUMMINGS, *Pro Hac Vice*<br>**O'MELVENY & MYERS LLP**<br>400 South Hope Street, 18th Floor<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407<br>jbowman@omm.com<br>alevine@omm.com<br>hdunham@omm.com<br>scummings@omm.com<br><br>K. LEE BLALACK, II, *Pro Hac Vice*<br>ANWAR GRAVES, *Pro Hac Vice*<br>WILLIAM BUFFALOE, *Pro Hac Vice*<br>BRIAN D. BOYLE*, Pro Hac Vice*<br>BENJAMIN D. SINGER<br>RAHUL KOHLI *Pro Hac Vice*<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300<br>Facsimile: (202) 383-5414<br>lblalack@omm.com<br>agraves@omm.com<br>wbuffaloe@omm.com<br>bboyle@omm.com<br>bsinger@omm.com<br>rkohli@omm.com<br><br>DAVID DEATON, *Pro Hac Vice*<br>**O'MELVENY & MYERS LLP**<br>Two Embarcadero Center, 28th Floor<br>San Francisco, California 94111<br>Telephone: (949) 823-6900<br>Facsimile: (949) 823-6994<br>ddeaton@omm.com<br><br>CHRISTOPHER P. BURKE, *Pro Hac Vice*<br>**O'MELVENY & MYERS LLP** |

       1301 Avenue of the Americas, Suite 1700
       New York, New York 10019
       Telephone: (212) 326-2000
       Facsimile: (212) 326-2061
       cburke@omm.com

       JOHN MARTIN, *Pro Hac Vice*
       HEYWARD BONYATA, *Pro Hac Vice*
       **NELSON MULLINS RILEY & SCARBOROUGH LLP**
       1320 Main Street, 17th Floor
       Columbia, South Carolina 29201
       Telephone: (803) 255-9655
       john.martin@nelsonmullins.com
       heyward.bonyata@nelsonmullins.com

       *Attorneys for Defendant Anthem, Inc.*

cc: Assistant United States Attorney Peter Max Aronoff, Esq.
  Assistant United States Attorney Charles Salim Jacob, Esq.
  Assistant United States Attorney Adam M. Gitlin, Esq.
  Assistant United States Attorney Dana Walsh Kumar, Esq.
  Assistant United States Attorney Rachael Doud, Esq.
  Assistant United States Attorney Pierre Armand, Esq.
  Assistant United States Attorney Harry Fidler, Esq.
  Trial Attorney Martha Glover, Esq.