



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

February 6, 2026

<u>Via ECF</u>
The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States of America v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP)

Dear Judge Parker:

  This Office represents the United States of America in the above-referenced case. We write pursuant to the Court's January 22, 2026, Order (ECF No. 434), to oppose Anthem's application to bar the Government's request for a sample of medical records. Contrary to Anthem's argument, the request does not represent a change in the Government's legal theory; rather, it seeks relevant evidence that Anthem itself has claimed is essential to decide the Government's claims, and which it said it would produce in discovery to support its own defenses. Nor would obtaining sample records require a "seismic shift" in discovery. ECF No. 435, at 1. Anthem has repeatedly stated that it intends to seek cherry-picked rebuttal evidence based on the Government's full list of false diagnosis codes, and has long known that the Government might seek medical records. Anthem's timeliness argument should also be rejected. The Government made its request long before the close of fact discovery, and at the earliest possible time it could generate its sample. Ultimately, the Government seeks only what is routinely produced in large fraud cases: a manageable sample of records. Anthem's arguments to the contrary are sophistry and should be rejected out of hand.

  **A. Background**

  In July 2024, the Government informed the Court that, in light of Anthem's intention to obtain and produce medical records, the Government would want to participate in developing the methodology for identifying those documents. *See* July 23, 2024 Tr. 24:8–17. The Government raised its intention to seek a sample of records again in July 2025. *See* ECF No. 385, at 1–2. In December 2025, pursuant to the operative scheduling order, the Government generated its revised list of false diagnosis codes. *See* ECF No. 425. Approximately four weeks later, the Government served a request for production of medical records, seeking medical records for 199 "beneficiary-years" from the list of over 200,000 false diagnosis codes. *See id.* Anthem now opposes the Government's request and is seeking to bar the Government from obtaining such records.

  **B. The Government's Theory Has Not Changed; the Request Seeks Evidence to Support the Government's Theory and Rebut Anthem's Arguments**

  Contrary to Anthem's claims, the Government's theory of the case remains the same. The Government has always alleged that Anthem violated the False Claims Act by knowingly failing to delete diagnosis codes that its own chart review program revealed to be unsupported by the *medical records*, and by submitting false attestations to CMS when it knew its data contained diagnoses unsupported by medical records. Indeed, in the Amended Complaint, the Government

repeatedly emphasized its allegations related to diagnosis codes that were not supported *by medical records*. *See, e.g.*, Amended Complaint ¶ 4 ("Anthem expressly promised CMS that . . . it would comply with CMS's regulatory and contractual requirement that diagnosis codes for risk adjustment purposes must be substantiated by beneficiaries' *medical records*." (emphasis added)); *id.* ¶ 46 ("[A] diagnosis code can be considered accurate and valid for risk adjustment purposes if it is documented in and supported by *medical records* for a particular encounter between a patient and a healthcare provider." (emphasis added)); *see also id.* ¶¶ 47, 67–68, 92–94, 110–11, 115–17, 119, 122 –23, 125, 132, 137, 141, 153. Likewise, in a June 2023 letter that the Government sent to Anthem in which the Government explained its theory of the case, the Government explained: "[f]or all Unsupported Diagnosis Codes, Anthem's Chart Review did not identify that Diagnosis Code as supported by medical records." Anthem's attempt to recast the Government's request as a new legal theory, or "unrelated" to the Government's "allegations," ECF No. 435, at 1, is contradicted by the Government's pleadings and prior disclosures to Anthem.[1]

Anthem's argument to the contrary does not withstand scrutiny. Anthem claims the Government's theory "relies ***exclusively*** on the results of a comparison between one set of data (the diagnosis codes submitted by providers) and a second set of data (the diagnosis codes identified for those same encounters from retrospective chart reviews)—not on an examination of medical records." ECF No. 435, at 2. But this data set comparison shows that Anthem's chart review program did not identify support *in the medical records* it reviewed for particular diagnosis codes that were previously submitted to CMS. Anthem cannot now say that this comparative evidence is insufficient for the Government's claims, and that it intends to produce medical records it cherry-picked to support its position, while simultaneously refusing to produce medical records that the Government has requested to rebut this contention.[2]

---

[1] Because it is clear that the Government has not amended its legal theory or is seeking to amend it, Anthem's citations to cases about amended pleadings are inapposite. For example, *Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17 Civ. 6559 (PGG) (KHP), 2019 WL 3736256 at *1 (S.D.N.Y. Apr. 29, 2019) clearly has no relevance here. In that case, the Plaintiff brought trademark infringement and unfair business practices claims under the Lanham Act and the New York General Business Law ("GBL") § 360-1. *See id.* at *1. With several days left in expert discovery, Plaintiff requested permission to amend the complaint to add an entirely new cause of action under a new statute, GBL § 349. Here, the Government is not seeking to amend its complaint—the Government continues to assert the claims set forth in the Amended Complaint, and unlike *Rubik's Brand*, the parties are in the middle of fact discovery and expert discovery has not even commenced. The other cases cited by Anthem are irrelevant for similar reasons.

[2] The Government has never contended that medical records are irrelevant; instead, it has explained that the Government can meet its burden of proof (by the preponderance of the evidence, in this civil case) without introducing them. *See, e.g.*, July 23, 2024 Tr. 26:21–27:3 (Government counsel: "[I]t is our position that Anthem's own – coder's own determination that that was unsupported, that that chart did not reflect that condition, is sufficient evidence to show falsity. So in our view, this discovery is not necessary to prove our case."). The Government still holds that view. But that is not relevant to Anthem's application. Instead, the question is whether the Government should now be barred from seeking relevant evidence that will help prove its case, rebut Anthem's decision to cherry-pick medical records for itself, and avoid the potential impact were the Court in this case to agree with the (erroneous) determination of the *Poehling* Special Master that such evidence is essential to the Government's claims. Indeed, adapting strategy as discovery unfolds is common in discovery as litigants learn new information. *Cf. Sealy v. Gruntal & Co.*, No. 94 Civ. 7948 (KTD) (MHD), 1998 WL 698257, at *2 (S.D.N.Y. Oct. 7, 1998) ("It is hardly surprising that as the case proceeded, and discovery was taken, the parties' respective views of the case and their understanding of the factual issues would evolve, thus suggesting new areas to explore."). Anthem has identified no contrary case.

### C. Anthem Itself Has Made Medical Record Evidence Central to the Case

Anthem's application seeks to bar the Government from obtaining evidence that the company itself has claimed is legally required. Further, Anthem has informed the Court that it intends to produce medical records to the Government to support its defenses. Yet Anthem seeks to bar the Government from obtaining medical records through a statistically valid sample. Anthem's position is self-contradictory, unfair, and illogical.

Moreover, Anthem has repeatedly told the Court that medical records are legally essential proof for the Government's claims. *See, e.g.*, July 23, 2024 Tr. 27:19-23 (Anthem's counsel: "[O]ur position will be that if . . . their only proof of falsity is a chart review extract . . . not the actual medical record, that's a failure of proof, and we'll move for summary judgment on falsity on that."). By taking this position regarding the Government's burden, Anthem has made medical records discovery critical "in resolving the issues" in this case. Fed. R. Civ. P. Rule 26(b)(1). Anthem cannot simultaneously insist that the Government's case fails as a matter of law without medical record evidence and also object when the Government seeks to obtain that very evidence.

Anthem has long told the Court that, irrespective of the Government's request, Anthem intends to introduce medical records to rebut the Government's fraud allegations. *See, e.g.*, June 17, 2025 Tr. 21:14–16 (the Court: "[Y]ou always were going to present some medical records. Anthem has long talked about wanting to present medical records."); July 23, 2024 Tr. 28:16–18. Presumably, Anthem will cherry-pick medical records that support its defenses. The Government is entitled to rebut a cherry-picked selection of records with a statistically valid sample. In short, Anthem has placed medical record review squarely at issue. Anthem cannot introduce its own medical records in defense while arguing that the Government cannot access other medical records in Anthem's possession to prosecute its case.

### D. The Request Is Timely as the Parties Begin to Discuss Expert Discovery

The Government's request for medical records is neither untimely nor a surprise. Contrary to Anthem's arguments, there is more than enough time for Anthem to respond to the request, which the Government made at the earliest possible juncture given the analysis necessary to generate the sample. The Government served its request on Anthem with over five months left in fact discovery. *See* ECF No. 425. While the purported burdensomeness of the request is not yet before the Court, the Government has no reason to believe that Anthem cannot gather the records in that time. The request primarily seeks the medical records that Anthem itself reviewed in chart review for each of 199 beneficiaries in specified calendar years. But in a single year, Anthem's chart review program gathered and reviewed records for more than 500,000 individuals.

Nor is the request a surprise. At the July 2024 case management conference, the parties discussed the possibility of a need for sampling and individual medical record review if Anthem planned to introduce medical record evidence, which Anthem plans to do. *See supra* Section C; July 24, 2025 Tr. 24:8–17. Likewise, in July 2025, the parties again discussed this issue with the Court. *See* July 24, 2025 Tr. 22:10–13 (counsel for Anthem: "we would like an order setting a briefing schedule for the month of August on the question of whether or not the government is entitled to pursue medical record discovery"). In short, Anthem has been aware of the Government's anticipated request for well more than a year, and Anthem cannot now claim prejudice when it has had ample notice, and time to prepare, for the Government's request.

Indeed, the Government could not have even made this request at any earlier time. The Government generated its revised list of false diagnosis codes on December 9, 2025, as required by the parties' agreed-upon schedule.[3] Without that narrowed list, the Government could not generate the statistically valid sample that underlies the request. The Government then worked diligently with its expert over four weeks—over the Christmas and New Year's holidays—to generate a statistically valid sample for the request. And seeking medical records now is appropriate because they will be used in expert discovery. The Government plans to rely on an expert to review records and provide a report. This is precisely the right time—months before expert discovery begins—to obtain medical records necessary for expert analysis.

### E. The Government's Request Will Not Significantly Expand Discovery

Finally, Anthem contends that the Government's request will significantly expand the scope of discovery. Not so. First, the parties have always intended to utilize experts given this case's complexity. *See, e.g.*, Feb. 4, 2025 Tr. 19:16 (counsel for the Government explaining that it would call expert witnesses at trial). Second, Anthem has understood the Government's theory from the outset—that Anthem did not delete diagnosis codes unsupported by medical records. Anthem thus knew all along that documents and testimony from CMS and professional coding organizations might be necessary. Indeed, Anthem has already obtained over a million documents and many hours of CMS testimony. Third, any additional investigation or physician contact that Anthem claims this medical records request might require is precisely what Anthem had always planned to do in this case—long before the Government served its request. *See* July 23, 2024 Tr. 32:11–18 (Anthem's counsel explained that after the Government provided its list of diagnosis codes, "we'd identify the relevant physicians. . . . *We'd then contact them. We'd look at their medical records, interview them, and we'd make disclosures of which witnesses we're going to call*." (emphasis added)). Finally, Anthem claims that it will need to analyze evidence, prepare reports, and undertake deposition testimony "hundreds or thousands of times over." ECF No. 435, at 4. This overstates the burden considerably. For each beneficiary year in the Government's sample, the Government anticipates that there is an average of only slightly more than one diagnosis code actually in dispute. Accordingly, the Government's request will not significantly expand discovery beyond what the parties have planned.

Ultimately, Anthem's argument is that its fraud was so large and complex that it must escape accountability: it maintains that medical record evidence is necessary for the Government to prove its claims, yet litigating even a sample of such records is an impossible "quagmire." ECF No. 435, at 4. The Court should reject this argument. Courts possess tools to manage even the largest civil claims, including those involving statistical sampling. *See, e.g., United States ex rel. Bassan v. Omnicare, Inc.*, No. 15 Civ. 4179, 2025 WL 66443, at *1, *3 (S.D.N.Y. Jan. 10, 2025) ("Statistical sampling is, in this case as in so many others, the only practicable means to collect and present relevant data that might establish a defendant's liability." (citation omitted)). Indeed, as the Court previously explained, "[o]bviously, there's going to have to be sampling" in this case. July 23, 2024 Tr. 23:12-23.

The Court should direct Anthem to produce medical records associated with the Government's sample.

---

[3] It is true that the Government took significant time to generate its list, but that resulted from many legitimate factors, including the size of the data sets, the need for more data from Anthem, and the security measures that significantly slow any movement of information into or out of the environment.

4

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:   */s/ Adam Gitlin*
    PIERRE ARMAND
    PETER ARONOFF
    RACHAEL DOUD
    HARRY FIDLER
    ADAM GITLIN
    CHARLES JACOB
    DANA WALSH KUMAR
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York 10007

cc:    Anthem's Counsel (Via ECF)