USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/18/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,

                              Plaintiff,

            -against-

ANTHEM, INC.,

                              Defendant.
-----------------------------------------------------------------x

**20-CV-2593 (ALC) (KHP)**

**OPINION AND ORDER
ON
REQUEST FOR MEDICAL
RECORDS**

**KATHARINE H. PARKER, United States Magistrate Judge:**

      This action concerns claims for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* brought by the United States of America ("the Government") against Anthem, Inc. ("Anthem"). The Government seeks to obtain a sample of medical records associated with the diagnosis codes it contends were falsely submitted. Anthem opposes this application. Both parties have filed position statements on the issue (ECF Nos. 435, 438), and the Court having carefully considered both submissions, GRANTS the Government's request for the reasons that follow.

**BACKGROUND**

      The Court assumes familiarity with the facts and includes the following to contextualize the instant dispute. The Government alleges that Anthem knowingly disregarded its duty to ensure the accuracy of risk adjustment diagnosis data that it submitted to the Centers for Medicare & Medicaid Services ("CMS"). Specifically, Anthem utilized a vendor to conduct "retrospective chart reviews." During these reviews, conducted after Anthem made a submission of diagnosis data to CMS, the vendor would obtain medical records from beneficiaries' medical providers. It would then review the medical records to identify all

1

diagnosis codes supported by the records to identify and report to CMS previously unreported health conditions documented in the records.  The thrust of the Government's allegations is that when conducting the retrospective chart reviews and updating CMS, Anthem did not look for or remove previously submitted diagnosis codes that were not supported by the medical records or otherwise correct other types of errors discovered during the review.  Thus, the Government's theory of liability in the Amended Complaint is that Anthem violated the False Claims Act by knowingly retaining and failing to delete provider-submitted diagnosis codes that were not supported by the medical records as revealed through its retrospective chart review program, and by submitting false attestations to CMS despite knowing that its data contained such unsupported diagnoses.

In a parallel action against a different defendant, *U.S. ex rel. Poehling v. UnitedHealth Group*, 16 Civ. 8697 (C.D. Cal.), the Government asserted a similar theory of liability, however failed to request medical records as it is doing here.  Anthem argues it is too late in discovery to request the sample of medical records now and that the government's approach is new and prejudices Anthem insofar as it has made certain strategic decisions in discovery based on its belief that the government would not request or rely on actual medical records to prove its case.  The Government, on the other hand, avers that the request does not embody a change in its theory, and indeed, it has always maintained that this information is relevant, explaining that Anthem itself has claimed the requested discovery is essential to decide the Government's claims.  Moreover, Anthem has represented that it would produce medical records in discovery to support its own defenses.  The Government further argues that it made this request long

before the close of fact discovery, which is due by June 30, 2026, and any timeliness arguments should be rejected.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Civil Procedure ("Rule") 26(b)(1), "relevance, for purposes of discovery, is an extremely broad concept." *Brunckhorst v. Bischoff*, No. 21 Civ. 4362 (JPC), 2022 WL 18358990, at *2 (S.D.N.Y. Dec. 28, 2022) (internal quotation marks omitted). "In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]." *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000) (internal quotation marks omitted).

Rule 26(b)(2), in turn, "imposes general limitations on the scope of discovery in the form of a 'proportionality test.'" *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003). When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Under Rule 26(b), discovery should be limited if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Therefore, the Court may deny

discovery of relevant information if it is not proportional to the needs of the case. And, as of the 2015 amendments to Rule 26, the standard for production hinges on the relevance of the information to the claims and defenses—narrower than the prior standard which permitted discovery designed to lead to the discovery of admissible evidence. Advisory Comm. Notes to Rule 26 (2015).

## DISCUSSION

### A. Relevance of the Requested Medical Records

At the outset, the Court notes that the Amended Complaint repeatedly references the requirement that diagnosis codes be substantiated by medical documentation. (ECF No. 26, at ¶¶ 4-5, 45-56, 65-69, 73-74, 78, 82, 90, 92-94, 102, 111, 113-16, 123-26, 137-39) Whether particular diagnosis codes were, in fact, supported by contemporaneous medical records is intertwined with the alleged falsity which is at the core of the Government's allegations. Indeed, Anthem has always maintained that medical records are important to proving the case and intended on introducing a sample of medical records in its defense. Given this, it is not unreasonable for the Government to seek a sample of records. In other words, there can be no dispute that the records sought are relevant to the claims in the case.

Anthem's chief objection is that the Government, in its view, has changed its theory of the case and how it seeks to prove liability. The Court does not view the Government's request as a change in theory but rather a response to defenses Anthem has raised and other legal developments necessitating exploration of a sample of medical records. What is certain, however, is that Anthem cannot use medical records and the Government's lack thereof as both a sword and a shield. Where a party asserts that the absence of medical record evidence

4

is fatal to its adversary's claims, and contemplates introducing such evidence affirmatively, discovery directed to those records is relevant to both sides' positions. *See* Fed. R. Civ. P. 26(b)(1).

**B. Proportionality of the Government's Request**

The Court also considers whether the request is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2). This action involves significant claims under the False Claims Act concerning risk adjustment payments in a federal healthcare program. The issues are therefore of great importance, and the potential financial consequences are considerable. The medical records at issue are in Anthem's possession or control, and the Government does not have independent access to them.

Further, the Government has limited its request to a sample of 199 records in specified calendar-years derived from a list of allegedly unsupported diagnosis codes developed by the Government after a review of data produced by Anthem. Insofar as production of a complete set of records for all relevant calendar-years would clearly be impracticable, there is no question that sampling is warranted. While the parties dispute whether the Government may rely on a sampling to establish liability in this case, the Court notes that the U.S. Supreme Court has recognized that in some cases a representative sample is "the only practicable means to collect and present relevant data establishing a defendant's liability." *Tyson Foods, Inc., v. Bouphakeo*, 577 U.S. 442, 455 (2016) (internal citations and quotation marks omitted). The Court does not decide in this opinion whether the sample requested is statistically valid or sufficient to establish liability, but finds that sampling is the only practicable way to proceed in discovery at this point. Further, against the backdrop that Anthem's chart review program has

reviewed records for hundreds of thousands of individuals in a single year, a sample of 199 records across calendar years is not unjustifiably broad or disproportionate to the needs of the case.

The timing of the request is also relevant to proportionality.  Though Anthem avers that the Government's request is tardy, in reality, the Government served its request with several months remaining before the deadline for fact discovery and after generating a revised list of allegedly false diagnosis codes pursuant to the parties' agreed schedule.  Discovery is an iterative process and it would have been premature to collect records prior to winnowing the list of potentially false diagnosis codes.  The Government represents that the records will be used in connection with anticipated expert analysis, which again, has always been expected by both parties due to the complexity of the case and the parties' shared expectation that expert testimony will play a central role in a verdict.  Obtaining records necessary for expert review in advance of expert discovery is consistent with orderly case management.  Indeed, both at conferences in 2024 and 2025, the parties raised the possibility that sampling and individual medical record review might be required if medical records are needed to prove or defend against the claims.  The Court finds that they are in fact needed.  With about five months remaining before fact discovery is due to be completed and another 13 months before expert discovery must be complete, the Government's request is timely.

## **CONCLUSION**

For the reasons above, the Government's application is GRANTED.  The Government is permitted to seek from Anthem medical records associated with its sample.  The Court understands that Anthem has concerns about the breadth of certain document requests

related to the production of medical records and that the parties are meeting and conferring about Anthem's concerns. Accordingly, this decision merely allows the medical record discovery in the sample size requested by the Government and is without prejudice to other objections Anthem may have to particular requests of the Government.

**SO ORDERED.**

DATED: February 18, 2026
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge