

O'Melveny & Myers LLP
400 South Hope Street
Suite 1900
Los Angeles, CA 90071-2811

T: +1 213 430 6000
F: +1 213 430 6407
omm.com

File Number:

April 14, 2026

**Jim Bowman**
D: +1 213 430 6569
jbowman@omm.com

**VIA ELECTRONIC DELIVERY AND COURT FILING**

The Honorable Katharine H. Parker
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, New York 10007

> **Re:** ***United States of America v. Anthem, Inc.*, 1:20-cv-02593-ALC-KHP**

Dear Judge Parker:

We represent Defendant Anthem, Inc. ("Anthem") in the above-referenced action. We write concerning Anthem's targeted request for discovery about audits of medical records conducted by the Centers for Medicare and Medicaid Services ("CMS") and the Office of Inspector General for the U.S. Department of Health and Human Services ("HHS-OIG"). Specifically, Anthem asks the Court for leave to serve a single Request for Production ("RFP") that accompanies four interrogatories that Anthem served on April 3, 2026. *See* Declaration of William T. Buffaloe Ex. 1 (as-served interrogatories); Ex. 2 (draft RFP).

**I.   Anthem is Entitled to Discovery Concerning CMS and HHS-OIG Audits of Medical Records That Were Also Reviewed by Anthem's Vendor as Part of its Corporate Retrospective Chart Review Program.**

In response to the Court's February 18, 2026 Order granting Plaintiff medical record discovery (Dkt. 441), Anthem provided Plaintiff with drafts of four interrogatories and one RFP seeking information about a discrete set of medical records that were both reviewed by Anthem's vendor as part of Anthem's chart review program and audited by CMS or HHS-OIG. CMS and HHS-OIG audited these records in the normal course of business to validate health conditions by determining whether certain risk-adjusting diagnosis codes were documented in those records in a manner that complied with applicable diagnosis coding and documentation standards.

Anthem's four interrogatories ask Plaintiff to identify the health conditions that were either validated or not validated during these CMS and HHS-OIG audits, and where the audits validated the health conditions, the specific diagnosis codes documented in the medical records that validated the health conditions. The associated RFP simply seeks the documents, including any underlying medical records, that reflect Plaintiff's responses to the interrogatories. These documents will show how CMS or HHS-OIG interpreted and applied diagnosis coding and documentation standards to the audited medical records in order to validate the health conditions. The parties have met and conferred on two occasions regarding this discovery, but Plaintiff has

categorically refused to produce any responsive information, despite Anthem's offers to engage in negotiations regarding the scope of these requests.

**II. The Requested Discovery is Relevant to Plaintiff's Interpretation and Application of Applicable Diagnosis Coding and Documentation Standards to Medical Records, which is Now the Focus of Plaintiff's Proof of Falsity.**

As the Court knows, Plaintiff now intends to prove falsity under the False Claims Act ("FCA") by reviewing a sample of provider medical records and arguing that, based upon its interpretation of applicable diagnosis coding and documentation standards, the medical records do not document the at-issue diagnosis codes. As Anthem has already explained, the very nature of this undertaking will involve a series of technical and subjective judgment calls about how to apply vague diagnosis coding and documentation standards to dense and opaque medical records; this exercise will inevitably lead to a series of record-by-record disputes where Plaintiff will present a particular interpretation while Anthem offers an opposing view. *See* 3/17/2026 Tr. 26:9-35:1.

Discovery into how CMS and HHS-OIG conducted this same analysis during their respective medical record audits, wherein they (i) reviewed medical records for Anthem beneficiaries that were also reviewed as part of Anthem's chart review program and (ii) made determinations as to whether particular diagnosis codes were documented in those medical records, is probative to the determination of falsity under Plaintiff's new method of proof. *See* Buffaloe Decl. ¶¶ 17-18. In some cases, the very same diagnosis codes that Plaintiff now alleges are false, were actually documented in the medical records that CMS or HHS-OIG audited to validate the associated health conditions for Anthem beneficiaries. *Id.* ¶ 18. Notably, even Plaintiff considers these audits relevant to this dispute. In its disclosures pursuant to Federal Rule of Civil Procedure 26, Plaintiff identified "[d]ocuments related to risk adjustment data validation audits of Defendant's MAOs performed by CMS and HHS-OIG" as evidence upon which it may rely to support its claims for relief. *See* Buffaloe Decl. Ex. 3 (Pl.'s Supplemental and Amended Rule 26(a) Disclosures) at 5.

Plaintiff nonetheless argues that Anthem's discovery requests seek irrelevant information because Plaintiff purportedly removed any diagnosis codes that were reviewed during these audits from its current list of at-issue codes. This argument fails for several reasons.

First, Plaintiff is simply wrong; Anthem has verified that Plaintiff has ***not*** removed all such diagnosis codes from its list of allegedly false codes. Buffaloe Decl. ¶ 17-18. Second, Plaintiff intends to rely on these audits to support its claims for relief against Anthem. Plaintiff cannot, on the one hand, rely on these audits to support its allegations against Anthem while, on the other hand, argue that Anthem is not entitled to discover information about these audits.

Third, the probative value of this discovery extends beyond the specific diagnosis codes that Plaintiff contends are false. It also lies in understanding how, why, and in what manner CMS and HHS-OIG interpreted and applied diagnosis coding and documentation standards to provider medical records ***outside*** of the litigation context. Anthem is entitled to show, for example, that: (i) Plaintiff—motivated by a desire to validate its sample and theory of the case—applied different interpretations of applicable coding and medical record documentation standards than CMS and HHS-OIG did in the ordinary course of the MA program; (ii) CMS and HHS-OIG validated

Anthem-submitted codes at higher rates than Plaintiff does in this litigation; and (iii) specific medical records are treated differently than similarly situated records in these agency audits.

Other courts have recognized that evidence about these CMS and HHS-OIG audits are not only relevant to the theory of FCA liability asserted in this case but are highly material to the core legal issues in dispute. The Special Master's March 3, 2025 Report and Recommendation in *US ex rel. Poehling v. UnitedHealth Group*, 16-cv-8697 (C.D. Cal.) ("*Poehling*") cited CMS's audit results as critical evidence supporting the recommendation to grant UnitedHealth Group's motion for summary judgment because it undermined the government's theory of falsity. *See* Report & Recommendation, *Poehling*, 16-cv-8697 ECF No. 631 (Mar. 3, 2025) at 29-30. Such evidence is even more relevant here, where Plaintiff's new method for proving falsity under the FCA is predicated on the very same kind of medical record review that CMS and HHS-OIG performed in these agency audits.

## III. Anthem Cannot Obtain This Discovery by Other Means.

The information that Anthem seeks is not contained in the documents that Plaintiff produced from the *Poehling* litigation. Neither CMS nor HHS-OIG has shared detailed information with Medicare Advantage Organizations ("MAOs") about the exact diagnosis coding and medical record documentation standards used in their respective audits during the full timeframe at issue here, nor have they provided any information about how those standards were applied in practice. MAOs, like Anthem, were only provided with the audit results themselves, which did not reveal the diagnosis coding and documentation standards applied during the audits or how those standards were interpreted during the audits for specific health conditions and medical records. The results simply show whether a health condition, not a diagnosis code, was validated.

The requested discovery is also proportional because it is limited to only those medical records that were both reviewed as part of Anthem's chart review program and audited by CMS or HHS-OIG. And Anthem has not requested all records relating to those audits, only those records that reflect Plaintiff's responses to the four targeted interrogatories. This information would not be burdensome for Plaintiff to produce. Plaintiff is aware of the existence of this information and has determined that it may rely upon it to support its claims for relief against Anthem. Moreover, Plaintiff's description of its attempts to remove audited diagnosis codes from its list of allegedly false codes demonstrates that it can readily identify the specific diagnosis codes and associated documentation about which Anthem seeks discovery.

Anthem therefore has good cause to seek discovery concerning these CMS and HHS-OIG audits. Until Plaintiff decided to rely on medical records to prove falsity rather than a mismatch between chart review data and diagnosis data that Anthem submitted to CMS, Anthem had no need to take detailed discovery of diagnosis coding and medical record documentation standards. But once the Court permitted Plaintiff to pursue medical record discovery, those standards became central to the ultimate resolution of this case. While Anthem is willing to meet and confer with Plaintiff about the scope of the requested discovery, Anthem cannot adequately present its defenses without discovery regarding these medical record audits. Anthem therefore respectfully requests that the Court grant it leave to serve its single RFP that accompanies the interrogatories that Anthem already served regarding these audits.

O'Melveny

Dated:  April 14, 2026

Respectfully submitted,

By:  */s/ James A. Bowman*

JAMES A. BOWMAN, *Pro Hac Vice*
ADAM LEVINE, *Pro Hac Vice*
HANNAH E. DUNHAM, *Pro Hac Vice*
SHELBY A. CUMMINGS, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jbowman@omm.com
alevine@omm.com
hdunham@omm.com
scummings@omm.com

K. LEE BLALACK, II, *Pro Hac Vice*
ANWAR GRAVES, *Pro Hac Vice*
WILLIAM BUFFALOE, *Pro Hac Vice*
BRIAN D. BOYLE
BENJAMIN D. SINGER
RAHUL KOHLI *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
lblalack@omm.com
agraves@omm.com
wbuffaloe@omm.com
bboyle@omm.com
bsinger@omm.com
rkohli@omm.com

DAVID DEATON, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
ddeaton@omm.com

CHRISTOPHER P. BURKE, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**

4

O'Melveny

1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
cburke@omm.com

JOHN MARTIN, *Pro Hac Vice*
HEYWARD BONYATA, *Pro Hac Vice*
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 255-9655
john.martin@nelsonmullins.com
heyward.bonyata@nelsonmullins.com

*Attorneys for Defendant Anthem, Inc.*

cc: Assistant United States Attorney Peter Max Aronoff, Esq.
Assistant United States Attorney Charles Salim Jacob, Esq.
Assistant United States Attorney Adam M. Gitlin, Esq.
Assistant United States Attorney Dana Walsh Kumar, Esq.
Assistant United States Attorney Rachael Doud, Esq.
Assistant United States Attorney Pierre Armand, Esq.
Assistant United States Attorney Harry Fidler, Esq.
Trial Attorney Martha Glover, Esq.