

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 17, 2026

Via ECF
The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *United States of America v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP)

Dear Judge Parker:

We write in response to Anthem's April 14, 2026 letter regarding its request to serve an additional Request for Production ("RFP") on the Government. As an initial matter, this dispute is premature because: (1) Anthem's request for documents is linked to interrogatories that it served on April 3, 2026, and the Government's responses are not yet due; and (2) Anthem today produced information that the Government is evaluating, and which may alter this dispute.

In any event, however, Anthem's request is fundamentally flawed for numerous reasons. Anthem seeks a massive volume of medical records and other documents from the Centers for Medicare and Medicaid Services ("CMS") or the U.S. Department of Health and Human Services Office of Inspector General ("HHS-OIG"): (1) for a set of diagnosis codes that are not even at issue in this litigation, and which is three times larger than the Government's own statistical sample; (2) that relate to audits where Anthem already has relevant documents in its possession, and which Anthem to date has not produced to the Government; and (3) that plainly does not concern the Government's statistical sample, and for which Anthem could have sought documents at any juncture in this litigation. Anthem's request is also particularly meritless given the voluminous discovery already produced by the Government regarding RADV audits. Accordingly, Anthem's request should be denied.

I.    **Anthem's Request for Additional Discovery**

On April 3, 2026, Anthem served the Government with interrogatories, four of which asked the Government to identify each health condition that was either validated or not validated by an audit by either CMS or HHS-OIG, for 670 beneficiaries. In addition, Anthem asked the Government to identify, for health conditions that were validated by CMS or HHS-OIG for the 670 beneficiaries, the diagnosis codes that may have been found documenting the health condition. (Presumably, Anthem generated this list using records it already possessed from participating in the audits.) The RFP Anthem seeks leave to serve requests "Documents sufficient to reflect" the Government's responses to these four interrogatories, which at this stage is unknown because the Government has not responded to the interrogatories. Anthem asserts that the request would include "underlying medical records," ECF No. 470 ("Ltr.") at 1, for 670 beneficiaries, and it appears Anthem would also be seeking internal agency correspondence relating to "coding and documentation standards applied during the audits or how those standards were interpreted during the audits," *id.* at 3. Anthem claims that its need for this discovery has only now arisen, in response to the Court's February ruling granting the Government medical record discovery, and that it cannot obtain the discovery by any other means. *Id.* at 1, 3.

## II.    This Dispute is Premature

As an initial matter, this dispute is premature. Anthem served its interrogatories on April 3, 2026, and the Government's deadline to respond is May 4, 2026. The Government is in the process of evaluating the interrogatories and is having discussions with CMS and HHS-OIG regarding the feasibility and burden associated with identifying which health conditions were validated through audits. In addition, the scope of the universe of documents that Anthem is seeking with its RFP is unknown. Anthem asserts that it is "willing to meet and confer" with the Government about the scope of the requested discovery. As a result, the most efficient way of resolving this dispute is for the Government to respond to the interrogatories, and at that point the parties can discuss the scope and burden of a follow-on RFP, to the extent it would even be needed. At this stage, however, the Government should not be prejudiced by not having the time afforded to it to prepare its responses.

In addition, Anthem argues it is entitled to this discovery because audited codes are included on the Government's list of allegedly false diagnosis codes, Ltr. at 2, but this argument is misplaced, as the number of audited appearing on the list is minuscule and they will be removed once the Government is afforded an opportunity to verify them. As the Government previously informed Anthem, and the Court at the February conference, Tr. at 23, the Government took steps to remove from its list of allegedly false diagnosis codes all diagnoses from a beneficiary-year that were part of a RADV audit. At the February conference, Anthem represented that there were codes in the Government's list that were subject to an audit. After the Government pressed Anthem for weeks regarding this representation, yesterday, for the first time, Anthem informed the Government that it had determined that there were only 26 such codes. Not until this morning did Anthem even identify the specific codes (which Anthem revised down to 22 from 26), representing only .01 % of the false diagnosis codes at issue in this case. The Government is evaluating the list that Anthem provided to determine whether these 22 codes were audited and should be excluded from the Government's list of allegedly false codes. This is another reason the issue is not ripe.

## III.    Anthem Has Not Shown Good Cause to Serve Its RFP

If the Court does choose to resolve Anthem's request to serve an RFP, that request should be denied because Anthem has not shown good cause to serve this additional RFP. Anthem asserts that it requires this discovery only now because the Government was permitted to obtain medical record discovery for a sample of 199 beneficiaries, and Anthem is therefore entitled to medical record discovery for different beneficiaries and different codes—which the Government has or will exclude from its case—because they went through a Government audit. The two issues are unrelated. The Government sought, and the Court granted, medical record discovery for a sample of beneficiaries because Anthem has argued that an evaluation of such medical records is a necessary component of any falsity analysis under the False Claims Act. The Government thus drew a statistical sample of 199 beneficiaries, and the parties' experts will evaluate the medical records associated with those beneficiaries to determine whether a code submitted to CMS was sufficiently supported by the medical record. The results of that analysis will directly impact the damages the Government claims it will be entitled to in this litigation, and as explained above, that list is not intended to include any codes that were audited by CMS or HHS-OIG.  The Government reasonably excluded from this fraud case diagnoses that were the subject of a separate administrative RADV audit program. After all, the Government would not seek damages for a code validated in an administrative audit; and if an audit finds unsupported codes, the Government would have separate, administrative recourse to recover.

2

Separately, the Government has always acknowledged that RADV audits are potentially relevant to *materiality*. The Government included in its initial Rule 26 disclosures, served on March 30, 2023, documents related to RADV audits and listed RADV audits as a topic of witness testimony. And the Government has produced voluminous records regarding RADV audits, standards, and guidance. Anthem has deposed 16 government employees, where it was free to ask relevant employees about RADV audits. RADV was also a repeated subject of deposition testimony from the *Poehling* litigation, which was produced at the outset of discovery in this case. In the coming months, the Government also intends to provide Anthem with additional Rule 30(b)(6) testimony from CMS regarding RADV reviewer guidance. Anthem has thus received ample document discovery, and has had opportunity to adduce testimony regarding those audits, and it can make such arguments as it sees fit regarding the standards applied during those audits.

Moreover, Anthem has much of the new discovery it seeks. During an audit, the Medicare Advantage Organization ("MAO") submits medical records and other documentation to the agency for its review. The agency then sends the MAO the results of the audit. Anthem thus already has in its possession the information it needs to argue, for example, that a diagnosis code that was not identified in Anthem's chart review was nonetheless validated by an audit. Indeed, Anthem has already done that as it identified this morning that 22 codes on the Government's list of allegedly false codes were validated by CMS or HHS-OIG, and Anthem has the results of audits and the submissions it made to CMS and HHS-OIG and whether those health conditions were validated. Anthem has not therefore shown good cause to propound a discovery request that seeks additional discovery, including medical records associated with up to 670 patients, relating to specific health conditions or diagnosis codes that are *not* part of the Government's sample of false diagnosis codes and thus would have no bearing on whether a particular code in the Government's sample is supported or not supported by the medical record.

## IV.     The Discovery Sought Is Irrelevant and Disproportionate

At bottom, the discovery sought by Anthem is irrelevant. The requested discovery does not concern the falsity element; that is "a black-and-white, objective issue," *United States ex. rel. Streck v. Eli Lilly & Co.*, 152 F.4th 816, 841 (7th Cir. 2025). In other words, the potential falsity of diagnosis codes not at issue in this case do not affect the falsity of the codes that are actually at issue. With respect to materiality, Anthem already has ample documentation relating to these audits—yet never produced those results as part of its Rule 26 disclosures. In evaluating the Government's claims, the Court and jury will not need to consider internal Government documents about how particular codes not at issue in this case were audited.

The discovery sought is also plainly disproportionate. Anthem already has the relevant documents reflecting RADV policies, guidelines, and training; indeed, much of this is public or known to Anthem from its decades-long relationship with CMS. Anthem is also seeking medical records for up to 670 patients. That is more than *three times* the number of patients contained in the Government's sample which, contrary to Anthem's list, actually concerns the false diagnosis codes at issue. Anthem also appears to be seeking internal Government documents or communications relating to these specific codes, which would be particularly burdensome as it would require a new collection and review of records with limited probative value, and may require a burdensome deliberative process privilege review to be conducted by the Government.

For the foregoing reasons, the Government respectfully requests that the Court deny Anthem's request for additional discovery.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    */s/ Dana Walsh Kumar*
PIERRE ARMAND
PETER ARONOFF
RACHAEL DOUD
HARRY FIDLER
ADAM GITLIN
CHARLES JACOB
DANA WALSH KUMAR
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741

cc: Counsel of record (via ECF)

4