UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                             Plaintiff,

                    -against-

ANTHEM, INC.,

                                             Defendant.

------------------------------------------------------------------X

KATHARINE H. PARKER, United States Magistrate Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/27/2026

20-CV-2593 (ALC) (KHP)

**OPINION & ORDER
ON
MOTION TO COMPEL**

This action concerns claims for violations of the False Claims Act ("FCA"), 31 U.S.C. §

3729 *et seq.* brought by the United States of America ("Plaintiff" or the "Government") against

Anthem, Inc. ("Defendant" or "Anthem").  The Government has moved to compel a third-party

witness to testify, in a deposition, about communications made during a deposition preparation

session with Anthem's counsel, in the presence of the witness's counsel, who is also counsel for

the witness's former employer.   Anthem contends the communications are protected work

product and that there has been no waiver of protection because it shares a common legal

interest with the witness and her former employer.  The third party and her former employer

also assert that their communications with counsel are privileged and not waived by the

presence of Anthem's counsel by virtue of the joint defense agreement.

For the reasons discussed below, the Government's motion is DENIED.

**BACKGROUND**

The instant dispute arises from the deposition of Deborah Bradley, who oversaw the

chart review program at Verscend, a company retained by Anthem to perform retrospective

chart review services.  During the chart review process, expert coders evaluated medical

records of Anthem members/beneficiaries to identify additional diagnosis codes supported by

those records that Anthem had not previously submitted to the Centers for Medicare & Medicaid Services ("CMS").  Those additional codes were intended to increase the payments Anthem received from the government under the risk-adjustment payment system applicable to Medicare Advantage Organizations ("MAOs") such as Anthem.  The chart review process was additive only.  That is, the reviewers did not look for errors in codes previously submitted to the Government to remove them.  Anthem must attest to the validity and truthfulness of all codes it submits.

The Government alleges that Anthem engaged in fraud by failing, during the chart review process, to look for and remove diagnosis codes previously submitted to CMS that were unsupported by the medical records.   Anthem vigorously denies the allegations of fraud and argues, among other things, that many of the allegedly incorrect codes are in fact supported by the medical records, that it was common industry practice to conduct chart reviews in the manner that it did, and that the Government, in essence, acquiesced to the practice.

Ms. Bradley, now a former employee of Verscend, testified pursuant to a Rule 45 subpoena.  Her counsel, who also represents Verscend, prepared her for the deposition. Anthem's attorney was present for Ms. Bradley's deposition preparation and communicated with her and Verscend's counsel during the preparation session.

During the deposition itself, Ms. Bradley testified about her work at Verscend and the chart review program that she oversaw.  She also testified that at the time she worked on retrospective chart reviews she communicated with Anthem about her understanding of CMS requirements related to conducting such reviews and that her understanding of same was

2

informed by communications with another former Verscend employee who left CMS to work for Verscend.   In particular, Ms. Bradley testified that it was her understanding that a MAO was not required to match the results of their chart reviews against diagnosis codes previously submitted.  Counsel for the Government asked Ms. Bradley questions about her deposition preparation and things communicated by Anthem's attorneys or conveyed to her by Anthem's attorneys and vice versa.  Anthem's counsel and counsel for the witness/Verscend objected to these questions and directed Ms. Bradley not to answer them on the grounds that the questions invaded privilege and protected work product.

By way of further background and relevant to the instant motion, starting in or around 2009, a number of individuals (referred to as "relators") brought False Claims Act ("FCA") allegations against various MAOs in connection with the chart review practices.  Verscend was a contractor to multiple MAOs for purposes of assisting with chart reviews.  The United States Department of Justice ("DOJ") intervened in a number of the chart review FCA cases.  Relevant here, the DOJ served Anthem with a Civil Investigative Demand ("CID") in or about December 2016 in connection with its chart review program.  In April 2017, Anthem and Verscend entered into a formal Joint Defense Agreement ("JDA") that contemplates a joint legal strategy in responding to the DOJ's CID and any future legal proceedings stemming from the investigation. Verscend entered into the agreement believing it had a common legal interest with Anthem insofar as it had potential exposure in connection with its chart review operations for Anthem. Indeed, risk adjustment vendors like Verscend have been named as parties in DOJ enforcement activity related to Medicare Advantage (although not in connection with chart review).  At this

3

juncture, it is unclear whether Verscend has been identified as an alleged bad actor in any sealed *qui tam* actions.  However, insofar as Verscend provided chart review services to other MAOs who have been sued or in theory could be sued, it is potentially exposed in connection with services it provided and advice it may have given to its clients (including Anthem) regarding the conduct of chart reviews.

In advance of Ms. Bradley's deposition, Ms. Bradley, Verscend and her counsel agreed that Ms. Bradley was covered by the JDA and expected that preparation for her deposition with Anthem's counsel would remain confidential and privileged and that there would be no waiver by the presence of Anthem's counsel at deposition preparation sessions.  Although Ms. Bradley and Verscend are not parties in this case, their counsel submitted a declaration in connection with the instant dispute asserting privilege and work product protection over all communications between and among Ms. Bradley, her counsel, and Anthem's counsel during Ms. Bradley's deposition preparation session.  Counsel also provided the Court with a copy of the JDA.

In opposition to the instant motion to compel, Anthem and Verscend argue that Ms. Bradley's answers to the Government's questions have no bearing on any substantive issue in this case and are therefore outside of the permissible scope of Rule 26 discovery, that the questions intrude upon attorney-client communications and protected attorney work product which has not been waived insofar as Verscend and Anthem are parties to the JDA and share a common legal interest.

4

**DISCUSSION**

The facts pertinent to this motion would make for a good law school exam question on privilege. The scope of the attorney-client privilege and work product doctrine are implicated, along with waiver concepts. I briefly set forth the applicable rules below.

**1. Attorney-Client Privilege**

It is well-established that the attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that were intended to be and in fact kept confidential. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *In re County of Erie*, 473 F.3d 413, 418-19 (2d Cir. 2007); *see also* Fed. R. Evid. 501. Courts recognize that communications between counsel for a company and a former employee in preparation for the employee's deposition are generally protected by attorney-client privilege absent any waiver. *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999) (holding that communications between former employee and counsel for her former employer during deposition preparation were protected by privilege so long as the communications pertained to relevant facts acquired in the scope of the witness's employment); *Wade Williams Distribution, Inc. v. American Broadcasting Companies, Inc.*, No. 00 Civ. 5002 (LMM), 2004 WL 1487702 (S.D.N.Y. June 30, 2004) (following *Peralta* in context where same attorney represented former employee individually in connection with the deposition and also represented the company). Thus, communications between Ms. Bradley and her counsel are attorney-client communications and are privileged and non-discoverable absent a waiver.

5

### 2.  Work Product Doctrine

The U.S. Supreme Court in *Hickman v. Taylor* addressed a request, via a Rule 33 interrogatory, for production of written and oral witness statements collected by an attorney for a company for the purposes of gathering information needed to advise the company on anticipated litigation.  329 U.S. 495 (1947).   It characterized the request as seeking attorney work product and found that the statements, particularly the oral statements, were an "unwarranted excursion[] into the privacy" of an attorney's work and that neither the written nor oral statements had to be produced.  *Id*. At 497.  The Court found that the request for the statements was outside of the "arena" of fact discovery because the witnesses were available to the party making the discovery request and could provide testimony in a deposition or at trial, and stated that an "attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney . . . without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice."  *Id*. at 509-10.  It went onto say that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files of the mental impressions of an attorney."  *Id*. at 510.

In addition to the rule established in *Hickman*, Rule 26(b)(1) expressly excludes from the purview of discovery information that is privileged, and Rule 26(b)(3) expressly states that a party may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by another party or its representative (including the other party's attorney, *consultant*, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3) (emphasis added).

6

Thus, while Rule 26(b)(3) talks specifically of documents and tangible things as being protected work product, courts afford work product protection to oral communications based on *Hickman, supra,* and have held that work product protection applies in circumstances like those presented here. *See Haugh v. Schroder Inv. Mgmt. N.A. Inc.,* No. 02 Civ. 7955 (DLC), 2003 WL 21998674, at *4 (S.D.N.Y. Aug. 25, 2003) ("The [work product] doctrine extends to notes, memoranda, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney.") (citing *Nobles,* 422 U.S. at 238-39); *Subramanian v. Lupin Inc.*, No. 19 Civ. 2987 (KHP), 2019 WL 12038811, at *3 (S.D.N.Y. Sept. 4, 2019) (work product doctrine applies to communications with witnesses); *Peralta,* 190 F.R.D. at 43 (work product doctrine protected pre-deposition conversations with former employee); *Morales v. United States*, No. 94 Civ. 4865 (JSR), 1997 WL 223080 (S.D.N.Y. May 5, 1997) (deposition questions to non-party witnesses regarding conversations with defendant's counsel held to be protected by work product; no waiver by disclosure to third persons, and noting material possibility that ordering witnesses to respond to questions will reveal party's legal strategy).

While heightened protection is given to opinion work product such that it cannot be discovered, fact work product can be discovered upon a showing of "substantial need and an inability to obtain the equivalent without undue hardship." *Pearlstein v. BlackBerry Limited*, 13 Civ. 07060, 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019).[1] "A substantial need exists

---

[1] Notably, the Court in *Hickman* viewed inquiry into oral communications of an attorney with a witness as particularly improper, stating "we do not believe than any showing of necessity can be made under the circumstances of this case so as to justify production. . . No legitimate purpose is served by such production. . . Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more of an ordinary witness.  The standards of the profession would thereby suffer."  329 U.S. at 512-513.

'where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'"  *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74-75 (S.D.N.Y. 2010) (quoting *Nat'l Cong. For Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)).  The Government does not argue that it has a substantial need for the testimony it seeks.  It only argues that the testimony sought is relevant to witness credibility and that there has been a waiver of protection.

### 3.   Waiver of Privilege and the Common Interest Doctrine

"A party may waive privilege or work product protection by voluntarily disclosing otherwise protected information to a third party or injecting protected material into a litigation. The party asserting attorney-client privilege or work product protection has the burden of establishing that there has been no waiver."  *City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345, 2019 WL 2865102, at *6 (S.D.N.Y. July 3, 2019) (collecting cases).  Unlike the attorney-client privilege, work product protection is not waived merely because the material is disclosed to a third party.  *See U.S. v. Adlman,* 134 F.3d 1194, 1200 n.4 (2d Cir. 1998).  Protection is typically waived only when work product is actually disclosed, or put at risk of disclosure, to an adversarial third party.  *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993)) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for privilege disappears.").

The common interest doctrine protects against waiver of attorney-client communications and work product when there is a showing that separate parties share a

common legal interest and that the communications shared between them were in furtherance

of that common interest.  *U.S. v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989); *City of*

*Almaty, Kazakhstan*, 2019 WL 2865102, at *7 (S.D.N.Y. July 3, 2019) (common interest "doctrine

does not establish separate grounds for privilege, but rather is an exception to the rule that

voluntary disclosure of privileged material to a third party waives protection from

disclosure."); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 470 (S.D.N.Y.

2003) (asserting that "[t]here are two elements of the common interest rule:  (1) the party who

asserts the rule must share a common legal interest with the party with whom the information

was shared and (2) the statements for which protection is sought were designed to further that

interest.") (citation omitted).

### 4.  Analysis

Having carefully considered the parties' arguments and in camera submissions by

Anthem and Verscend, the Court finds that the communications between Anthem's counsel

and Ms. Bradley during her deposition preparation session are protected by the work product

doctrine.  Indeed, the information the Government seeks implicates opinion work product of

Anthem's counsel.  See *Hickman*, 329 U.S. at 497; *Morales,* 1997 WL 223080, at *1.  And, work

product is not waived merely because it is shared with a third party (in this case, Ms. Bradley

and her counsel and Verscend's counsel).  *See., e.g*., *Adlman*, 134 F.3d at 1200 n.4.  It is waived

only when disclosed to a third party in a manner that is inconsistent with the purpose of the

protection.  *In re Steinhardt Partners*, L.P., 9 F.3d 230, 235 (2d Cir. 1997); *In re Visa*

*Check/MasterMoney Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000) (purpose of work

product doctrine is to keep counsel's work from his opponent in the litigation so that it will not be used against him"). In other words, so long as Anthem had a basis to believe that its communications with Ms. Bradley would remain confidential and not end up in the hands of the government, it has not waived work product protection. No written confidentiality agreement is required to support such a belief, but here, Anthem had a written JDA with Verscend, which supports a finding that its meeting with Ms. Bradley and any information sought or conveyed in preparation for her deposition was not inconsistent with the purpose of work product protection. *See Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 147 (S.D.N.Y. 2011) (finding that while the existence of a JDA "is not dispositive," it militated against a finding of a waiver of work product protection because the parties to the JDA had no reason to believe that the sharing of information between them increased the likelihood that an adverse party would become privy to the information).

Further, Anthem and Verscend did and do have a common legal interest. At the time the JDA was formed, the amended complaint repeatedly referenced Verscend's predecessor, Medi-Connect, and focused substantially on the chart review program that Verscend helped operate. The Government has subpoenaed Verscend for program data and communications and sought the deposition of Ms. Bradley as the person at Verscend responsible for oversight of the chart review program. Verscend, while not named in this litigation as a party, still has an interest in an outcome of this litigation in Anthem's favor so that it is relieved from any potential direct or indirect legal exposure stemming from its conduct of the chart reviews for Anthem (and other MAOs for whom it conducted chart reviews). Thus, Anthem and Verscend

are not just aligned in a business sense or in a general desire for a favorable outcome of this litigation, they share a legal interest in defending the legality of the same conduct (of operating the chart review program) against the same governmental theory of liability.  Properly preparing Ms. Bradley for her deposition was in their joint interest in connection with a common legal purpose.  It also was in Ms. Bradley's interest.  Ms. Bradley, for her part, was testifying about information learned in the scope of her employment with Verscend and had an interest in understanding the nature of this action and the potential questions she would be asked so that she could prepare to give correct answers and refresh her memory of events from many years ago.[2]

There is no evidence that Anthem's counsel – who are officers of the court – engaged in suborning or soliciting perjury when meeting with Ms. Bradley.  As the Supreme Court in *Hickman* recognized, "[l]awyers are officers of the court" and it is "essential [they] work with a certain degree of privacy."  329 U.S. at 511.  Allowing inquiries into work product merely because of an unsupported interest in whether there was coaching of a witness is precisely the

---

[2] The Government has stated it does not seek to question Ms. Bradley about communications she had with her counsel during deposition preparation.  Those communications, protected by attorney-client privilege, would be subject to waiver by the presence of Anthem's counsel during the prep session absent applicability of the common interest doctrine. Those communications also potentially implicate Verscend's/Ms. Bradleys' attorneys' work product if they were had in anticipation of litigation; and, work product is not waived unless Verscend and Ms. Bradley had reason to believe information would not remain confidential and end up in the hands of a potential adversary in litigation.  See also *Banks*, 241 F.R.D. at 382 ("The questions and comments by a lawyer and his client's employees as they discuss legal and factual questions that have arisen in litigation or prepare for a deposition are at the heart of a lawyer's preparation and surely the attorney must be permitted to do that in peace, free from the intrusion of opposing counsel.").  Here, by virtue of the JDA, Verscend had an expectation that their communications would remain confidential and not be shared by Anthem to others, including the Government.  Ms. Bradley, while not a party to the JDA, was testifying solely as to her knowledge of chart reviews and the conduct of Anthem chart reviews, and such testimony implicates Verscend's privileged communications.  See *Peralta*, 190 F.R.D.3d at 41; *Wade Williams Distribution, Inc.*, 2004 WL 1487702.

sort of "unfairness and sharp practices" the Court was concerned about in *Hickman*. *Id*. at 511.

Moreover, any hypothetical concern about improper witness coaching or tampering is

mitigated by the presence of Ms. Bradley's and Verscend's counsel, who is also an officer of the

court and obliged under applicable ethical rules to report unethical conduct. *See* N.Y. R. Prof.

Conduct 8.3.  The broader concern the government raises about precluding discovery about a

party's attorney preparing a non-party witness for a deposition is addressed by waiver

principles.  If a non-party witness is represented by her own counsel, her own counsel generally

would not permit any other person's attorney into a deposition preparation session because it

would waive privilege.  Additionally, there are limited situations like the one present here when

a third-party witness shares a common legal interest with a party.  In most cases, third party

witnesses have no interest in the outcome of a litigation and a party's counsel would not

prepare the witness in advance of a deposition and risk potential waiver of its work product.

The Government's contrary arguments are not persuasive.  Its principal contention is

that Verscend has "no stake whatsoever" in the legal outcome of this case because it was not

sued and the statute of limitations has now lapsed.  But that framing of what is a common legal

interest is too narrow under federal law.  *See United States for use and benefit of M. Frank

Higgins & Co. v. Dobco, Inc.,* No. 22 Civ. 9599 (CS) (VR), 2023 WL 8868443, at *5 (S.D.N.Y. Dec.

22, 2023) ("[T]he applicability of the common interest doctrine does not hinge on the parties'

reasonable anticipation of litigation . . . .").  The common-interest doctrine does not require

that both parties be named litigants or face identical procedural exposure at the precise

moment of disclosure.  *Schaeffler*, 806 F.3d at 40 (finding that disclosures remain privileged

"where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel in the course of an ongoing common enterprise and multiple clients share a common interest about a legal matter."); *Schwimmer*, 892 F.2d at 243 (similar).

Nor does *Gupta,* cited by the Government, compel a different result.  In *Gupta*, the witness was a third party represented by his own attorneys, and the Court found that he shared no common legal interest or strategy with the Government such that work product protections would not be deemed waived.  *Id.* at 172-73.  Not so here.  Anthem and Verscend began coordinating their response to the Government and the CID years before this deposition, formalized that relationship through a joint defense agreement, and continue to share a common legal interest in defending the chart review program based on a coordinated legal strategy shaped by their shared potential exposure arising from the same program.  *See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.,* No. 11 Civ. 9490 (ALC), 2016 WL 4154274, at *4 (S.D.N.Y. July 22, 2016) (finding that the common interest doctrine applied because the parties shared a common legal interest in enforcing contractual rights, the communications in question "evinced such a shared interest and furthermore, demonstrate that a joint defense effort or strategy ha[d] been decided upon and undertaken by the parties and their respective counsel.") (internal quotation marks and citations omitted).

### CONCLUSION

For the foregoing reasons, the Government's motion to compel Ms. Bradley to answer questions regarding her communications with Anthem's counsel in her deposition preparation session is DENIED.

**SO ORDERED.**

DATED:    New York, New York
          April 27, 2026

_Katharine H. Parker_
_____
KATHARINE H. PARKER
United States Magistrate Judge

14