

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

**April 27, 2026**

<u>Via ECF</u>
The Honorable Katharine H. Parker
United States District Court
500 Pearl Street
New York, New York 10007

      Re:    *United States of America v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP)

Dear Judge Parker:

      We write pursuant to the Court's orders (ECF Nos. 469, 483) to respectfully request that the Court direct Anthem, Inc. ("Anthem") to produce Peter Haytaian for a deposition. As Anthem's outgoing Executive Vice President and President of its Government Business Division during the operative period, Mr. Haytaian was directly involved in the chart review program and possesses unique, first-hand knowledge of key decisions relating to chart review and Anthem's compliance practices that are relevant to the Government's claims.[1] The Government has made multiple similarly high-level agency officials available to Anthem for deposition without limitations. In an effort to resolve this dispute, the Government nevertheless offered to limit the deposition to 5.5 hours and provided advance notice of the topics on which Mr. Haytaian would be examined. Yet, Anthem still refuses to make Mr. Haytaian available. The Court should order him to testify.

## I.    Mr. Haytaian's Central Role in the Matters at Issue

      Mr. Haytaian was involved in the operational, financial, and compliance aspects of Anthem's chart review program. As discussed below, he signed relevant documents, directed the program's financial strategy and culture, made decisions concerning unsupported diagnosis codes, oversaw compliance matters, and communicated with Anthem's Board about chart review risks.

      *Mr. Haytaian's Involvement with Chart Review.* Mr. Haytaian's testimony is central in part because he signed key documents related to the conduct at issue. He personally signed an agreement with Verscend, Anthem's chart review vendor, governing key aspects of Anthem's chart review program. Ex. A, ANTHEM_DOJ_00002746. He also received key memoranda regarding the contract renewal, which emphasized ███████████████████████████ ████████████████████████████████████████████ ████████████████████████████ Ex. B, ANTHEM_DOJ_00007645.

      *Financial Strategy.* Mr. Haytaian exercised substantial authority over Anthem's financial performance, including the financial results of chart review. Discovery has shown that Anthem employees understood that deleting codes identified as unsupported through chart review would reduce its profitability. Mr. Haytaian was responsible for Anthem's chart review financial targets, and many financial presentations were prepared for or by him. Ex. C, ANTHEM_DOJ_00039708 (email attachments named ████████████████████████████████████). Mr. Haytaian also tracked when chart review ███████████ those targets. Ex. D, ANTHEM_SDNY_00174060.

---

[1] The Government understands that Mr. Haytaian is stepping down from his role as Executive Vice President next week and will depart the company in December 2026.

*Culture of Pressure.* Beyond formal financial oversight, Mr. Haytaian helped shape Anthem's revenue-focused culture. In emails Anthem produced, he described Anthem's strategy with respect to various revenue programs as ███████████████████ emphasizing that ███████████████████████████████████████████████████████████████. Ex. E, ANTHEM_DOJ_00026411, at -26412. His Board presentations likewise acknowledged that ██████████████████████████████████████ Ex. F, ANTHEM_DOJ_00032352, at -32362. Testimonial evidence likewise confirms that Mr. Haytaian instigated Anthem's culture of financial pressure. Ex. G.

*Deliberate Decisions on Unsupported Diagnosis Codes.* That culture of financial pressure helps explain the deliberate decisions at the center of this case. At its core, this case concerns Anthem's failure to delete diagnosis codes it knew were unsupported and false attestations as to the accuracy of those codes. Mr. Haytaian was central to that process. Gray King, a former Anthem Staff Vice President, testified that he ██████████████████████████████████████████████████████████████████████[2] Ex. G, Tr. 238:12–13. Mr. King testified that ████████████████████████████████████████████. *Id.* at 239:19–240:1.

*Compliance Oversight and Board Awareness.* Mr. Haytaian's role also extended to compliance enforcement and Board oversight of chart review. He oversaw compliance matters, including employee terminations for falsifying records. Ex. H, ANTHEM_SDNY_00144685, at page 5. He also sanctioned providers to ensure appropriate management of those who violated policies. *See id.* at 10. And he communicated with Anthem's Board regarding critical compliance risks associated with chart review, including whether Anthem's chart review should undertake a two-way look, *i.e.*, whether Anthem should conduct further investigation of previously submitted diagnosis codes that the program failed to identify. Ex. F, ANTHEM_DOJ_00032352, at -32360.

Because of Mr. Haytaian's unique knowledge, the Government contacted Anthem about deposing him on February 24, 2026. The parties held two phone calls in March 2026, as well as a meet-and-confer, during which the Government explained the basis for the deposition, including Mr. Haytaian's roles and presence on key documents and other witnesses' testimony about him. The Government also offered to limit the deposition to 5.5 hours and provided advance notice of the topics on which Mr. Haytaian would be examined. On April 10, 2026, with the April 30 fact discovery deadline approaching, *see* ECF No. 425, the Government noticed Mr. Haytaian's deposition for April 28, 2026. Anthem declined to make him available.

## II.    The Law Strongly Favors Allowing This Deposition

Although senior executives "enjoy an additional layer of protection" under the apex doctrine, it remains "exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition." *loanDepot.com, LLC v. CrossCountry Mortg., LLC*, No. 22 Civ. 5971 (AS) (SLC), 2024 WL 2154189, at *1 (S.D.N.Y. Apr. 9, 2024) (citation and internal quotation marks omitted). That is because "[h]ighly-placed executives are not immune from discovery," and "[h]olding otherwise would contravene the principle of broadly available discovery." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (citations and quotation marks

---

[2] Although the codes Mr. King described arose from Anthem's "filtering logic" rather than chart review, that distinction does not diminish their relevance to Mr. Haytaian's knowledge and intent. Whether Mr. Haytaian also was aware of unsupported codes in chart review, and whether he gave instructions not to delete them, is plainly relevant.

2

omitted). Courts examine whether "the executive has first-hand knowledge of important facts and/or . . . there are not other less intrusive means to obtain the information." *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, No. 22 Civ. 5974 (JPC) (KHP), 2025 WL 1488512, at *1 (S.D.N.Y. May 23, 2025) (citation and quotation marks omitted).

That standard is clearly met here. Mr. Haytaian has first-hand knowledge of important facts that cannot be obtained by less intrusive means. He signed a key agreement with Verscend and received memoranda concerning chart review, making his deposition critical to determining what he reviewed and whom he consulted beforehand. *See GMO*, 2025 WL 1488512, at *1 (finding "significant" that executive signed agreement and could be examined about "what he reviewed leading up to that signing"). He also directed the program's financial strategy and helped shape Anthem's revenue-focused culture, and where an executive helped set policy or direction, he is likely to have knowledge "that a subordinate will not." *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 84 (S.D.N.Y. 2002); *see also Marsh USA LLC v. Parrish*, No. 25 Civ. 6208 (GBD) (GS), 2025 WL 3650773, at *4 (S.D.N.Y. Dec. 17, 2025) (deposition allowed where executive was a "principal person" providing "guidance" for challenged conduct).

Courts also permit apex depositions where the executive is the only witness who can testify to a pivotal conversation or decision. *See Oakley v. MSG*, No. 17 Civ. 6903 (RJS), 2024 WL 4134903, at *3 (S.D.N.Y. Sept. 10, 2024). Here, Mr. Haytaian was a first-hand participant in at least one critical conversation about whether Anthem should delete unsupported codes, making him uniquely positioned to testify about that or similar exchanges and his reasons for the decisions. Similarly, courts permit inquiry into an executive's "understanding" and "the role [they] played in [a] board's discussion." *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 103 (S.D.N.Y. 2001). Mr. Haytaian was involved in compliance oversight and discussed chart review risks with Anthem's Board. Those subjects bear on Anthem's knowledge, intent, and response to concerns, and only Mr. Haytaian can explain what he conveyed to the Board and how he understood those issues.

There are not less intrusive means to obtain this information. The Government has already relied on document discovery and lower-level testimony, and that discovery has confirmed Mr. Haytaian's central role. Subordinates cannot testify to what Mr. Haytaian reviewed before signing key documents, what he intended when setting policy and financial expectations, what he understood about compliance risks, what he conveyed to the Board, or whether he directed that unsupported codes not be deleted. On those issues, second-hand testimony is no substitute.

The Government's request is standard and consistent with Anthem's own litigation strategy in this matter. Apex depositions have precedent in similar chart review cases, including *Poehling*. *See United States v. UnitedHealth Group, Inc.*, 16 Civ. 8697 (FMO) (PVC), ECF No. 559-1 (C.D. Cal.) (government deposed United's CEO after parties reached an agreement and defendant withdrew motion to preclude testimony). And Anthem itself has sought high-level testimony in this case, including by deposing a former CMS Administrator and two Deputy Administrators.

For these reasons, the Court should direct Mr. Haytaian to testify in this matter.[3] We thank the Court for its attention to this matter and consideration of the Government's request.

---

[3] Should the Court grant the Government's request, it also requests that the Court permit the parties additional time to take the deposition. The Government timely noticed the deposition for April 28 and, under the operative scheduling order, Rule 30(b)(1) depositions must be completed by April 30, 2026. Anthem's counsel has stated, however, that Mr. Haytaian is unavailable on April 28.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:     */s/ Adam Gitlin*
PIERRE ARMAND
PETER ARONOFF
RACHAEL DOUD
HARRY FIDLER
ADAM GITLIN
CHARLES JACOB
DANA WALSH KUMAR
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2734

cc:  Counsel of record (via ECF)

4