

O'Melveny & Myers LLP
400 South Hope Street
Suite 1900
Los Angeles, CA 90071-2811

T: +1 213 430 6000
F: +1 213 430 6407
omm.com

File Number:

May 15, 2026

**Jim Bowman**
D: +1 213 430 6569
jbowman@omm.com

**VIA ELECTRONIC DELIVERY AND COURT FILING**

The Honorable Katharine H. Parker
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750New York, New York 10007

Re:    *United States of America v. Anthem, Inc.*, **1:20-cv-02593-ALC-KHP**

Dear Judge Parker:

We write to provide defendant Anthem Inc.'s ("Anthem") position on the disputes identified in the parties' joint letter seeking the Court's intervention (Dkt. 499). Anthem respectfully asks the Court to (i) deny Plaintiff's motion to compel responses to requests from Plaintiff's Seventh and Eighth Sets of Requests for Production ("RFPs") (Exs. A, B); and (ii) direct Plaintiff to respond to Anthem's First Set of Interrogatories seeking audit-related discovery.

**A. Plaintiff's New Document Requests Are Not Proportional at this Late Stage**

After almost ten years of investigation, litigation, and discovery, Anthem has collected, reviewed, and produced documents in response to more than 75 requests, including Plaintiff's Second, Third, Fourth and Fifth Sets of RFPs. Each involved extensive negotiations regarding (i) the scope of each RFP, (ii) broad sets of materials to be searched (including records from over 40 custodians), and (iii) complicated search terms exchanged between the parties. This hard work by the parties took years and resulted in large productions (totaling tens of thousands of documents) that were substantially completed over a year ago. The parties have since prepared for depositions of two dozen current and former Anthem employees, relying on that produced record. At this stage, given the careful work done by both sides, Anthem understood that further document requests from Plaintiff would be limited to follow up requests needed to obtain specific documents identified during testimony or to close clear gaps in the record.

Unfortunately, Plaintiff has decided at the close of discovery to serve almost 20 entirely new RFPs. Far from being focused on narrow follow up topics, these requests seek broad, unfocused categories of documents that Plaintiff has been aware for years but had decided not to pursue until now. But Plaintiff provides no basis whatsoever to believe these requested materials are even likely to contain relevant, non-cumulative information beyond the record already produced. For example, Plaintiff demanded compensation and performance information for more than two dozen employees over an 11-year period. And it demanded minutes from Anthem's Board of Directors from 2003 up through 2018 that contain any reference to Medicare Advantage requirements. At the same time, the straightforward "Relevant Time Period" described in Plaintiff's original

discovery requests (early 2014 to early 2018) has been completely abandoned, with a new and ever-changing "Relevant Period" being used by Plaintiff in its requests—with the "Relevant Period" for its Seventh Set of RFPs (2008 to 2018) changing yet again in its Eighth Set of RFPs (2009 to 2018). Anthem has nevertheless attempted to accommodate these belated and massively overbroad requests, suggesting categories of documents that were actually tied to relevant areas identified in depositions and proposing time periods for those requests that were actually based on the conduct at issue. Plaintiff has flatly rejected these proposals, insisting on launching entirely new areas of discovery at this late stage of the case and ignoring the discovery that the parties have already long-since completed after lengthy negotiations and careful compromises. That is not appropriate at this late stage of the case. Under Rule 26(b)(2)(C), courts limit discovery when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." At the end of discovery, absent proven necessity, "courts are loathe" to require parties "to dredge an ocean of . . . records in an effort to capture a few elusive, perhaps non-existent, fish," particularly where the party "has engaged in extensive, alternative, duplicative, and likely less burdensome, discovery." *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 95 (D. Conn. 2012) (late-sought discovery was not warranted absent showing that requesting party cannot obtain or has not obtained discovery on essential elements of claim).

**Anthem Board of Director Minutes (RFPs 7-6, 7-7)**. Plaintiff demands that Anthem review all meeting minutes of its Board of Directors from 2010 to 2018 and produce ***any*** minutes that may reference chart reviews or Medicare Advantage program requirements. While Plaintiff has had ample opportunity to explore decisions made at Anthem, even at the most senior levels, it made no attempt over the last nine years of investigation and litigation to seek discussions involving Anthem's Board. Plaintiff's sole justification for this discovery, where there has been no prior testimony regarding the Board's involvement, is a single document referencing a 2011 Board meeting that may have discussed "CMS Compliance." But there is no basis to believe that discussion even concerned ***Medicare***—as opposed to Anthem's much-larger Medicaid business— let alone Medicare risk adjustment. This is a classic "needle in a haystack" search—based on a single vague reference, Plaintiff wants Anthem to collect and search nine years of minutes.

Responding to this request would impose a significant burden. Given Anthem's vast scope, which go far beyond Medicare, its Board minutes cover a wide range of irrelevant topics, that implicate sensitive business areas, and are protected by attorney-client privilege. This necessarily will require extensive privilege review and analysis, most likely over areas with no relevance to this case, which will require preparation of a privilege log and potentially result in unnecessary privilege disputes. This is far too great a burden based on the sole, offhand reference to "CMS Compliance" at a single 2011 Board meeting. Nevertheless, Anthem offered to produce responsive minutes so long as it could redact non-responsive information. While responsiveness redactions are not favored, courts have approved such redactions over materials, including Board minutes, where the materials are sensitive and the irrelevance of the redacted areas is apparent. *See Beauchem v. Rockford Prods. Corp.*, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (permitting responsiveness redaction of board of director meeting minutes); *Schiller v. City of New York*, 2006 WL 3592547, at *7 (S.D.N.Y. Dec. 7, 2006) (responsiveness redactions appropriately applied to meeting minutes). And such redactions are necessary here to avoid the need to log privileged areas with no relevance to the case. The Court should thus deny Plaintiff's demand for such minutes, or at a minimum, allow Anthem to redact non-responsive portions to relieve it of

2

O'Melveny

the burden of analyzing and logging irrelevant and unresponsive material.[1]

**Performance Reviews and Compensation for 27 Anthem Employees** (RFPs 7-12, 7-13, 7-14).  Plaintiff seeks performance reviews and compensation for 27 employees, without limitation, over an 11-year period.  This unnecessary and invasive request is far too broad, prying into the performance and personal details of dozens of former employees who have no reasonable connection to Plaintiff's claims.  Further, Plaintiff could have sought this discovery much earlier, at the outset of the case, but chose to wait until the close of discovery to demand these materials.  Further, Plaintiff has *already* received several performance reviews for key witnesses (in response to other prior document requests) and used those materials to question those witnesses at their depositions.  Where Plaintiff already obtained discovery on these topics, further discovery is unwarranted.  *See Tucker*, 281 F.R.D. at 95 (additional discovery unwarranted where plaintiff has had less burdensome opportunities to obtain information).  These demands are disproportionate at this stage of the case, particularly given discovery Anthem has already produced.

**Documents from New Custodians Regarding an Analysis by Kim Bresnan (RFP 8-1)**.  Kim Bresnan, who worked at Anthem from 2009 to 2012, testified at her deposition that ███████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████  Based on this vague testimony alone, Plaintiff demands that Anthem pull eight new custodians who may have been involved in this vaguely defined analysis, none of whom have been custodians in the last three years of discovery.  Anthem offered to search documents from Ms. Bresnan and other custodians in the case who Ms. Bresnan identified as also having likely been involved (including the employee most directly involved in overseeing the chart review program) and then meet and confer over whether additional searches were needed based on the results of that review.  Plaintiff refused.  Plaintiff's position is not reasonable, nor is proportional require Anthem to collect emails from over 15 years ago for eight new custodians, where it has already offered to produce materials from Ms. Bresnan and the employee most likely to have been involved in the analysis.

**All Custodial Documents of Kim Bresnan Concerning Chart Review (RFP 7-9)**.  Plaintiff also seeks *all* documents from Ms. Bresnan that concern chart review, a substantially overbroad demand where she oversaw the department that operated the chart review program.  Such a broad demand for *all* documents from Ms. Bresnan concerning chart reviews, where it has served several other demands seeking targeted discovery following up on Ms. Bresnan's deposition, is vastly overbroad and the kind of unfocused fishing expedition that is improper and not proportional, especially at this stage of the litigation.  Anthem is willing to produce materials in response to Plaintiff's other requests related to Ms. Bresnan and then meet and confer regarding specific, relevant documents Plaintiff can identify that it still needs based on her testimony.

**Vague Request Premised on a Witness's Incomprehensible Response to a Convoluted Hypothetical (RFP 7-11).**  At his deposition, a former employee was asked ██████████████

---

[1] Plaintiff similarly seeks minutes of Medicare Risk Adjustment Policy Committee (MRAPC) for time periods not at issue in this litigation.  MRAPC, like the Board, is replete with privilege issues, and Anthem offered to search Plaintiff's broad date range for MRAPC minutes while applying relevance redactions to reduce burden.  Plaintiff refused.  For the same reasons as the Board minutes, such a burden-limiting proposal is warranted here.

O'Melveny

███████████████████████████████ He did not testify that
██████████████████████████████. Nevertheless,
rather than asking for any concrete documents that genuinely exist, Plaintiff demands that Anthem
seek out and produce documents that show the "criteria" Mr. Cahow referenced and that were
supposedly used to establish such a mismatch.  While Anthem has already produced a substantial
number of documents in response to Plaintiff's requests related to audits and verifying the accuracy
of diagnosis codes, it cannot locate documents a witness discusses in a hypothetical, particularly
where Mr. Cahow did not even mention that any "criteria" existed, let alone describe any existing
document that was used to establish a "mismatch" between a diagnosis code and a medical record.

   **RFPs Seeking Documents from Irrelevant Time Periods (RFPs 7-4, 7-5)**.  Plaintiff also
demands documents concerning adjustments to revenue forecasts (RFP 7-4) and policies
concerning what Plaintiff terms "Anthem's retrospective chart review in Medicare Advantage
Looking Both Ways. "(RFP 7-5).  In both cases, Anthem has agreed to review and produce non-
privileged responsive documents that concern the relevant time period in this case, but not beyond:

- *RFP 7-4*: Anthem agreed to produce documents concerning adjustments to forecasts
  created in 2017 or 2018 that concern codes with 2012-2015 dates of service—the codes at
  issue.  Plaintiff, however, demands Anthem also produce adjustments for codes with dates
  of service outside this litigation.  Such adjustments cannot be relevant here.
- *RFP 7-5*:  Anthem agreed to produce policies covering the same date range used for
  Plaintiff's Second and Third Sets of RFPs (June 1, 2013 to March 1, 2017).  Plaintiff insists
  instead on an ***18-year*** search running from January 2008 to the present day. This demand
  is disproportionate, particularly at this late stage of discovery.

**B.    Anthem Is Entitled to Audit Records That Disprove Plaintiff's Theory of Falsity**

   Although the Court heard argument at the April case management conference regarding
Anthem's proposed document request for government audit results, the dispute presented here
involves separate discovery requests—interrogatories to which Plaintiff responded after that
conference—as well as new evidence that independently warrants the relief Anthem seeks.
Anthem previously sought leave to serve a document request for materials related to certain audits
conducted by the Centers for Medicare & Medicaid Services ("CMS") and the Department of
Health & Human Services Office of Inspector General ("HHS-OIG").  Anthem separately served
interrogatories asking Plaintiff to identify diagnosis codes that government audits had validated
for encounters that had been reviewed by Anthem's chart review program.  Plaintiff opposed
Anthem's document request, arguing it was premature because it had not responded to the
interrogatories, that Anthem possessed the materials, and that this discovery was not relevant
because Plaintiff removed any audited diagnosis codes from its list of allegedly false codes.  The
Court took the matter under submission after argument on these issues at the April 21 conference.

   Plaintiff has now responded to Anthem's interrogatories and, contrary to its suggestion at the
April conference that it may provide some information, has flatly refused to provide any discovery
in response.  It is now clear that Plaintiff intends to present its flawed litigation theory (i.e., that

any provider-submitted diagnosis code not later identified during a chart review is false), while withholding information in its possession that conclusively rebuts that same theory.

Anthem recently took the deposition of a CMS official, Carolyn Kapustij, whose testimony refutes Plaintiff's basis for refusing to provide this discovery. (Ex. D.)  Ms. Kapustij confirmed that ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ She further testified that ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████  Ms. Kapustij's testimony thus confirms that Anthem cannot obtain this information by other means and that Plaintiff's argument to the contrary was wrong.

The audit-related discovery Anthem seeks is highly relevant.  There is no serious dispute that hundreds of health conditions related to diagnosis codes, which Plaintiff's theory of liability dictates must be false, were separately validated during the government's own audits.  The flaw in Plaintiff's theory is plain: it contends that any provider-submitted diagnosis code not identified during a later chart review *must* be false.  But the government's own coders audited many of those same records and validated many of those codes—likely hundreds of times over.  Indeed, for this very reason, Plaintiff removed from its list any such codes that had gone through government audits—a sleight of hand to hide the fatal flaw in its theory of liability.  Plaintiff's removal of diagnosis codes that its own audits may have validated—*i.e.*, the ones its own coders confirmed were correct—was not done to account for irrelevant evidence; instead, it was done to *remove exculpatory evidence* and then argue that all of the remaining codes are false.  Far from rendering Anthem's discovery irrelevant, Plaintiff's manipulation of its list is an acknowledgement of the strength of this audit-related evidence for Anthem's defenses.

While Anthem possesses some audit records demonstrating that hundreds of these members' health conditions were validated, it does not have the evidence it needs to conclusively map these health conditions to the specific diagnosis codes that were validated and to Plaintiff's list of allegedly false codes.   But Plaintiff possesses the discrete documents that close that gap, connecting the specific diagnosis codes that were validated to the health conditions that are included in the audit results.  More importantly, these internal documents reflect the internal coding standards that CMS and HHS-OIG coders applied in validating these codes, which conflict with the more stringent positions Plaintiff's expert will pursue in this litigation when reviewing medical records from the sample produced by Anthem.   The requested discovery is also proportional to the needs of the case under Rule 26(b)(1).  The discovery is limited to only those patient encounters that were both reviewed as part of Anthem's chart review program *and* audited by CMS or HHS-OIG—a discrete and defined universe.  As Ms. Kapustij testified, ████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████  Given the limited scope, Plaintiff's ready access to the data, and the critical importance of this evidence, Plaintiff cannot credibly argue that producing such information is an undue burden.

Anthem thus respectfully requests that the Court order Plaintiff to respond fully to Anthem's interrogatories and produce the requested documents, or alternatively, to provide that information within two weeks of service of Plaintiff's expert reports.

Dated:  May 15, 2026

Respectfully submitted,

By:  */s/ James A. Bowman*

JAMES A. BOWMAN, *Pro Hac Vice*
ADAM LEVINE, *Pro Hac Vice*
HANNAH E. DUNHAM, *Pro Hac Vice*
SHELBY A. CUMMINGS, *Pro Hac Vice*
ELIZABETH A. ARIAS, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jbowman@omm.com
alevine@omm.com
hdunham@omm.com
scummings@omm.com
earias@omm.com

K. LEE BLALACK, II, *Pro Hac Vice*
ANWAR GRAVES, *Pro Hac Vice*
WILLIAM BUFFALOE, *Pro Hac Vice*
BRIAN D. BOYLE
BENJAMIN D. SINGER
RAHUL KOHLI, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
lblalack@omm.com
agraves@omm.com
wbuffaloe@omm.com
bboyle@omm.com
bsinger@omm.com
rkohli@omm.com

DAVID DEATON, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
ddeaton@omm.com

O'Melveny

CHRISTOPHER P. BURKE, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
cburke@omm.com

JOHN MARTIN, *Pro Hac Vice*
HEYWARD BONYATA, *Pro Hac Vice*
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 255-9655
john.martin@nelsonmullins.com
heyward.bonyata@nelsonmullins.com

*Attorneys for Defendant Anthem, Inc.*

cc: Assistant United States Attorney Peter Max Aronoff, Esq.
Assistant United States Attorney Charles Salim Jacob, Esq.
Assistant United States Attorney Adam M. Gitlin, Esq.
Assistant United States Attorney Dana Walsh Kumar, Esq.
Assistant United States Attorney Rachael Doud, Esq.
Assistant United States Attorney Pierre Armand, Esq.
Assistant United States Attorney Harry Fidler, Esq.
Trial Attorney Martha Glover, Esq.

7