**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

UNITED STATES OF AMERICA,

Plaintiff,

-against-

ANTHEM, INC.,

Defendant.

---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/20/2026

20-CV-2593 (ALC) (KHP)

**OPINION AND ORDER ON**
**DISCOVERY MOTIONS**

**KATHARINE H. PARKER, United States Magistrate Judge:**

This 2020 case filed by the United States against Anthem, Inc. ("Anthem") has involved extensive production from both parties and the end of fact discovery is in sight.  The government has produced over 1.7 million documents.  Anthem has produced approximately 33,330 documents but also has produced extensive data critical to the case and is in the process of producing a sample of medical records relevant to certain diagnosis codes that the Government claims are false and/or unsupported.  The parties have also taken over 30 depositions with more to go before discovery closes at the end of June.  The Court has extended discovery numerous times.

Notwithstanding the above, the parties have presented the Court with several remaining discovery disputes that concern the Government's seventh and eighth sets of requests for production ("RFPs"), Anthem's first set of interrogatories and RFPS, and a deposition dispute. The Court assumes familiarity with the facts of the case and nature of the requests and addresses the disputes below.

### A. The Government's Motion to Compel Responses to its RFPs

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and

1

proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C), a court may limit discovery if, *inter alia*, the discovery sought is unreasonably cumulative or the proposed discovery is not relevant or proportional to the needs of the case. Fed. R. Civ. P. 16(b)(2)(C).

When evaluating proportionality, the Court does not look at a particular discovery request in isolation.  Rather, in keeping with its obligations under Rule 1, the Court must necessarily take into consideration the discovery already conducted and may take into account the timing of the request and when the dispute was raised relevant to applicable deadlines and impact on the schedule of the case overall, as well as the importance of the discovery sought given other information that already has been exchanged.  *See Winfield v. City of New York*, 15 Civ. 5236, 2018 WL 2293070, *1 (S.D.N.Y. May 18, 2018) ("In managing a complex litigation such as this, the Court's concern is balancing (1) the need for both parties to have the time and opportunity to gather sufficient information to fairly present their claims and defenses on the merits and (2) the need to secure the speedy and inexpensive determination of the action.")

The party moving to compel discovery "bears the initial burden of demonstrating that the information sought is relevant and proportional."  *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022); *see also Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)

("Plaintiffs, as the parties seeking discovery from [defendant], bear the initial burden of proving

that the information and documents sought are relevant and proportional to the needs of the

case."). Once the moving party has made this showing, "the burden shifts to the opposing party

to justify curtailing discovery." *Sportvision*, 2022 WL 2817141, at *1.

Magistrate Judges overseeing discovery have "broad discretion to manage the discovery

process ..." *Emanuel v. Gap, Inc.*, No. 19 Civ. 3617 (PMH), 2020 WL 5995134, at *3 (S.D.N.Y. Oct.

9, 2020).

With the above principles in mind, the Court addresses the remaining discovery disputes

below.

1. <u>Production of Minutes from Anthem's Medicare Risk Adjustment Policy Committee and
Relevancy Redactions (RFP 7-3)</u>

The request for the production of minutes from 2010 through 2018 for Anthem's

Medicare Risk Adjustment Policy Committee is overbroad insofar as it seeks wholesale

production of minutes related to Anthem's Medicaid programs or other matters unrelated to

the claims and defenses in this case.  Anthem has agreed to produce minutes containing

information about the chart review program at issue in this case and related topics, but wishes

to redact information in the minutes that is not relevant to the case.

While it is true that many Courts disallow relevancy redactions, this Court respectfully

disagrees with that approach because Rule 26 does not permit discovery of irrelevant

information.  The rule against relevancy redactions is rooted in other goals of the Rules - to

minimize disputes, delay and expense.  In this Court's view, relevancy redactions are

permissible under the Rules, particularly where the nonresponsive portions of a documents are

likely substantial rather than incidental or implicate any number of valid concerns such as privacy of non-parties to a litigation, trade secrets, and privilege on topics unrelated to the litigation.  *See Kaiser Aluminum Warrick, LLC v. US Magnesium LLC,* 22 Civ. 3105 (JGK) (KHP), 2023 WL 2482933, at *2 (S.D.N.Y. Feb. 27, 2023) (noting that relevancy redactions can be "appropriate in some cases" and permitting relevancy redactions to a production); *Satanic Temple, Inc. v. Newsweek Mag. LLC,* No. 22 Civ. 1343 (MKV) (SLC), 2023 WL 8827563, at *2 (S.D.N.Y. Dec. 21, 2023) (conducting *in camera* review to determine whether redactions removed relevant information or information that would place relevant information in context); *In re Bystolic Antitrust Litig.,* No. 20 Civ. 5735 (LJL), 2021 WL 878568, at *2 (S.D.N.Y. Mar. 9, 2021) (requiring producing party to provide receiving party with a statement explaining the general nature of the redacted information and the reason for its redaction that is sufficient for the receiving party to make an objection to the redaction, and not permitting redacting party to remove content that places responsive information in context).  Corporate minutes often touch on a wide variety of topics and are often organized topically.  Therefore, this type of document is one that is particularly befitting relevancy redactions.  Additionally, where redactions can be made without delaying discovery, they should be allowed.

For the above reasons, Anthem may produce responsive portions of the minutes (*i.e.*, those touching on chart review, the so-called "two-way reviews," and related topics) and redact nonresponsive material.  If the minutes from a particular meeting do not contain any relevant, responsive information, they need not be produced at all.  Additionally, Anthem must ensure that its redactions do not remove information necessary to understand the context of the responsive material.  Anthem shall also provide a redaction log identifying the general subject

4

matter of redacted portions sufficient to allow the Government to assess and, if warranted, challenge the redactions.  The Government may raise specific challenges after reviewing the production and log but only insofar as it has reason to believe relevant information was redacted or context information (*e.g.*, date, attendees at the meeting, headings or formatting indicating section of minutes in which relevant information is contained) was redacted.

2.   Production of Revenue Forecast Adjustments (RFP 7-4)

The Government's request for production of revenue forecast adjustments is granted in part.  The Government has shown that final revenue forecast adjustment analyses from 2017 and 2018 are relevant to feasibility, specifically to whether Anthem was capable of conducting a "two-way look" for the relevant 2012-2015 period.

Accordingly, Anthem is directed to produce responsive revenue forecast adjustment documents created by Anthem's finance department from 2012-2018.  Production is limited to *final* versions of the forecast adjustment documents.  That is, to the extent they have not already been produced, drafts need not be produced.

3.   Production of Policies Regarding Chart Review (RFP 7-5)

As discussed in greater detail on the record of the May 19, 2026 Conference, the Government has satisfactorily demonstrated that a final chart-review policy concerning the identification or deletion of unsupported diagnosis codes is relevant to feasibility of conducting a so-called two-way review.  The Government shall identify for Anthem the Bates number of the draft policy in its possession for which it seeks a final version.   Anthem shall look for and produce the corresponding final policy, if one exists, and regardless of how any final version of the policy may differ from the draft identified by the Government, up to and including the first

finalized policy on that subject if one was finalized on or before December 31, 2018.  If no such policy was finalized by the end of 2018, Anthem shall identify when, if ever, the policy was finalized.

4.  Anthem Board of Director Minutes (RFPs 7-6, 7-7)

The Government's production request as to board of director minutes is granted subject to the same limitations as set forth for RFP 7-3.  That is, Anthem may produce only the portions of the minutes that are relevant and may redact material that is irrelevant provided it also provides a redaction log.

5.  Performance Reviews and Compensation (RFPs 7-12, 7-13, 7-14)

The Government's request for performance reviews and compensation information for 27 Anthem employees is overbroad and disproportionate to the needs of the case as discussed in more detail on the record.   However, the Government has shown that Anthem's compensation policies, incentive criteria, and performance-review framework for these 27 employees for the period 2010-2018 may be relevant, at least marginally, to motive and scienter, insofar as they will allow the government to understand the criteria used to evaluate performance and award bonuses or other incentive compensation or similar awards and whether compensation (or a portion thereof) was tied to generating revenue from chart reviews.   Further, the documents are not voluminous and can likely be obtained from Anthem's Human Resources Department.

Therefore, Anthem shall identify and produce documents in connection with the applicable compensation policies applicable to the 27 employees for the period specified, including bonus or incentive-pay criteria, and any policies or criteria relating to revenue-based

6

incentives for employees involved in risk adjustment, chart review, or compliance.  Anthem shall also produce exemplar performance-review form(s) applicable to these employees for the same period.

6.    Documents from Eight New Custodians (RFP 8-1)

The Government's request to seek documents from eight new custodians is denied.  The record does not establish that expanding collection to additional custodians is warranted given the age of the materials, the burden of hosting and searching additional custodial data, the volume of data already collected and searched, and Anthem's existing and proposed searches. Anthem shall, instead, proceed with its offer to search for responsive documents identified by Ms. Bresnan's deposition, specifically, the analysis she requested be performed prior to her departure from Anthem in 2012 (whether the analysis was completed before 2012 or anytime up to and including December 31, 2015) in the files of existing custodians: Ms. Bresnan, Mr. Cogdill, and Mr. King.   Anthem shall also determine, within the materials already collected for these three custodians, whether there is a repository, shared drive, or other location where such an analysis may have been stored, edited, or commented upon.  If such a repository exists within the collected materials, Anthem shall search it for documents related to the analysis to the extent any were created.

7.    Custodial Documents from Kim Bresnan (RFP 7-9)

Because Ms. Bresnan was the head of chart review at Anthem during a portion of the relevant period, a targeted search of her 2010-2012 emails is appropriate, however a search using solely the term "chart review" within her emails is clearly overboard.  Anthem is directed to run the two more tailored search strings proposed by the Government against Ms. Bresnan's

2010-2012 emails and provide the resulting hit counts.  The parties shall then meet and confer regarding whether review and production of those hits is proportional, including whether the search terms should be narrowed or otherwise modified.  If the parties cannot reach agreement after reviewing the hit counts, they may raise the issue with the Court.

8.  <u>Production of Documents Regarding Definition of an Unsupported Code (RFP 7-11)</u>

In response to this request, Anthem shall review the policies, guidelines, coding manuals, and other materials it has already produced to determine whether those materials include criteria or procedures referenced in Mr. Cahow's deposition testimony.  Anthem is also directed to make a reasonable inquiry, including through counsel for Mr. Cahow, to determine what criteria he was referring to when he testified about conditions or criteria provided to Anthem's compliance team for review for the period from 2014 through 2017.

**B. Anthem's Motion to Compel Responses to its Interrogatories and RFPs Concerning RADV Audits and Diagnoses Codes Validated During Same**

Anthem moves to compel responses to its Interrogatories seeking information about RADV audit records that it contends is relevant to its defense.  It also seeks leave to file an additional RFP for same.  (ECF No. 513)  After consideration of the parties' arguments on this topic, both orally and in writing, Anthem's motion is denied.  As discussed in more detail on the record, the discovery sought is, at most, marginally relevant.  Further, in light of information already produced and/or in Anthem's possession, and the volume of information that would need to be produced and attendant delays to the schedule associated with Anthem's requests, the Court finds that this additional discovery is not proportional to the needs of the case.

The Government represents that it has removed, or will remove, from its damages claim any allegedly false diagnosis codes associated with beneficiary-years that were subject to CMS

or HHS-OIG audits and found to be supported.  (ECF No. 510 pp. 4-5)  Thus, the information

Anthem seeks concerns codes that will not be part of the Government's case and are thus

irrelevant.  Furthermore, Anthem has the results of RADV audits and knows the information

(including codes) submitted in connection with same.  It has the ability to make arguments that

it passed various audits, as well as the ability to demonstrate that the codes the Government

has identified in this case are accurate and supported by medical records, from information

already produced in discovery.

Notwithstanding the foregoing, the Court directs the Government to produce internal

coding guidelines that it applied/used when evaluating diagnoses codes in RADV audits for the

period from 2009 through 2011.

### C.  Apex Witness Dispute Regarding the Deposition of Peter Haytaian

The apex witness dispute arises out of the Government's request that the Court order

Peter Haytaian, Anthem's former Executive Vice President and President of Anthem's

Government Business Division be produced for a deposition. The Government represents that

Mr. Haytaian was involved the chart review program during the pertinent period and possesses

"unique, first-hand knowledge of key decisions relating to chart review and Anthem's

compliance practices that are relevant to the Government's claims."  (ECF No. 489 p. 1)  Anthem

contends that Mr. Haytaian is an apex witness, therefore is protected from being deposed.

The apex doctrine protects senior corporate executives from depositions except where

certain criteria are met.  Under the doctrine, unless an executive "'has unique evidence,

personal knowledge of the claims at issue,' and 'other witnesses are incapable of providing

testimony about the conduct alleged,'" executives are protected from being deposed.  *Harapeti*

*v. CBS Television Stations, Inc.*, No. 21 Misc. 680 (PAE), 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021) (quoting *Iowa Pub. Emps.' Ret. Sys. V. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 17 Civ. 6221 (KPF), 2020 WL 6273396, at *1 (S.D.N.Y. Aug. 28, 2020)).  "The party seeking to avoid the deposition still bears the burden of persuasion typical of motions for a protective order, but under the apex doctrine, there is a rebuttable presumption that a high-level officer's deposition represents an undue burden."  *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, No. 22 Civ. 5974 (JPC) (KHP), 2025 WL 1488512, at *1 (S.D.N.Y. May 23, 2025) (citing *United States ex rel. Galmines v. Novartis Pharms. Corp.*, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 19, 2015)).

After careful consideration of the position statements and supporting documents the parties have submitted on this issue, the Court grants the Government's request, but limits the deposition to a half-day or 3.5 hours.  While Mr. Haytaian was once a senior Anthem executive, he has recently stepped down.  Thus, concerns animating the apex doctrine are not present.  But, Anthem also argues that other witnesses and documents have already supplied substantial information on the topics identified by the Government.  Additionally, Mr. Haytaian submitted a declaration addressing the topics on which the Government seeks examination stating in large part that he does not remember certain things and/or was not involved.  Thus, it appears that Mr. Haytaian's knowledge and testimony is somewhat limited.  Still, the existence of the declaration does not altogether vitiate the Government's right to probe Mr. Haytaian's memory, and, by extension, his credibility, his understanding of documents he signed or received, and his knowledge of the matters reflected in the record.  *See Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 124 (S.D.N.Y. 2015) (even where the executive had "very little" to testify about, "plaintiffs should be given a limited opportunity to probe his . . . memory").  Given discovery

that has already transpired, including testimony from other witnesses about chart review, and

Mr. Haytaian's somewhat limited knowledge, a full day deposition is not proportional to the

needs of the case.  However, the Court will permit a half-day deposition.  Anthem has requested

that the Court limit the topics on which Mr. Haytaian can be questioned.  This request is denied

– the limited time for the deposition necessarily will require the Government to carefully select

the topics on which to question the witness.

**SO ORDERED.**

DATED:    New York, New York
          May 20, 2026

_____
KATHARINE H. PARKER
United States Magistrate Judge

11