

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006-4061

T: +1 202 383 5300
F: +1 202 383 5414
omm.com

File Number:

June 9, 2026

**K. Lee Blalack II**
D: +1 202 383 5374
lblalack@omm.com

**VIA ELECTRONIC DELIVERY AND COURT FILING**

The Honorable Katharine H. Parker
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, New York 10007

> **Re:**     *United States of America v. Anthem, Inc.*, **1:20-cv-02593-ALC-KHP**

Dear Judge Parker:

We represent Defendant Anthem, Inc. ("Anthem") in the above-referenced action. We write concerning Plaintiff's unfounded objections to Anthem's request for discovery regarding the Notice of Intermediate Sanctions that the Centers for Medicare & Medicaid Services ("CMS") issued to Anthem on February 27, 2026 ("the Notice").

## I.  The Notice Bears the Hallmarks of Evidence Manufactured for Litigation.

On its face, the Notice concerns Anthem's business practices and diagnosis codes that *post-date* the disputed issues in this litigation. This case concerns Anthem's chart review practices from 2014 to 2018, in connection with diagnosis codes for services rendered from 2012 to 2015. As part of its chart review program during that period, Anthem's vendor retained coders to review selected medical records from healthcare providers who treated Anthem's Medicare Advantage ("MA") beneficiaries and then reported to Anthem diagnosis codes that the coders determined were documented in the records according to applicable coding guidelines. Anthem then submitted those diagnosis codes to CMS if the codes had not previously been reported to the agency. Under this legacy program, Anthem did not use the chart reviews to audit the diagnosis codes previously submitted by providers. Anthem did not have the data systems and technical capacity that would have been necessary to compare the diagnosis codes submitted by providers on claim forms—and which Anthem passed along to CMS—to the codes reported from chart reviews. And Anthem was no different from its competitors. CMS has never required Anthem, or any other Medicare Advantage Organization ("MAO"), to undertake this comparison—and in fact abandoned a proposed regulation that would have required MAOs to conduct chart reviews in this manner. *See* 79 Fed. Reg. 29,844, 29,925–26 (May 23, 2014).

Following *United States ex rel. Swoben v. United HealthCare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016), which called into question for the first time whether this sort of comparison was required by CMS regulations, Anthem began the process of developing the data systems and processes necessary to compare diagnosis codes reported by healthcare providers to the codes reported by the chart review vendor. For any provider-submitted codes that were not also reported by the chart review vendor, Anthem disclosed those codes to CMS as "potentially unverified" diagnoses. On

Austin · Century City · Dallas · Houston · Los Angeles · Newport Beach · New York · San Francisco · Silicon Valley · Washington, DC
Beijing · Brussels · Hong Kong · London · Seoul · Shanghai · Singapore

October 15, 2018, Anthem provided CMS with a detailed description of its new chart review program, and on November 13, 2018, sent the agency a data file with the potentially unverified diagnosis codes that treating providers reported to Anthem that were not also reported by Anthem's vendor during chart reviews (the "Disclosed Diagnosis Codes").  From November 2018 through October 2025, Anthem continued to notify CMS of tens of thousands of Disclosed Diagnosis Codes and repeatedly asked to meet with agency officials to discuss Anthem's understanding of and questions about applicable MA program requirements.

But the agency never agreed to meet with Anthem to discuss the applicable MA program requirements or the Disclosed Diagnosis Codes.  Importantly, CMS never deleted the Disclosed Diagnosis Codes, despite Anthem providing the agency with all the data necessary to do so.  Nor did CMS terminate Anthem's MA contracts, refuse to pay Anthem, reject Anthem's MA bids, or otherwise adjust payment to Anthem over those seven years.  Rather, CMS continued to contract with and pay Anthem year after year.  Then, on February 27, 2026, CMS took the unprecedented step of issuing the Notice, purportedly based on the Disclosed Diagnosis Codes.  The sanctions imposed by the Notice are administratively baseless, but more importantly, they should have no relevance to this case given that they do not pertain to the conduct at issue.  None of the Disclosed Diagnosis Codes are at issue in this litigation.  Just two weeks after it was issued, however, Plaintiff supplemented its Rule 26 disclosures for the first time in nearly three years to add the Notice as evidence on which it intends to rely to prove materiality under the False Claims Act ("FCA").

It is clear, based on years of inaction from CMS in response to Anthem's disclosures and deposition testimony taken in this case, that the decision to issue the Notice was not the result of the ordinary-course administrative process.  Rather, there is *prima facie* evidence that the decision to issue the Notice was an effort to manufacture proof to bolster Plaintiff's FCA allegations in this case.  To prevail here, Plaintiff must prove that the alleged falsity of Anthem's annual risk-adjustment data attestations and the medical record documentation and coding of the diagnosis codes it submitted to CMS were material to the agency's decision to pay Anthem.  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).  In a case very similar to this one, *United States ex. rel. Poehling v. UnitedHealth Group, Inc.*, 2:16-cv-08697 (C.D. Cal.), the FCA claims against UnitedHealth relating to its allegedly false attestations were dismissed because the government was unable to allege that UnitedHealth's chart review practices were material to CMS's payment decision.  Plaintiff faced the same dilemma here, where CMS cannot truthfully assert that it would have paid Anthem any differently had it known how Anthem was operating its chart review program—particularly where the record shows that the agency knew **exactly** how Anthem was conducting its chart reviews as early as 2010, *see* Anthem's 9/17/25 Ltr. Motion, Ex. D (Dkt. No. 407-4) (Anthem 2010 Corrective Action Plan Disclosure to CMS), and did nothing.  Indeed, just last summer, Cheri Rice, the former Director of CMS's Medicare Plan Payment Group ("MPPG") and Deputy Director of CMS's Center for Medicare testified that, despite learning of Plaintiff's allegations in this case as early as 2020, CMS never terminated or decided not to renew an Anthem MA contract, never rejected any of Anthem's annual bid submissions, never recouped any payment from Anthem, never issued a corrective action plan, or otherwise communicated to Anthem its disapproval of the chart review practices at issue in this litigation.  *See* Ex. A, 8/27/25 Rice Tr. 421:20-428:16.  Plaintiff therefore faced a significant evidentiary hurdle with only a few months left in fact discovery.

A few months later, Anthem deposed John Scott, the Director of CMS's Medicare Oversight and Enforcement Group ("MOEG").  Scott testified on February 10, 2026, just two weeks before

the Notice was issued under his signature, that he has never received a referral to terminate an MAO's contract for failing to submit accurate risk adjustment data. *See* Ex. B, 2/10/26 Scott Tr. 115:1-13. But, following a break in the deposition with Plaintiff's counsel, Scott asked to amend his prior testimony to disclose that his office had just recently received a referral from MPPG to sanction an MAO via its contract termination authority for failing to submit accurate data. *Id*. at 117:8-120:8; 120:18-121:2. When Anthem's counsel inquired further, Plaintiff's counsel stated that it would instruct Scott to not answer any substantive questions regarding this referral based on the deliberative process and attorney-client privileges. *Id*. at 119:12-20.

Because the Notice addresses diagnosis codes that are not at issue and is based on conduct after the relevant time period, Anthem asked Plaintiff to explain its rationale for including the Notice in its Rule 26 disclosures. Plaintiff responded that it intends to offer this Notice as evidence to (i) support its materiality argument and (ii) rebut "Anthem's comments regarding CMS's inaction or action related to the same topics." *See* 3/17/26 Hr'g Tr. 40:14-21.

## II. Plaintiff Has Withheld Basic Discovery Concerning Why CMS Issued the Notice.

Anthem submits that the Notice is not relevant in this case. But if Plaintiff intends to rely on this evidence, Anthem must have discovery to contest it. Anthem expects to argue that the impetus for the Notice was not the ordinary administrative process, but instead this litigation. If discovery corroborates Anthem's contention, it would destroy whatever minimal probative value the Notice might have on materiality. Accordingly, Anthem served on Plaintiff: (i) a document request seeking "[a]ll Documents Concerning the Notice of Intermediate Sanctions against Elevance Health," and (ii) an interrogatory requesting the identity of "all Persons who participated in the decision to issue the Notice of Intermediate Sanctions against Elevance Health." To the first, Plaintiff agreed only to produce publicly-available documents, Anthem's own correspondence with CMS, and the Notice itself. To the second, Plaintiff identified only CMS Administrator Dr. Mehmet Oz, who does not even appear on the Notice. During the parties' meet and confer, Plaintiff refused to conduct any additional searches in response to Anthem's discovery requests and further refused to identify the personnel who participated in the decision to issue the Notice.

But Plaintiff's reasons for obstructing Anthem's discovery requests are baseless. Plaintiff contends that some responsive documents may be privileged, yet refuses to supply a privilege log identifying when communications about the Notice began and which personnel and agencies were involved in the decision to issue it. Plaintiff's burden and proportionality objections are equally unavailing. Plaintiff has not conducted a single search in response to Anthem's requests, so it has no basis to argue that production would be unduly burdensome or disproportionate, or even that responsive documents are privileged. Nor has Plaintiff identified *any* burden in providing basic information, such as the personnel involved in the decision to issue the Notice. Instead, Plaintiff has gone to absurd lengths to conceal who was involved in the decision, identifying only Dr. Oz as the "final decisionmaker" and no one else, even though its supplemental Rule 26 disclosures identify CMS officials who signed or were copied on the Notice as possessing relevant evidence regarding "enforcement activity regarding Part C regulatory obligations."[1] Plaintiff cannot fairly be permitted to put the Notice directly at issue and then bar Anthem from obtaining discovery related to its origins and the officials who participated in the decision to issue it.

---

[1] John Scott (Director of MOEG) and Shruti Rajan (Director of MPPG).

Dated:  June 9, 2026

Respectfully submitted,

By:  */s/ K. Lee Blalack, II*

K. LEE BLALACK, II, *Pro Hac Vice*
ANWAR GRAVES, *Pro Hac Vice*
WILLIAM BUFFALOE, *Pro Hac Vice*
BRIAN D. BOYLE
BENJAMIN D. SINGER
RAHUL KOHLI, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
lblalack@omm.com
agraves@omm.com
wbuffaloe@omm.com
bboyle@omm.com
bsinger@omm.com
rkohli@omm.com

JAMES A. BOWMAN, *Pro Hac Vice*
ADAM LEVINE, *Pro Hac Vice*
HANNAH E. DUNHAM, *Pro Hac Vice*
SHELBY A. CUMMINGS, *Pro Hac Vice*
ELIZABETH ARIAS GRAY, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jbowman@omm.com
alevine@omm.com
hdunham@omm.com
scummings@omm.com
earias@omm.com

DAVID DEATON, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
ddeaton@omm.com

O'Melveny

CHRISTOPHER P. BURKE, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
cburke@omm.com

JOHN MARTIN, *Pro Hac Vice*
HEYWARD BONYATA, *Pro Hac Vice*
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 255-9655
john.martin@nelsonmullins.com
heyward.bonyata@nelsonmullins.com

*Attorneys for Defendant Anthem, Inc.*

cc: Assistant United States Attorney Peter Max Aronoff, Esq.
   Assistant United States Attorney Charles Salim Jacob, Esq.
   Assistant United States Attorney Adam M. Gitlin, Esq.
   Assistant United States Attorney Dana Walsh Kumar, Esq.
   Assistant United States Attorney Rachael Doud, Esq.
   Assistant United States Attorney Pierre Armand, Esq.
   Assistant United States Attorney Harry Fidler, Esq.
   Trial Attorney Martha Glover, Esq.