# Exhibit B

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA,

        Plaintiff         Case No.

    vs.              1:20-cv-02593-ALC-KHP

ANTHEM, INC.,

        Defendant

_____/


     Pursuant to Notice, the videotaped deposition of JOHN SCOTT was taken on Tuesday, February 10, 2026, commencing at 9:08 a.m., at the Sonesta Hotel, One Redwood Street, Baltimore, Maryland, before David C. Corbin, a Registered Professional Reporter and Notary Public.



     REPORTED BY:  David Corbin, RPR

Q.   Has anyone, during your tenure at DCE, which I believe you said had been since 2016, has anyone made any recommendation to terminate pursuant to 422.510 A43?

A.   Don't quote me on the 2016.  It might have been earlier than that, I don't remember exactly, but any referral that's been made since the time that I was in DCE up until today I would have been involved with that one as well as the group director.  So I think it's 2016 to present but it could have been sooner than that.  But, yes, once I left MPPG I would have been involved in some form or fashion.  So the answer to the question is no.

Q.   Understood.  How about the subsection below that, 422.510 A45, "fail to implement a quality -- an acceptable quality assessment and performance improvement program as required under subpart V of this part.

A.   The Part D sub part?  Sub Part D in this.

Q.   422510 A45.

A.   Yes.

Q.   All right.  Let's take -- let's go off the record for five minutes.

VIDEOGRAPHER:  Off the record at 11:18.

(Off the record.)

VIDEOGRAPHER:  Back on the record at 11:23.

BY MR. GRAVES:

Q.   All right.  And back on the record.  When we got back from break, before we got back on the record, Mr. Scott, you advised that there is one thing that you thought you should have said concerning issue five on Exhibit 221, which is the June 4th, 2013 issues paper.  So what is it you wanted to tell us?

A.   I'm sorry, no, I meant the question that you had about our authority to terminate contracts under 422510.

Q.   Sure.  Oh, I see.  So this is on the latest exhibit we just looked at.

A.   Yeah, Exhibit 226.

Q.   Give me one second just to get there.

MS. GLOVER:  Sorry, did you say 422310 or 510?

A.    510.  I might have said 310 but I meant 422510, Exhibit 226.

Q.    So just so the record is clear, we're looking at Exhibit 226, which is the regulation 422.510 entitled Termination of Contract by CMS. And what was it that you wanted to tell us Mr. Smith.  Mr. Scott.  Sorry.

A.    In the answer, I was answering the question narrowly in terms of termination referrals.

Q.    Yes.

A.    So I think it's also important to note that we have the ability to issue civil monetary penalties and we can also sanction an organization based on our termination authority, which would have been under 422510.  So when I answered the question have we received referral for termination for violations of 43i, the answer is we haven't for terminations.  But we have received referrals recently to exercise enforcement against -- for

Page 119

violation of 4iii, failure to submit data, validated as required under 422310.

Q.   Okay.  So you have received referrals recently to not terminate but issue some other type of sanction --

A.   Yes.

Q.   -- to MA plans pursuant to section A43, which is failed to provide CMS with valid data as required under 422b; is that right?

A.   Yes.

Q.   You said recently --

MS. GLOVER:  I'm going to -- I think you can -- the answer to that question.  I think if we get into this there may be things that we will -- I will instruct him not to answer based on the deliberative process privilege and attorney client privilege.  But in terms of recently, I think you can -- if you know the date of when you received it, then you could give that.

A.   I don't remember the exact date.

Page 120

Q.    And I don't know -- do you know the year?

A.    2025.

Q.    Okay.  So within the past -- well, last year you received a referral to sanction in some way an MA plan pursuant to the authority of 422510 A43; is that right?

A.    Yeah, to issue an enforcement action. Yes.

Q.    Understood.  Okay.  And if that enforcement action is in fact finalized, will that be made public?

A.    All enforcement actions are public, yes.

Q.    And when it's made public will it provide the reason for the enforcement action?

A.    We provide the notice -- we publicly post the notice for the enforcement action on our CMS.gov web page.

Q.    Okay.  And are you -- well, who did -- is there a specific component within CMS that the referral came from?

A.    Yes.

Page 121

Q.   And what's that component?

A.   The Medicare Plan Payment Group.

Q.   And prior to 2025, if there were referrals to be made concerning this subsection they would have come similarly from the Medicare Plan Payment Group?

A.   It could be more than the Medicare Plan Payment Group.  It's also possible that the Center for Program Integrity might refer something to us. But to my knowledge they haven't.

Q.   Understood.  And I know you said enforcement actions are made public.  Does the Medicare Advantage organization that is the target of the enforcement action, again I'm not asking for who that organization is, are they notified that there may be a pending enforcement action?

A.   No.

Q.   So the only thing that they are told is when their enforcement action has been finalized or a decision has been made?

A.   Correct.