

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

June 22, 2026

Via ECF
The Honorable Katharine H. Parker
United States District Court
500 Pearl Street
New York, New York 10007

      Re:    *United States of America v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP)

Dear Judge Parker:

This Office represents the Government in the above-referenced matter.  We write in response to Anthem's June 9, 2026 letter (ECF No. 523) ("Letter" or "Ltr."), requesting additional discovery related to the Notice of Intermediate Sanctions that the Centers for Medicare and Medicaid Services ("CMS") issued to Anthem on February 27, 2026 (the "Notice") based on Anthem's[1] repeated failure to comply with Medicare Advantage requirements. The Government respectfully requests that the Court deny Anthem's requests because Anthem's purported reasons for requiring additional discovery are without merit, the requests constitute an unwarranted fishing expedition that will needlessly prolong fact discovery, and the requests are disproportionate to the needs of the case.

## I.    Background

### a.  CMS's Notice of Sanction

In this case, the Government alleges that, from 2014 through 2018, Anthem knowingly failed to delete diagnosis codes that it learned were invalid through its retrospective chart review program and correspondingly falsely attested to the accuracy of diagnosis data it submitted to CMS. In 2018, following the Ninth Circuit's decision in *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016),[2] Anthem began comparing the results of its chart review program to diagnosis codes it had previously reported to CMS to identify diagnosis codes that its chart review was unable to substantiate and for which it had not found support.  *See* Anthem Ltr. at 1-2. However, Anthem refused to actually delete those diagnosis codes through CMS's electronic processing systems.  Instead, between November 2018 and October 2025, Anthem sent seven letters to CMS indicating that it would not submit data corrections through CMS's electronic systems, but would instead provide the data via external flash drives. Exhibit A, Notice, at 4-5.

Anthem's refusal to delete the diagnosis codes for which it had not found support contravened its obligation to submit data corrections through the required CMS systems. *Id*. In response to Anthem's letters, CMS sent six letters to Anthem instructing it "to comply with its obligations to

---

[1] The Notice was issued to Elevance Health, Inc., which is the current name for Anthem.

[2] In *Swoben*, the Ninth Circuit concluded that when "Medicare Advantage organizations design retrospective reviews of enrollees' medical records deliberately to avoid identifying erroneously submitted diagnosis codes that might otherwise have been identified with reasonable diligence, they can no longer certify, based on best knowledge, information and belief, the accuracy, completeness and truthfulness of the data submitted to CMS." 848 F.3d at 1175.

ensure risk adjustment data accuracy and to submit data corrections through CMS's official systems when unsupported diagnosis codes are identified." *Id.* In a 2024 letter, moreover, CMS "explicitly stated that if Elevance has information that certain diagnoses are unsupported by a beneficiary's medical records, the corresponding overpayment must be reported and returned within 60 days of identification in accordance with section 1128J(d) of the Act." *Id.* CMS further stated: "To be clear, sending encrypted files with correspondence to CMS does not satisfy Elevance's obligations." *Id.*

Anthem did not submit data corrections through the required CMS systems, and on February 27, 2026, CMS issued the Notice, which explained that CMS was taking action against Anthem because of its "substantial and persistent noncompliance with Medicare Advantage risk adjustment data submission requirements" by failing to "submit data corrections for diagnosis codes it identified as unsupported by medical record documentation through CMS's required electronic systems." Notice at 2. CMS notified Anthem that, if it did not submit the required data corrections through CMS's electronic systems by a specified deadline, Anthem would incur sanctions. *Id.* at 1, 8. Anthem submitted the data corrections by CMS's deadline (which CMS had agreed to extend), and transmitted $342,209,085.30 to CMS, thereby avoiding the sanction. *See* Exhibit B. To continue to avoid imposition of the sanction, Anthem must take additional steps, and CMS will recoup additional improperly retained payments. Anthem is challenging the Notice in an administrative proceeding.

### b. Anthem's Discovery Requests

Shortly after CMS issued the Notice, the Government added it to its Rule 26 disclosures because it is relevant to materiality and to rebut arguments Anthem has raised. In this case, Anthem has repeatedly pressed the argument that CMS's failure to take administrative enforcement action against Anthem relating to retrospective chart review (including ***after*** 2018) undercuts the Government's materiality claim. The Notice reflects that CMS ***does*** care about a Medicare Advantage Organization's failure to comply with its regulatory and contractual obligations by refusing to delete unsupported diagnosis codes, and reflects CMS's reaction to an instance where CMS had actual knowledge of specific noncompliance. CMS has already recovered over $300 million that Anthem improperly retained. Further, the Notice specifically articulates the basis for the sanction, and references the communications that Anthem sent over the years to CMS in which it "disclosed" the unsupported diagnosis codes but refused to actually delete them.

In response to the Government's inclusion of the Notice in its Rule 26 disclosures, Anthem issued two document requests and an interrogatory related to the Notice. One document request seeks "All Documents Concerning the Notice of Intermediate Sanctions against Elevance Health." In its Interrogatory, Anthem asks the Government to "Identify all Persons who participated in the decision to issue the Notice of Intermediate Sanctions." In response to these plainly overbroad requests, the Government agreed to produce the Notice and the correspondence between CMS and Anthem that led to the issuance of the Notice, and identified Dr. Mehmet Oz, the Administrator of CMS, as the individual who made the final decision to issue the Notice. Anthem nonetheless has not narrowed its request for "all documents" concerning the Notice or its Interrogatory.

### II.    Anthem Has Not Established That It Is Entitled to Additional Discovery

The Government's responses, along with the Notice itself, provide Anthem with the information that it needs to present its defense. The Notice identifies the basis for the decision to issue it, including the correspondence between Anthem and CMS that led to the decision, and

which the Government has also produced. Anthem's Letter suggests that it plans to argue that the timing of the sanction undercuts materiality. Ltr. at 2. The Government disagrees, but at any rate Anthem already has what it needs to make that argument.

Anthem has not yet sought to notice any depositions concerning the Notice, and the Government does not concede that such depositions would be proper. However, to the extent Anthem argues that it requires additional information about the decision-making process so it can make such a request, this is mistaken. The Notice itself identifies key individuals involved in the Notice, including John Scott, a CMS employee who was deposed in February and who signed the Notice, along with several additional CMS employees listed in the "cc" line of the Notice, while the Government's discovery responses identify the final decisionmaker. Anthem thus has in its possession the relevant documents related to the Notice and the names of key individuals at CMS involved with the sanction.

Anthem ignores these obvious points.  Instead, Anthem engages in speculation: it claims that CMS's issuance of the Notice was not due to the "ordinary-course administrative process," but rather "was an effort to manufacture proof to bolster Plaintiff's FCA allegations in this case." Ltr. at 2. Anthem offers no reason to believe this is the case, let alone why, even if it were true, it would warrant additional discovery. Notably, in its administrative challenge to the Notice, Anthem has objected to the propriety of the Notice but has not argued that CMS issued the Notice to "manufacture materiality" in this litigation.

Here, however, Anthem cites excerpts from two depositions as "evidence" supporting its claim. Ltr. at 2-3. Specifically, Anthem points to the testimony of Cheri Rice, the former Deputy Director of CMS's Center for Medicare, and John Scott, the Director of CMS's Medicare Oversight and Enforcement Group. *Id.* at 2. The cited testimony does not support Anthem's speculation. Ms. Rice testified at her deposition in August 2025 that, since 2020, CMS had not terminated an Anthem contract or taken other administrative enforcement action against Anthem. ECF No. 523-1, Rice Tr. at 422-28. And in February 2026, Mr. Scott testified that he had not received a referral to terminate an MAO's contract for reasons related to its risk adjustment data submissions until recently. ECF No. 523-2, Scott Tr. at 118-20. The Government does not dispute these facts, which in no way demonstrate that the enforcement action CMS took was somehow "not the result of the ordinary-course administrative process," Anthem Ltr. at 2, such that Anthem should be entitled to far-reaching discovery related to the Notice.

Indeed, it is Anthem that attempted to manufacture evidence showing ***non***-materiality by engaging in a years'-long letter writing campaign whereby it purported to disclose unsupported diagnosis codes to CMS while refusing to actually delete them in CMS's systems. For example, in its Letter, Anthem argues that it is "[i]mportant[]" that "CMS never deleted the Disclosed Diagnosis Codes," despite Anthem purportedly "providing the agency with all the data necessary to do so." Ltr. at 2. Anthem supposedly "disclosed" the diagnosis codes to CMS, rather than submit proper data corrections, so it could argue that CMS had failed to take action. Yet now, when CMS has taken action (after repeatedly urging Anthem to comply with its obligations), Anthem argues that the only explanation for CMS's decision that has led already to the recoupment of hundreds of millions of dollars is that CMS wanted to bolster the Government's claims in this case.[3]

---

[3] CMS has already recouped over $300 million from Anthem and is likely to recover substantially more.  In a Securities and Exchange Commission filing, Anthem estimated its total exposure relating to the sanction as $935 million.  *See*

3

Moreover, Anthem's assertion that CMS issued the Notice to manufacture materiality in this case is belied by the Notice itself, which contains a detailed description of the basis for the action.

To the extent Anthem wishes to challenge CMS's administrative action, this is not the appropriate forum to do so. As Anthem well knows, discovery generally is not available in administrative proceedings challenging agency action. Anthem should not be permitted to use discovery in this case to circumvent the administrative process and go hunting for materials to which it is not entitled in order to then use them in the administrative proceeding pursuant to the amended protective order in this case.

### III.    Anthem's Requests Are Not Proportional and A Fishing Expedition

Anthem's requests for additional discovery should also be denied because they are disproportional to the needs of the case.  As an initial matter, Anthem's request for "all" documents is plainly overly broad, and blanket requests of this type are disfavored. *Sound Around, Inc. v. Friedman*, No. 24 Civ. 1986 (DLC) (KHP), 2025 WL 2588637, at *3 (S.D.N.Y. Sept. 8, 2025) ("[Rule 34] requires parties to describe with reasonable particularity each item or category of items requested.").

Moreover, Anthem's requests seek irrelevant information and documents that, if they exist, are plainly protected by the attorney-client and deliberative process privileges. By seeking any and all documents relating to the Notice, without limitation, Anthem is asking the Government to undertake a large search that would require an extraordinarily burdensome privilege review, including a burdensome review by CMS, without providing a sufficient basis for why such deliberative documents are relevant. Indeed, the deliberative and privileged documents are not relevant because they do not reflect the final basis for the CMS decision—CMS speaks through its official actions. Further, Anthem claims that the Notice was issued only to "manufacture proof" in this case, and has indicated it is specifically seeking communications between Department of Justice attorneys and CMS (as well as communications between CMS attorneys). A search and review for such clearly privileged material to which Anthem would not, at any rate, be entitled is not proportional given the burden of such a review. Anthem has not even attempted to articulate a reason why privileges would not apply or could be overridden here—and neither would such a claim be credible.

Anthem's requests, if permitted, risk derailing fact discovery in this case while Anthem attempts to litigate whether CMS's sanctions action, a side-issue that Anthem itself argues is largely irrelevant to this FCA case, *see* Ltr. at 2, was justified. If Anthem is entitled to a search of the Government's privileged communications concerning the Notice, then the Government is entitled to a search of Anthem's internal (and presumably often privileged) documents concerning its letter-writing campaign to CMS and decision to "disclose" unsupported diagnosis codes to CMS while refusing to actually delete them. Such materials are at least as relevant to Anthem's scienter and efforts to manufacture immateriality as the purported materials Anthem seeks.

* * *

Accordingly, we respectfully request that the Court deny Anthem's request for additional discovery related to the Notice. We thank the Court for its consideration of this submission.

---

https://www.sec.gov/ix?doc=/Archives/edgar/data/0001156039/000115603926000043/elv-20260331.htm#fact-identifier-1132.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    */s/ Dana Walsh Kumar*
PIERRE ARMAND
PETER ARONOFF
RACHAEL DOUD
HARRY FIDLER
ADAM GITLIN
CHARLES JACOB
DANA WALSH KUMAR
Assistant United States Attorneys
86 Chambers Street, 3rd Floor

cc:  Counsel of record (via ECF)

5