# Exhibit A

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



**MEDICARE PARTS C AND D OVERSIGHT AND ENFORCEMENT GROUP**

February 27, 2026

Ms. Aimee Dailey
President Medicare Programs
Elevance Health, Inc.
5800 Northampton Blvd
Norfolk, VA 23502

Re:     Notice of Imposition of Intermediate Sanctions (Suspension of Enrollment and
        Communications) for Medicare Advantage-Prescription Drug Plan Contract Numbers:
        H0544, H0629, H0907, H1212, H1423, H1607, H1894, H1947, H2441, H2593, H2687,
        H2836, H3240, H3447, H3536, H3655, H4003, H4004, H4036, H4161, H4346, H4471,
        H4694, H4704, H4909, H5422, H5427, H5431, H5471, H5594, H5828, H5854, H6078,
        H6316, H6988, H7093, H7220, H7522, H8432, H8552, H8849, H9065, H9219, H9525,
        and R5941.[1]

Dear Ms. Dailey:

Pursuant to 42 C.F.R. §§ 422.756 and 423.756, the Centers for Medicare & Medicaid Services
(CMS) hereby informs Elevance Health, Inc. ("Elevance") of its determination to impose
intermediate sanctions on the following Medicare Advantage-Prescription Drug Plan (MA-PD)
Contracts: H0544, H0629, H0907, H1212, H1423, H1607, H1894, H1947, H2441, H2593,
H2687, H2836, H3240, H3447, H3536, H3655, H4003, H4004, H4036, H4161, H4346, H4471,
H4694, H4704, H4909, H5422, H5427, H5431, H5471, H5594, H5828, H5854, H6078, H6316,
H6988, H7093, H7220, H7522, H8432, H8552, H8849, H9065, H9219, H9525, and R5941.

These intermediate sanctions will consist of the suspension of enrollment of Medicare
beneficiaries into Elevance plans (42 C.F.R. §§ 422.750(a)(1) and 423.750(a)(1)), and the
suspension of communication activities to Medicare beneficiaries (42 C.F.R. §§ 422.750(a)(3)
and 423.750(a)(3)). CMS is imposing these intermediate sanctions effective March 31, 2026,
pursuant to 42 C.F.R. §§ 422.756(c)(1) and 423.756(c)(1).[2] The intermediate communications
and enrollment sanctions will remain in effect until CMS is satisfied that the deficiencies upon
which the determination was based have been corrected and are not likely to recur. CMS will
provide Elevance with detailed instructions regarding the marketing and enrollment suspensions
in a separate communication.

---

[1] This sanction applies to all Medicare Advantage contracts currently held by Elevance Health, Inc. (Elevance). If
Elevance believes specific contracts should be excluded from this sanction because those contracts are not
implicated in the conduct discussed below, Elevance may identify those contracts in any rebuttal it submits.
[2] See Corrective Action Steps section for more details on the effective date of the sanctions.

US_014684060

**Summary of Noncompliance**

This notice imposes intermediate sanctions on Elevance for substantial and persistent noncompliance with Medicare Advantage risk adjustment data submission requirements. Since November 13, 2018, Elevance has failed to submit data corrections for diagnosis codes it identified as unsupported by medical record documentation through CMS's required electronic systems. Instead, Elevance has repeatedly provided this information via encrypted external USB flash drives, a method that CMS has explicitly rejected. Despite repeated clear directives from CMS that encrypted files do not satisfy regulatory obligations, Elevance continued this practice as recently as October 10, 2025. This conduct violates multiple statutory and regulatory requirements, including the obligation to submit accurate risk adjustment data through the required electronic systems, report and return overpayments within 60 days of identification, and certify the accuracy of data submissions. As a result, CMS is imposing enrollment and communications suspensions pursuant to 42 C.F.R. § 422.752(b) until Elevance corrects these deficiencies and demonstrates that they will not recur.

**Contracting, Risk Adjustment Data, and Reporting and Returning Overpayments Requirements**

Medicare Advantage (MA) organizations are subject to comprehensive statutory, regulatory, and contractual obligations regarding the submission and accuracy of risk adjustment data. Under Section 1853(a) of the Social Security Act (the Act), the Secretary of Health and Human Services has the authority to require MA organizations to submit data deemed necessary to calculate MA risk adjustment payments. This foundational authority establishes the framework for all subsequent regulatory requirements and has been implemented through various regulations that govern how MA organizations must handle risk adjustment data.

MA organization payments are primarily based on data submitted to CMS under 42 C.F.R. § 422.310(b) and (d). Pursuant to 42 C.F.R. § 422.308(c), CMS will adjust the payment amounts based on health status and demographic factors. Therefore, certain diagnosis codes can increase an MA organization's monthly payment amount. However, if a diagnosis is not supported in the medical record, the MA organization cannot submit the diagnosis to CMS and is not entitled to payment based on it. Accurate risk adjustment data are central to CMS's payment determinations under 42 C.F.R. § 422.308(c). Since unsupported diagnosis codes increase capitated payments, they are material to CMS's payment determinations and the amounts paid.

Section 422.310(d)(1) requires that MA organizations "submit data that conform to" the International Classification of Diseases (ICD) coding guidelines. *See* 42 C.F.R. § 422.310(d)(1) (requiring MA organizations to submit data in conformity with "all relevant national standards," which, pursuant to 42 C.F.R. § 162.1002(c), include the ICD coding guidelines). In turn, the ICD coding guidelines provide that "accurate coding cannot be achieved" in the absence of "complete documentation in the medical record." *See, e.g.*, ICD-10-CM Official Guidelines for Coding and Reporting FY 2014 (the "2014 ICD-10 Coding Guidelines"). This is further reinforced in the Medicare Managed Care Manual that states MA organizations "must: [e]nsure the accuracy and integrity of risk adjustment data submitted to CMS. ***All diagnosis codes submitted must be documented in the medical record*** and must be documented as a result of a face-to-face visit." *See* Chapter 7, Section 40 of the Medicare Managed Care Manual (emphasis added).

US_014684061

When an MA organization identifies (i.e., has knowledge) that diagnosis codes are not supported by medical record documentation, it has clear obligations under federal law to correct this data. Section 1128J(d) of the Act (codified in CMS regulations at 42 C.F.R. § 422.326) establishes the 60-day rule (i.e., the "Overpayment Rule"), which requires that when an overpayment is identified, it must be reported and returned within 60 days of identification. As recognized in *UnitedHealthcare Ins. Co. v. Becerra*, 16 F.4th 867, 869 (D.C. Cir. 2021), "[n]either Congress nor CMS has ever treated an unsupported diagnosis for a beneficiary as valid grounds for payment to a Medicare Advantage insurer. Consistent with that approach, the Overpayment Rule requires that, if an insurer learns a diagnosis it submitted to CMS for payment lacks support in the beneficiary's medical record, the insurer must refund that payment within sixty days. The Rule couldn't be simpler."[3] For purposes of 42 C.F.R. § 422.326(c), an overpayment is "identified" when an MA organization knowingly receives or retains an overpayment. "Knowingly" has the meaning set forth in the False Claims Act, 31 U.S.C. § 3729(b)(1)(A), which is not limited to actual knowledge, but also includes deliberate ignorance and reckless disregard of the truth or falsity of the information.

Likewise, Chapter 7, Section 40 of the Medicare Managed Care Manual, which is incorporated into Part C annual agreements signed by CMS and contracting MA organizations, states that "(i)f upon conducting an internal review of submitted diagnosis codes, the plan sponsor determines that any diagnosis codes that have been submitted do not meet risk adjustment submission requirements, the plan sponsor is responsible for deleting the submitted diagnosis codes as soon as possible." This obligation to delete incorrect diagnosis data applies regardless of whether the MA organization identifies the incorrect diagnosis data prior to the risk adjustment deadline or after the deadline has passed.

In addition, CMS has clearly explained how MA organizations must submit risk adjustment data. Pursuant to 42 C.F.R. § 422.310(b) and (d)(2), MA organizations must submit risk adjustment data, which includes corrections to risk adjustment data, electronically to CMS in accordance with CMS instructions and that conform to CMS's requirements. CMS has issued many communications on how MA organizations must submit this data through CMS's established electronic systems, which serve as the exclusive methods for reporting and correcting risk adjustment data.[4] These official mechanisms include the Risk Adjustment Processing System (RAPS), the Encounter Data Processing System (EDPS), and under limited circumstances, the Risk Adjustment Overpayment Reporting (RAOR) module in the Health Plan Management System (HPMS). Alternative methods of providing data to CMS, such as encrypted files on external media, do not satisfy these regulatory obligations and are not acceptable substitutes for the required electronic submission systems. Use of external media to submit protected health information outside CMS systems creates audit and data integrity risks inconsistent with CMS controls and federal security standards.

---

[3] *See also Health Plan Management System (HPMS) Memo*, Reminder of Existing Obligation to Submit Accurate Risk Adjustment Data, April 15, 2022
("[a] diagnosis code that is not properly documented in a patient's medical record is not a valid basis for CMS risk adjustment payments to an MA organization").

[4] CMS has issued numerous communications over the years, including HPMS memos, reminding MA organizations that risk adjustment data corrections must be submitted through the established submission process. These communications include, but are not limited to, the April 15, 2022 *HPMS Memo*, Reminder of Existing Obligation to Submit Accurate Risk Adjustment Data.

US_014684062

The above requirements are further supported by the broader duties imposed by the MA contracting regulations, including the duty to exercise due diligence and good faith in ensuring data accuracy, 42 C.F.R. § 422.504(l), and the duty to detect and correct non-compliance with CMS's program requirements, 42 C.F.R. § 422.503(b)(4)(vi). The data certification requirement under 42 C.F.R. § 422.504(l) requires MA organizations to certify, based on their "best knowledge, information, and belief," that the risk adjustment data they submit under 42 C.F.R. § 422.310 are "accurate, complete, and truthful." This data certification requirement is reinforced through the Electronic Data Interchange (EDI) agreement, where each MA organization agrees "based on best knowledge, that it will submit data that are accurate, complete, and truthful," as well as through annual data certification processes required under MA contracts. While CMS acknowledges that MA organizations cannot reasonably be expected to submit perfect data, the "best knowledge, information, and belief" standard requires organizations to make good faith efforts and undertake due diligence to ensure data accuracy, investigate and correct known errors, maintain systems designed to yield accurate information, and not ignore available information regarding unsupported diagnoses.

**History of Elevance's Noncompliance**

Between November 13, 2018, and October 10, 2025, Elevance sent seven separate letters to CMS indicating that it did not intend to submit risk adjustment data corrections for certain diagnosis codes, labeled by Elevance as "potentially unverified diagnosis codes", through CMS's electronic systems, but instead via encrypted external USB flash drives.[5] These "potentially unverified diagnosis codes" were associated with dates of service beginning in 2015 through April 2, 2023 (Payment Years (PY) 2016-2024).[6] In its letters, Elevance stated that it was unable to verify through its retrospective chart reviews (or other processes) that these provider-generated diagnosis codes were documented in the medical records, or that it "believes" that these diagnosis codes "might not be verifiable by medical records." Rather than using RAPS, EDPS, or the RAOR module, Elevance submitted the data to CMS via encrypted external USB flash drives. Additionally, Elevance requested CMS refrain from recouping premiums, conducting payment offsets, or making adjustments related to these potentially unverified diagnosis codes. For dates of service from April 3, 2023 through December 31, 2023, Elevance claims to have submitted data corrections through EDPS and RAOR, while maintaining its request that CMS refrain from recoupment actions.

Between 2018 and 2025, CMS sent six letters to Elevance instructing Elevance to comply with its obligations to ensure risk adjustment data accuracy and to submit data corrections through CMS's official systems when unsupported diagnosis codes are identified.[7] CMS reiterated that all diagnosis codes submitted for risk adjustment purposes must be documented in beneficiaries' medical records pursuant to ICD Official Coding Guidelines, as required by 42 C.FR.

---

[5] The letters are dated: November 13, 2018; March 5, 2019; April 16, 2020; June 8, 2022; June 28, 2024; October 7, 2024; and October 10, 2025.

[6] Based on review of Elevance's correspondence from November 13, 2018 through October 10, 2025, CMS has determined these dates of service span calendar year 2015 through April 2, 2023 (PY 2016-2024). Elevance has not provided a consolidated list of all dates of service across its multiple submissions. Elevance may clarify specific dates of service in its rebuttal.

[7] The letters are dated: July 12, 2019; May 28, 2020; November 16, 2023; March 22, 2024; October 16, 2024; and May 16, 2025.

US_014684063

§§ 422.310(d)(1) and 45 C.F.R. § 162.1002(c)(2) and (c)(3). CMS acknowledged receipt of Elevance's correspondence and reserved all rights and remedies associated with Elevance's submission of "invalid risk adjustment data".

CMS's October 16, 2024 letter explicitly stated that if Elevance has information that certain diagnoses are unsupported by a beneficiary's medical records, the corresponding overpayment must be reported and returned within 60 days of identification in accordance with section 1128J(d) of the Act. CMS further stated: "To be clear, sending encrypted files with correspondence to CMS does not satisfy Elevance's obligations. Pursuant to 42 C.F.R. § 422.310(b) and (d), and in accordance with the documents identified above and in CMS's prior correspondence, Elevance must submit the data corrections related to all unsupported diagnosis codes (including those identified in prior correspondence) to RAPS and/or EDPS." On May 16, 2025, CMS reiterated this position in response to a February 6, 2025 letter from Elevance, maintaining that the official correction mechanisms (RAPS, EDPS, or RAOR) are exclusive and that Elevance must submit data corrections through these systems.

In addition to specific letters to Elevance, CMS has communicated the obligation to submit accurate risk adjustment data to the industry, including Elevance, on several occasions. Notably, CMS issued a memorandum on April 15, 2022 reminding all MA organizations of existing obligations under statute, regulation, and contract to submit accurate risk adjustment data and to continue making closed-period deletes and submitting auditable estimates through the RAOR module.[8] CMS also issued a memorandum on March 15, 2024 to provide support for the use of encounter data in overpayment reruns.[9] CMS held a user group webinar to further provide support on May 1, 2024 and released a follow-up memorandum to address questions on May 21, 2024.[10]

Despite these clear and repeated directives, Elevance has continuously refused to submit these data corrections through CMS's required systems (RAPS, EDPS, or RAOR) since at least November 13, 2018. Instead, Elevance provided encrypted files on external USB flash drives, a method CMS explicitly rejected as insufficient. Most recently, on October 10, 2025, after CMS's October 16, 2024 directive not to submit data via encrypted files, Elevance again provided an encrypted external USB flash drive with data for potentially unverified diagnosis codes rather than submitting the risk adjustment corrections though the required CMS electronic systems (RAPS, EDPS, or RAOR).

Elevance has explicitly acknowledged in its correspondence to CMS that it conducted retrospective medical record reviews and identified diagnosis codes that it has been unable to verify by medical record documentation. Through these reviews, which were conducted by certified coders, Elevance determined that certain provider-generated diagnosis codes previously submitted to CMS for risk adjustment purposes were not supported by the underlying medical records. Despite having knowledge that these diagnosis codes were unverified and did not conform to the ICD coding guidelines, as required by 42 C.F.R. § 422.310(d)(1), Elevance did

---

[8] *HPMS Memo*, Reminder of Existing Obligation to Submit Accurate Risk Adjustment Data, April 15, 2022
[9] *HPMS Memo*, Support for Use of Encounter Data in Overpayment Reruns, March 15, 2024
[10] *HPMS Memo*, Follow Up to May 1, 2024 "Use of Encounter Data in Overpayment Reruns" User Group for All Organizations Who Submit Risk Adjustment Data, May 21, 2024

US_014684064

not report and return the associated overpayments within 60 days of identification because Elevance has not submitted the data through the required systems.

Although Elevance had knowledge that diagnosis codes previously submitted were not supported by medical records and had not been corrected through CMS's required systems, Elevance continued to annually certify the accuracy, completeness, and truthfulness of its risk adjustment data submissions based on its "best knowledge, information, and belief" under 42 C.F.R. § 422.504(l). Elevance possessed specific, documented knowledge of the unverified diagnosis codes through its own medical record review processes (or other processes) yet continued to represent to CMS that its risk adjustment data submissions were accurate, complete, and truthful.

Elevance's conduct demonstrates a pattern of knowing noncompliance that has persisted for over seven years despite repeated clear directives from CMS. The unsupported diagnosis codes span multiple payment years (PY 2016–2024) and affect numerous contracts and beneficiaries. The potential financial impact of these unsupported diagnoses is substantial and ongoing. Elevance's knowledge regarding unverified diagnosis codes, combined with its failure to correct this data through required systems and its continued inaccurate certifications of data accuracy, constitutes substantial failure to carry out its contracts with CMS and represents conduct inconsistent with the efficient and effective administration of the Medicare Advantage program. CMS is, therefore, imposing intermediate sanctions against Elevance pursuant to 42 C.F.R. § 422.752(b).

**Violations of Contracting, Risk Adjustment Data, and Reporting and Returning Overpayments Requirements**

CMS determined that Elevance has failed the following requirements related to contracting, risk adjustment data, and reporting and returning overpayments. This determination is based on the administrative record, including Elevance's correspondence dated November 13, 2018 through October 10, 2025, CMS's prior directives, and applicable statutory and regulatory authorities.

1. Elevance failed to delete diagnosis codes that are not documented in its medical records. More specifically, through internal medical record reviews and other review processes Elevance has identified codes that do not conform to the ICD coding guidelines as required by 42 C.F.R. § 422.310(d)(1). Once Elevance determined that the data submitted was not in compliance with § 422.310(d)(1), it had a responsibility to correct the data submitted. Elevance's failure to comply with ICD coding guidelines violates 42 C.F.R. § 422.310(d)(1) and 45 C.F.R. § 162.1002(c)(2) and (c)(3).

2. Elevance failed to report and return overpayments no later than 60 days after the date on which the overpayment was identified in accordance with CMS requirements. Through its internal medical record review process and other review processes, Elevance identified codes that were not supported in the medical records. Once Elevance identified overpayments, as defined under 42 C.F.R. § 422.326(c), it had an obligation under section 1128J(d) of the Act and 42 C.F.R. § 422.326(d) to report and return the overpayments associated with the diagnoses that it initially submitted to CMS. Elevance's failure to comply with reporting and returning overpayments requirements violates 42 C.F.R. § 422.326(d) and section 1128J(d) of the Act.

US_014684065

3. Elevance failed to submit risk adjustment data electronically in accordance with CMS instructions. Specifically, since at least November 13, 2018, Elevance has been submitting risk adjustment data corrections related to some unsupported diagnosis codes associated with dates of service beginning in 2015 through April 2, 2023 (PY 2016-2024) on external USB flash drives, and has been continually failing to submit the data through CMS's required systems (RAPS, EDPS, or RAOR). Therefore, Elevance failed to submit risk adjustment data accurately when it did not appropriately submit risk adjustment data corrections related to unsupported diagnosis codes through the correct systems. Elevance's failure to comply with risk adjustment data requirements violates 42 C.F.R. § 422.310(b) and (d)(2).

4. Elevance inaccurately certified the accuracy, completeness, and truthfulness of relevant data that CMS requests to determine payment. Specifically, Elevance continued to annually certify the accuracy of the risk adjustment diagnosis data submitted for the relevant payment year knowing that diagnosis codes previously submitted were not supported by medical records and corrections were not submitted through CMS's required systems. Elevance's failure to comply with contract requirements violates 42 C.F.R. § 422.504(l).

**Legal Basis for the Imposition of Intermediate Sanctions**

Pursuant to 42 C.F.R. § 422.752(b), CMS may impose intermediate sanctions (enrollment and communications suspensions) (42 C.F.R. § 422.750(a)(1) and (3)), for any of the bases listed in 42 C.F.R. § 422.510(a). Specifically, CMS may impose intermediate sanctions if CMS determines an MA organization has failed substantially to carry out its contract (42 C.F.R. § 422.510(a)(1)), is carrying out its contract in a manner that is inconsistent with the efficient and effective administration of the Program (42 C.F.R. § 422.510(a)(2)), and fails to provide CMS with valid data as required under § 422.310 (42 C.F.R. § 422.510(a)(4)(iii)).

For over seven years, Elevance has consistently failed to comply with CMS requirements for submitting valid risk adjustment data in the manner required by CMS. Even after CMS explicitly instructed Elevance to delete the diagnosis codes through CMS's required systems (RAPS, EDPS, and RAOR) and notified Elevance that CMS would not accept the USB flash drives, Elevance continued to send risk adjustment data corrections related to some unsupported diagnosis codes through inappropriate means. As a result, Elevance's continued failure to use CMS's required submission systems, despite repeated directives, constitutes a substantial failure to carry out its contractual obligations under § 422.510(a)(1); its inaccurate submission and retention of unsupported diagnosis codes impairs CMS's ability to ensure accurate payments and undermines the efficient and effective administration of the Medicare Advantage program under § 422.510(a)(2); and its failure to submit corrected and valid data through the required systems is a failure to provide CMS with valid data as required under § 422.310, satisfying § 422.510(a)(4)(iii).

After considering the duration, scope, repeated nature, and seriousness of the noncompliance, CMS has determined that enrollment and communication suspensions are necessary and proportionate to protect the integrity of the Medicare Advantage program. Therefore, Elevance's

US_014684066

noncompliance provides a sufficient basis for the imposition of intermediate sanctions (enrollment and communications) (42 C.F.R. § 422.752(b)).

**Corrective Action Steps**

Pursuant to 42 C.F.R. §§ 422.756(c)(3) and 423.756(c)(3), the sanctions will remain in effect until CMS is satisfied that the deficiencies that are the basis for the sanctions determination have been corrected and are not likely to recur. To correct the deficiencies identified in this notice:

1. Elevance must submit all data corrections for the potentially unverified diagnosis codes disclosed in its correspondence from November 13, 2018 through October 10, 2025 through CMS's official electronic systems as specified below in accordance with 42 C.F.R. § 422.310(b) and (d)(2) and § 422.326:
   a. **To the extent that the contract is active and the data is for dates of service within the 6-year look back period (i.e., for PY 2020-2025/ 2019-2024 dates of service)**, submit the data to the appropriate system (RAPS/EDPS). Do not submit an overpayment report to the RAOR module for this scenario.
   b. **To the extent that the contract is active and the data is for dates of service beyond the 6-year look back period (i.e., for PY 2016-2019/ 2015-2018 dates of service)**, submit a new overpayment report to the RAOR module and provide the reason for overpayment, reason the data is not available (i.e., data is for dates of service beyond the 6-year look back period), an auditable estimate, and a description of how the auditable estimate was derived.
   c. **To the extent that the contract is non-active**, submit a new overpayment report to the RAOR module and provide the reason for overpayment, reason the data is not available (i.e., terminated contract), an auditable estimate, and a description of how the auditable estimate was derived.
2. Elevance must cease the practice of submitting risk adjustment data via encrypted external USB flash drives or any other method not approved by CMS, as such methods do not satisfy regulatory obligations and create security and operational concerns that are inconsistent with the efficient and effective administration of the MA program.
3. Elevance must implement processes to ensure that diagnosis codes that are identified as not supported by medical record documentation are reported and corrected through the required systems within 60 days of identification in accordance with Section 1128J(d) of the Act and 42 C.F.R. § 422.326(d).
4. In all future annual Risk Adjustment Data Certifications, Elevance must certify the accuracy, completeness, and truthfulness of risk adjustment data submitted to CMS to the best of its knowledge, information, and belief in accordance with 42 C.F.R. § 422.504(l). Elevance cannot modify or caveat its certification in any way, including through separate communications with CMS.

***NOTE: If Elevance completes number one (1) above and submits an attestation of completion within 30 days of the date of this notice (by March 30, 2026), CMS will not effectuate the sanctions. Elevance's attestation must be submitted by Elevance's Chief Executive Officer or most senior official, stating that all data corrections for the potentially***

Page **8** of **10**

US_014684067

*unverified diagnosis codes disclosed in its correspondence from November 13, 2018 through October 10, 2025 have been submitted through CMS's official electronic systems (RAPS, EDPS, or RAOR) in accordance with the specifications outlined in number one (1) above.[11] If Elevance does not complete number one (1) above and submit the required attestation within 30 days, the sanctions will go into effect the next day on March 31, 2026.*

Once the sanctions are in effect, Elevance must submit to CMS a detailed corrective action plan that 1) includes specific timelines for submitting all outstanding data corrections through the required systems as outlined in number one (1) above, 2) describes the processes Elevance will implement to ensure ongoing compliance with risk adjustment data submission requirements, and 3) provides assurance that the deficiencies will not recur. CMS will review the corrective action plan and monitor Elevance's implementation to determine when the deficiencies have been adequately corrected and the sanctions may be lifted.

**Opportunity to Respond to Notice**

Pursuant to 42 C.F.R. §§ 422.756(a)(2) and 423.756(a)(2), Elevance has 10 calendar days after the receipt of this notice to provide a written rebuttal, by March 10, 2026. Please note that CMS considers receipt as the day after the notice is sent by fax, email, or overnight mail or in this case February 28, 2026. If you choose to submit a rebuttal, please send it to the attention of Kevin Stansbury at the email address noted below. Note that rebuttal is not an appeal and the sanctions imposed pursuant to this letter are not stayed pending a rebuttal submission.

If Elevance believes specific contracts should be excluded from this sanction because those contracts are not implicated in the conduct described in this letter, Elevance's rebuttal may identify such contracts and provide supporting documentation regarding any data corrections already submitted through the required systems.

**Right to Request a Hearing**

Elevance may also request a hearing before a CMS hearing officer in accordance with the procedures outlined in 42 C.F.R. §§ 422.641-696 and 423.650-668. Pursuant to 42 C.F.R. §§ 422.756(b) and 423.756(b), your written request for a hearing must be filed within 15 calendar days after the receipt of this notice, by March 16, 2026.[12] Please note, however, a request for a hearing will not delay the effective date of the sanctions.

The request for a hearing must be sent to CMS electronically to the CMS Office of Hearings (OH). OH utilizes an electronic filing and case management system, the Office of Hearings Case and Document Management System ("OH CDMS").

Elevance should complete the one-time OH CDMS registration process as soon as possible after receiving this notice, even if Elevance is unsure whether it will appeal CMS's imposition of intermediate sanctions. After the registration process is complete, Elevance must then file its request for a hearing within the time frame set forth above.

---

[11] CMS will provide Elevance with instructions on the attestation submission in separate commutations.

[12] Since the 15th day, March 15, 2026, falls on a weekend or holiday, the date reflected in the notice is the next regular business day for you to submit your request.

Page **9** of **10**

US_014684068

Registration information (including how to add an outside representative/law firm to participate in the appeal), filing instructions and general information may be found on the OH webpage at https://www.cms.gov/medicare/regulations-guidance/cms-hearing-officer/hearing-officer-electronic-filing. Follow the OH CDMS External Registration Manual for step-by-step instructions regarding registration and the OH CDMS Hearing Officer User Manual for appeal filing instructions.[13]

A copy of the hearing request should also be emailed to CMS at the following address:

Kevin Stansbury
Director
Division of Compliance Enforcement
Centers for Medicare & Medicaid Services
Email: kevin.stansbury@cms.hhs.gov

CMS will consider the date the Office of Hearings receives the request via the CDMS as the date of receipt of the request(s). The request for a hearing must include the name, fax number, and email address of the contact within Elevance (or an attorney who has a letter of authorization to represent the organization) with whom CMS should communicate regarding the hearing request.

Elevance may also be subject to other applicable remedies available under law, including the imposition of additional sanctions, penalties, or other enforcement actions as described in 42 C.F.R. Parts 422 and 423, Subparts K and O.

If you have any questions about this notice, please call or email the enforcement contact provided in your email notification.

Sincerely,

/s/

John A. Scott
Director
Medicare Parts C and D Oversight and Enforcement Group

cc:    Kevin Stansbury, CMS/CM/MOEG/DCE
       Shruti Rajan, CMS/CM/MPPG
       Rebecca Harrington, CMS/CM/MPPG/DPP
       Ashley Hashem, CMS/OPOLE
       Adams Solola CMS/OPOLE
       Nicholas Rodriguez, CMS/OPOLE
       Kenvin Ivory-Kennedy, CMS/OPOLE

---

[13] If technical assistance is required, please contact the OH CDMS Help Desk at 1-833-783-8255 or by email at helpdesk_ohcdms@cms.hhs.gov. The hours of operation are Monday–Friday (excluding federal holidays) from 7:00 a.m. to 8:00 p.m. Eastern Time.

US_014684069