

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

July 1, 2026

Via ECF
The Honorable Katharine H. Parker
United States District Court
500 Pearl Street
New York, New York 10007

  Re: *United States of America v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP)

Dear Judge Parker:

  This Office represents the Government in the above-referenced matter. We write concerning two disputes the parties intend to address at the upcoming conference scheduled for July 7, 2026. The first dispute arises from Anthem's ongoing deficient response to one of the Government's requests in its Seventh Set of Requests for Production ("RFPs"), which were served on February 20, 2026.[1] The parties raised disputes concerning Anthem's response to these interrogatories at the last conference, held on May 19, 2026, and the Court issued an order concerning Anthem's response. Dkt. No. 516. Anthem has nonetheless continued to refuse to appropriately respond to one of the requests. The other dispute arises from Anthem's wholesale refusal to answer any of the Government's Second Set of Interrogatories, which were served on May 1, 2026.

### I. Anthem's Response to RFP 7-5 Is Still Deficient

  Anthem should be required to promptly produce the final version of its "2 way review protocol," which would reflect Anthem's final policy concerning its chart review "looking both ways"—*i.e.*, deleting unsupported diagnosis codes as a result of chart review, instead of only adding them. RFP 7-5 seeks Anthem's written policies governing chart review "looking both ways." In advance of the May 19 conference, Anthem only agreed to produce policies dated June 1, 2013, through March 1, 2017, even though Anthem knew that no such policy had been finalized (or even, it appears, drafted) by March 1, 2017. Thus, Anthem initially sought to avoid a substantive response by applying limitations that it knew would generate a null set.

  As the Government explained at the May 19 conference, Anthem previously produced a draft policy, which was circulated on February 19, 2018 (*i.e.*, nearly a year after Anthem's proposed cut-off date). ██████████████████████████████████████████ s. *See* Ex. A. ████████████████████████████████████████████████████████████ *See id.* ████████████████████

---

[1] The parties had planned to raise another dispute concerning Anthem's response to the Seventh Set of RFPs at the conference but were able to resolve that issue.



*Id.*
at 3.

*Id.* at 12.

*Id.* at 7.

At the May 19 conference, Anthem argued that it should not have to search for or produce the final versions of the draft policies. The Court rejected Anthem's argument, explaining that "the Government has satisfactorily demonstrated that a final chart-review policy concerning the identification or deletion of unsupported diagnosis codes is relevant to feasibility of conducting a so-called two-way review." Dkt. No. 516 at 5. The Court ordered the Government to "identify for Anthem the Bates number of the draft policy in its possession for which it seeks a final version" and ordered Anthem to "look for and produce the corresponding final policy, if one exists, and regardless of how any final version of the policy may differ from the draft identified by the Government, up to and including the first finalized policy on that subject if one was finalized on or before December 31, 2018." *Id.* at 5-6. The Court further ordered that "[i]f no such policy was finalized by the end of 2018, Anthem shall identify when, if ever, the policy was finalized." *Id.*[2]

After the conference, the Government directed Anthem to ███████████████████ ███████████████████████████████████████████████████████████, and asked Anthem to search for and produce the final versions of those policies. Anthem has, however, taken the meritless position that the "2 way review protocol," ██████████████ ███████████████████████████████████████████████████████████, is not a policy, and therefore refused to search for a final version of this protocol. Anthem also asserts that, at the conference, the Government referred to a "policy" in the singular, and the Court's Order uses the term "policy," so Anthem can only be required to produce the final version of one of the three interrelated policy documents and would only search for the final version of the Claims Validation policy.[3] Today, Anthem informed the Government that no final version of the draft Claims Validation policy exists. This means that Anthem is refusing to search for or produce what would be the only final two-way look policy.

The Government apologizes to the extent that counsel misspoke at the May 19 conference and suggested it was seeking a single document. However, the final version of the "2 way review protocol" is plainly responsive to RFP 7-5 and relevant to the feasibility of conducting a two way review, as the Court recognized. Further, the "protocol" and "Claims Validation" document were interrelated documents that together comprised the draft two-way look policy. As it appears there is no final version of the Claims Validation document, it is all the more important for Anthem to produce the final version of the two way look protocol.

Anthem's attempt to avoid its obligation to search for a document with such clear relevance—and having already lost on this issue at the previous conference—does not exhibit the

---

[2] During the May 19, 2026, conference, the Court ordered that Anthem was to produce any policy that was finalized by the end of 2019, rather than the end of 2018. Tr. at 27-28.
[3] Anthem later informed the Government that the final version of RA 117 has already been produced.

respect for Federal Rule of Civil Procedure 1 that the Court expects. *See* Individual Civil Practices of Hon. Katharine H. Parker II.c; *Sound Around, Inc. v. Friedman*, No. 24 Civ. 1986 (DLC) (KHP), 2025 WL 1531691, at *4 (S.D.N.Y. May 28, 2025). Indeed, the Court warned at the May 19 conference that Anthem should not attempt to use a rigid interpretation of the Court's directions to avoid identifying a relevant policy, instructing that "it doesn't have to be the exact name of the exact document because another person might have revised it and saved it in a different name." Tr. 29. Anthem should be required to search for and produce the final version of the 2 way review protocol.

## II. Anthem Inappropriately Refused to Answer Any of the Government's Second Set of Interrogatories

The Court's December 22, 2025, scheduling order, Dkt. No. 425, provided a deadline for the parties to serve interrogatories before the close of discovery, and both parties did so, with the Government serving twenty-three interrogatories (in addition to two it previously served) and Anthem serving twenty-five interrogatories (in addition to five it previously served). The parties' case management plan provided that each party could serve up to thirty-five interrogatories. Dkt. No. 84 at 5. The Government painstakingly responded to Anthem's interrogatories and provided substantive and sworn answers to almost all of them. Meanwhile, Anthem refused to provide a single sworn answer to any of the Government's interrogatories even in part. *See* Ex. B. Instead, Anthem interposed a series of largely boilerplate objections to each interrogatory that fail to make clear the basis for Anthem's complete refusal to answer. Anthem's responses are woefully deficient.

Based on its letter to the Court opposing the Government's request to submit a position statement on this issue, Dkt. No. 534, Anthem relies primarily on its argument that the Government's interrogatories contain improper subparts and the Government has therefore exceeded the limit on the permissible number of interrogatories. This argument is meritless.

First, Anthem interposed this objection to every single interrogatory (even those that plainly do not have any subparts), and did not specify which portions of particular interrogatories it contends constitute separate subparts.

Moreover, when the parties met and conferred about this issue, Anthem espoused an interpretation of this principle that would render interrogatories largely useless. For example, the Government's first interrogatory seeks, for each year during a specific defined period, the total risk adjustment payments Anthem received from CMS as a result of diagnosis codes identified through the chart review program, and the methodology and data sources Anthem used to make these calculations. Anthem documents regularly reference specific figures for chart review revenues at particular points in time, *see, e.g.*, Ex. C ███████████████████████ ███████████████████████ ), and this interrogatory seeks total figures by year. During the parties' meet-and-confer, Anthem asserted that Anthem's payments for each year must be requested in a separate interrogatory, and that identifying the methodology and data sources used to calculate those payments would require separate interrogatories still. According to Anthem, simply trying to ascertain Anthem's payments from its chart review program over, say, four years, would require the Government to use twelve of its available thirty-five interrogatories.

Anthem's purported understanding of the Federal Rules of Civil Procedure finds no grounding in case law. It is true that Federal Rule of Civil Procedure 33(a)(1) counts "discrete

subparts" as separate interrogatories. But to count separately, such "subparts" must be "discrete," *i.e.*, independent of each other. Thus, even where an interrogatory contains subparts, those subparts are not counted separately toward the limit if they are "factually interconnected and dependent upon the question posed by the basic interrogatory." *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010); *see also, e.g.*, *Murakhovskaya v. Neos S.p.A.*, No. 24-CV-05917 (HG), 2025 WL 45384, at *1 (E.D.N.Y. Jan. 8, 2025) (interrogatory about "allegedly injured parts of Plaintiff's body and what clothing she was wearing on those parts of her body" was "one interrogatory because the subparts are 'interwoven'" into the common theme of Plaintiff's injury"). Here, the Government seeks annual revenue information for the time period at issue because the figure for each year is relevant and proportional. And, as noted above, there is reason to believe from Anthem's records—as well as basic accounting practices that any large company likely follows—that the information is tallied on a yearly basis. Each yearly total is, plainly, "factually interconnected and dependent upon the question posed by the basic interrogatory." *Ritchie*, 273 F.R.D. at 369. A contrary rule would render Rule 33 useless in complex cases.

Nonetheless, in an effort to address Anthem's concerns, the Government agreed to modify a few of its interrogatories, and informed Anthem's counsel of this by email on Tuesday, June 30.[4] In light of these modifications, and the fact that the Government only served a total of twenty-five interrogatories to begin with, Anthem has no valid basis to maintain its numerosity objection (much less without even specifying which interrogatories purportedly have improper subparts and how many).

During the parties' discussions, Anthem also asserted that many of the Government's interrogatories are not permissible because they are not contention interrogatories, which Anthem argues are the only form of interrogatory permissible in this District at this stage of the case. As support for this supposed limitation—which notably is not even one of the stated objections set forth in Anthem's responses and is therefore waived—Anthem pointed to Local Rule 33.3(c), which states that, "[a]t the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party *may* be served unless the Court has ordered otherwise." (emphasis added). However, this rule in no way suggests that a party can only serve contention interrogatories toward the end of fact discovery, or that it cannot—as the Government has done here—seek to fill gaps in discovery by seeking specific factual information.

Indeed, Local Rule 33.3(b) expressly provides that interrogatories seeking information beyond the discrete categories specified in Local Rule 33.3(a) may be served "[d]uring discovery . . . if they are a more practical method of obtaining the information sought than a request for production or a deposition." The Government's interrogatories meet this condition. For example, many of the Government's non-contention interrogatories are directed at topics about which Anthem witnesses claimed during depositions to lack knowledge or to have forgotten. In such circumstances, an interrogatory to a party serves to answer a question that witnesses have not. And notably, Anthem's own interrogatories are not exclusively contention interrogatories, suggesting that this purported interpretation is a matter of recent convenience rather than genuine conviction.

---

[4] Specifically, the Government agreed to modify Interrogatory Nos. 2, 6, 13, 14, and 16, as set forth in the attached table. *See* Ex. D.

Anthem should be required to answer the Government's interrogatories, without reliance on its baseless interpretation of what constitute subparts. And to the extent Anthem asserts that there is another basis for refusing to answer an interrogatory, Anthem must specify what that basis is. *See, e.g.*, *Shahzad v. Cnty. of Nassau*, No. 13-CV-2268 (SJF) (SIL), 2014 WL 4805022, at *3 (E.D.N.Y. Sept. 26, 2014) ("Defendants' across-the-board 'rejection' of Plaintiff's interrogatories violates Federal Rule 33, which states in relevant part that '[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath,' and that 'the grounds for objecting to an interrogatory must be stated with specificity.'" (quoting Fed .R. Civ. P. 33(b)(3)-(4)); *Pegoraro v. Marrero*, 281 F.R.D. 122, 128–29 (S.D.N.Y. 2012) ("The grounds for objecting to any interrogatory must be stated with specificity . . . . [B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy, while producing no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." (citation omitted)).

Moreover, where Anthem asserts that it can only properly be required to partially answer an interrogatory, it must do so, rather than interpose general boilerplate objections to the interrogatory as a whole. *See, e.g.*, Fed. R. Civ. P. 33 Advisory Committee Notes (noting that subparagraph (b) "emphasize[s] the duty of the responding party to provide full answers to the extent not objectionable" and explaining that "[i]f, for example, an interrogatory seeking information about numerous facilities or products is deemed objectionable, but an interrogatory seeking information about a lesser number of facilities or products would not have been objectionable, the interrogatory should be answered with respect to the latter even though an objection is raised as to the balance of the facilities or products"). For example, Interrogatory No. 4 asks Anthem to identify the "reasons why Anthem decided to implement a Chart Review that Looked Both Ways in or around 2018," including the dates of relevant meetings, analyses, or communications leading to that decision; the participants in that decision; the ultimate decisionmaker(s); and related documents pertaining to the decision. During the parties' meet-and-confer, Anthem stated that it had certain objections to this interrogatory, but agreed that it could, appropriately, be required to identify the reasons it implemented a two way chart review that looked both ways in 2018, when that decision occurred, who participated in the decision, and the ultimate decisionmaker(s), and that such an interrogatory would not contain improper subparts. Yet Anthem refused to answer this interrogatory at all.

In its June 28, 2026, letter, Anthem asserted that the Court should not address its refusal to answer the interrogatories, and the Government should instead be required to meet and confer with Anthem to determine why Anthem refused to answer each interrogatory and how the interrogatory might be modified so Anthem would be willing to answer it. Dkt. No. 534. Such an approach would reward Anthem's abdication of its obligation to answer the Government's interrogatories and improperly shift the burden to the Government to modify its interrogatories without having ever received a meaningful response. Anthem's tactics have already unnecessarily delayed the Government's efforts to complete discovery, as it has now been two months since the Government served its interrogatories and it has received no meaningful response. Accordingly, the Government respectfully requests that Anthem be required to answer its interrogatories substantively, without interposing its baseless numerosity objection.

We thank the Court for its consideration of this submission.

5

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    */s/ Rachael Doud*
PIERRE ARMAND
PETER ARONOFF
RACHAEL DOUD
HARRY FIDLER
ADAM GITLIN
CHARLES JACOB
DANA WALSH KUMAR
Assistant United States Attorneys
86 Chambers Street, 3rd Floor

cc:  Counsel of record (via ECF)

6