# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ANTHEM, INC.,<br><br>    Defendant. | Case No.  1:20-cv-02593-ALC-KHP<br><br>**REPLY IN SUPPORT OF DEFENDANT ANTHEM, INC.'S OBJECTION TO MAGISTRATE JUDGE'S ORDERS** |

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 2

    A.    Plaintiff Does Not Dispute the Facts Most Critical to This Objection .................. 2

    B.    The Second Circuit's Materiality Standard Entitles Anthem to This
        Discovery ......................................................................................................... 4

    C.    Plaintiff Failed to Establish Any Burden, Let Alone Undue Burden ................... 8

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.)*,
139 F.R.D. 295 (S.D.N.Y. 1991) .............................................................................. 10

*Eletson Holdings Inc. v. Levona Holdings Ltd.*,
2025 WL 1335511 (S.D.N.Y. May 7, 2025) ........................................................ 8, 10

*In re Kidd*,
2020 WL 5594122 (D. Conn. Sept. 18, 2020) ........................................................... 9

*Rivera v. Hudson Valley Hosp. Grp., Inc.*,
2019 WL 3955539 (S.D.N.Y. Aug. 22, 2019) ........................................................... 3

*U.S. v. Strock*,
982 F.3d 51 (2d Cir. 2020) ............................................................................. 1, 4, 5, 6

*United States v. Wey*,
252 F. Supp. 3d 237, 250 (S.D.N.Y. 2017) ............................................................. 10

*United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*,
2024 WL 2857885 (D. Utah Mar. 29, 2024) .............................................................. 5

*United States ex rel. Foreman v. AECOM*,
19 F.4th 85 (2d Cir. 2021) .......................................................................................... 5

*United States ex rel. Lee v. N. Metro. Found. for Healthcare, Inc.*,
2021 WL 3774185 (E.D.N.Y. Aug. 25, 2021) ........................................................ 5, 6

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) .................................................................................................... 4

Plaintiff's Response (Dkt. 561) ("Resp.") to Anthem's Objection (Dkt. 551, Dkt. 552) ("Obj.") confirms what Anthem has maintained throughout: Plaintiff seeks to wield the February 2026 Notice of Intermediate Sanctions (the "Notice") as a sword against Anthem while shielding itself from a thorough inquiry into why or how that Notice came to be issued. Reading Plaintiff's Response, the Court might mistakenly conclude that Anthem seeks to affirmatively rely on the Notice for its defense. For example, Plaintiff argues that it "must be able to respond" to a hypothesized argument that Anthem would use its disclosures to the Centers for Medicare & Medicaid Services ("CMS") from 2018 through 2025 as evidence of non-materiality. Resp. at 14. But Anthem has never once made this argument and did not identify those disclosure letters or the Notice on its Rule 26 disclosures. Anthem has stated repeatedly that it does not consider the Notice—or its disclosure letters related to the Notice—relevant to this litigation in any way, a point that Magistrate Judge Parker acknowledged in her July 2, 2026 Order (Dkt. 542) (together with the July 8, 2026 Order (Dkt. 546), "the Orders"). July 2 Order at 3. Anthem served these discovery requests solely and exclusively because Plaintiff intends to use the Notice to prove materiality; absent Plaintiff's stated intention to affirmatively use the Notice as evidence to prove its claims for relief, Anthem would not be seeking this discovery. But Plaintiff seeks to have it both ways. If, as Plaintiff insists, the Notice is relevant to materiality, then this Circuit's decisions, including *U.S. v. Strock*, 982 F.3d 51, 59 (2d Cir. 2020), make clear that the factual circumstances surrounding its issuance are equally relevant.

Plaintiff concedes that it never submitted any evidence that producing the requested discovery would pose an undue burden, as courts in this District require. Plaintiff has provided no evidence to substantiate its assertion that Anthem's single document request, single interrogatory, and request to depose three CMS witnesses would be burdensome at all, let alone so unduly

1

burdensome as to warrant denying discovery categorically.  Nor is there any reason to believe these requests would impose a meaningful burden: they concern a single Notice the agency issued just six months ago.

For these reasons, the Orders denying Anthem's discovery requests are contrary to law, clearly erroneous, and violate the principles of fundamental fairness underpinning the Federal Rules of Civil Procedure.  Plaintiff cites the "substantial deference" afforded to a magistrate judge's discovery rulings under Rule 72(a) and repeatedly urges the Court to accept Magistrate Judge Parker's analysis because of "her long experience managing discovery in this case."  Resp. at 2, 12-13.  Anthem willingly concedes that deference is often afforded the discovery rulings of a magistrate judge and, for that reason, it has not filed objections to any of the many prior discovery orders issued by Magistrate Judge Parker over the last three years.  But even the most well-intentioned jurist occasionally errs.  The Orders at issue here rest on patently unsupported factual findings and fail to account for controlling precedent in the Second Circuit.  Accepting Plaintiff's request for deference here would effectively render Rule 72(a) meaningless.  The Court should therefore sustain Anthem's Objection and order Plaintiff to provide the requested discovery.

## ARGUMENT

### A.    Plaintiff Does Not Dispute the Facts Most Critical to This Objection

Plaintiff's Response is riddled with factual errors and unsupported assertions.  As one example, Plaintiff contends that, when Anthem's chart review vendor "failed to identify a particular diagnosis code that had previously been reported for the beneficiary for the same date of service, Anthem knew, at a minimum, that there was a significant likelihood that the diagnosis code was not, in fact, supported" and, thus, "Anthem turned a blind eye to such diagnosis codes" when it chose not to delete those codes in the CMS data system.  Resp. at 3-4.  But there is no evidence that Anthem ever made a decision not to delete the roughly 200,000 allegedly false

diagnosis codes that Plaintiff has put at issue in this case and for a simple reason: Anthem's chart review vendor never reported to Anthem that those codes were not documented in the beneficiaries' medical records.  Plaintiff omits the critical and undisputed fact that the vendor was not auditing the previously submitted diagnosis codes and, thus, never reported that any of those roughly 200,000 codes were not documented in the medical records.  Accordingly, Anthem could not possibly turn a blind eye to undocumented diagnosis codes.  Plaintiff can cite no evidence from the chart review vendor or Anthem personnel indicating that Anthem knew that the allegedly false diagnosis codes in this case were not documented in the medical records.

Likewise, while Plaintiff contends that Anthem's 2010 chart review disclosure to CMS "omits" that Anthem did not delete diagnosis codes (*id.* at 6), the actual documents submitted to CMS state clearly that the chart review program was not an audit of diagnosis codes and that the program was intended to identify additional diagnosis codes for submission.  *See* Dkt. 408-5 at 16, 19.[1]  There is no plausible interpretation of these statements other than that Anthem was not relying on chart review results to audit whether diagnosis codes previously submitted by physicians were properly documented, and Plaintiff points to no testimony from Anthem or CMS suggesting otherwise.  But the Court need not address these and other factual questions to decide this discovery dispute; they can be resolved fully at summary judgment and/or trial.

Notably, Plaintiff does not dispute the facts most critical to this Objection.  First, the parties agree that this case does not concern any diagnosis codes affirmatively identified by Anthem's chart review vendor and subsequently submitted to CMS; they also agree that CMS expressly

---

[1] Plaintiff improperly submitted a new document (Dkt. 562-1) with its Response.  The Court should strike it.  The law is clear: the record is limited to evidence presented to the magistrate judge. *See Rivera v. Hudson Valley Hosp. Grp., Inc.*, 2019 WL 3955539, at \*9 (S.D.N.Y. Aug. 22, 2019) ("Courts in the Second Circuit have interpreted" Rule 72(a) "as indicating that a judge cannot entertain new evidence on a non-dispositive Rule 72(a) motion.") (collecting cases).

permitted retrospective chart reviews.  *See* Resp. at 6.  The parties further agree that this case concerns only diagnosis codes that medical providers submitted to Anthem and that Anthem passed along to CMS.  *See* Resp. at 3, 5-6.  Plaintiff also does not dispute that the at-issue codes arise only from "payment years" 2013 through 2016, which roughly corresponds to provider encounters from 2012 through 2015, while the Notice explicitly concerns conduct that entirely post-dates that period.  Plaintiff also does not dispute that CMS received and was aware of Anthem's disclosures of potentially unverified diagnosis codes by 2018—before this litigation was even commenced in 2020—yet took no adverse action against Anthem until issuing the Sanctions Notice six months ago.  Plaintiff's Response never explains why, if the conduct at issue was truly material to CMS's payment decisions, the agency sat on its hands for nearly eight years paying Anthem and renewing its contracts year after year.

### B.      The Second Circuit's Materiality Standard Entitles Anthem to This Discovery

The February 2026 Notice is a post hoc enforcement action that does not pertain to the conduct at issue in this case, and CMS issued it more than seven years after learning of Anthem's conduct and almost six years after this case was filed.  As *Strock* held, such efforts to manufacture materiality carry little probative weight under the False Claims Act ("FCA").  982 F.3d at 63-64. But to the extent Plaintiff seeks to offer the Notice as evidence to prove materiality, Anthem is entitled to the requested discovery to rebut that evidence.

Plaintiff's arguments to the contrary fail.  First, Plaintiff contends that Anthem should be foreclosed from seeking this discovery because it asserts that this Court's opinion denying Anthem's partial motion to dismiss somehow held that an agency's motivations are irrelevant to materiality.  Resp. at 19.  But even a cursory reading of the opinion shows that the Court held no such thing.  And such an implausible holding would be directly contrary to the Supreme Court's decision in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) and

4

the very Second Circuit decisions this Court cited in its opinion.

As this Court held, relying on *Strock*, "*Escobar* directs examination of the government's reaction to noncompliance both 'in the mine run of cases,' as well as in the 'particular' case at issue," and that "[m]ateriality 'looks [to] the effect on the likely or actual behavior of the recipient of the alleged misrepresentation,' *i.e.*, whether the decisionmaker ***would attach importance to that information when making a decision***." Dkt. 60 at 8-10 (emphasis added). The factual inquiry into the importance of certain information to an agency's decision making necessarily requires evidence of the agency's state of mind. There is no plausible way to read this Court's opinion or *Strock* to support Plaintiff's proffered interpretation, nor do other courts read *Strock* in this manner. *See United States ex rel. Lee v. N. Metro. Found. for Healthcare, Inc.*, 2021 WL 3774185, at \*11-12 (E.D.N.Y. Aug. 25, 2021), aff'd, 2022 WL 17366627 (2d Cir. Dec. 2, 2022); *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 112 (2d Cir. 2021) (reaffirming *Strock* holding that post hoc enforcement action initiated against different contractor, based on similar allegations, is of limited probative weight on materiality); *see also United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 2024 WL 2857885, at \*12 (D. Utah Mar. 29, 2024) ("the [g]overnment's motivation" and "possible rationales that may have driven the [g]overnment's decision" to take adverse actions against those who made similar misrepresentations are relevant to materiality).

Plaintiff contends that CMS's state of mind is irrelevant because "for materiality purposes, the salient fact is that CMS acted." Resp. at 19-20. But *Strock* expressly rejected this argument. Just as Plaintiff does here, the government in *Strock* relied on "post hoc enforcement efforts" to establish that it "has regularly prosecuted[]. . . parties that" made similar misrepresentations. 982 F.3d at 63; *see also* Resp. at 14. The Second Circuit was unpersuaded, holding that merely because the government "acted" was insufficient to find materiality; it instead mattered ***in what context***

the government acted and *when*. *Strock*, 982 F.3d at 63. The discovery sought by Anthem is targeted at precisely those questions.

Plaintiff offers two unavailing arguments to evade *Strock*'s clear holding. First, Plaintiff urges this Court to cast *Strock* aside because it was decided in the context of a motion to dismiss. Resp. at 21. But nothing in *Strock* limits its reasoning to that procedural posture, and courts applying *Strock*—including *Lee*, which applied it following a bench trial to grant judgment to the defendant as a matter of law—have not imposed any such limitation. *See, e.g.*, *Lee*, 2021 WL 3774185, at *2. Next, Plaintiff argues that *Strock* was limited to post-contract *litigations*. Resp. at 22. But *Strock* itself makes clear that it is not limited in that manner; there, the Second Circuit explained that the district court improperly "focus[ed] on what kinds of post hoc enforcement actions are relevant to materiality[,]" which "obscure[d] the more fundamental question of whether post hoc enforcement actions are relevant to FCA materiality analysis *at all*." *Strock*, 982 F.3d at 63 (emphasis added). The Second Circuit also subsequently affirmed *Lee*'s application of *Strock*, where *Lee* described *Strock*'s post hoc enforcement analysis as applying broadly to situations "in which the government acts after the fact." *Lee*, 2021 WL 3774185, at *10.

And the Notice is plainly a post hoc enforcement action. It was issued by CMS long after the agency had already awarded MA contracts to Anthem year-after-year for seven years, and it came almost six years after the Justice Department initiated this FCA case. *Strock*, 982 F.3d at 63; *Lee*, 2021 WL 3774185, at *11-12. The Second Circuit's concern with "materiality manufacturing" is particularly acute here, where the Notice was pointedly issued with only a few months left in the then-operative fact discovery period and Plaintiff was facing a failure of proof on materiality. Obj. at 19-20. And the Court need look no further than the Notice itself, which characterizes sanctions brought under 42 C.F.R. § 422.756 subpart O as "*enforcement actions*."

6

Dkt. 529-1 at 10 (emphasis added).

At trial, Plaintiff will call a witness—likely one of the very witnesses Anthem has been barred from deposing—to introduce the Notice, explain why it was issued, and testify that it supposedly proves CMS "does care" about undocumented diagnosis codes. Dkt. 529 at 2. But Anthem cannot effectively refute that testimony or challenge its credibility without discovery of the agency's process and motives for issuing the Notice.

Plaintiff contends that Anthem can make arguments about the timing of the Notice based on the face of the Notice itself. Resp. at 19. But the Notice alone is insufficient to effectively impeach Plaintiff's evidence or advance Anthem's defense that the Notice was a litigation tactic designed to fill an evidentiary gap. After all, Anthem contends that the Notice was issued for reasons **other than** those stated on the face of the document. The suspicious timing of the Notice, issued near the close of discovery after years of inaction by CMS, certainly supports a *prima facie* showing that the Notice resulted from this litigation rather than the ordinary-course administrative process. And in its Response, Plaintiff notably continues to decline any direct refutation of that contention. Resp. at 23-24. But internal documents and testimony from CMS officials involved in the decision to issue the Notice will show the true circumstances that prompted its issuance. Nor can Anthem rely on Plaintiff's document productions to mount its defense. Plaintiff's productions cannot be fairly characterized as discovery at all, as Plaintiff produced no information that Anthem did not already possess, and did not include any internal documents reflecting the reason CMS issued the Notice. Obj. at 20. Plaintiff concedes this point. *See* Resp. at 19 ("Anthem is correct that the documents and information produced to date do not show the 'state of mind of CMS's decision-makers' or the 'agency's motive for issuing the Notice' . . . .").

Further, while Plaintiff touts the volume of other discovery Anthem has received in this

7

litigation, none of that discovery has anything to do with the Notice, which was not issued until long after the parties exchanged document productions. Based on Cheri Rice's August 2025 testimony, Dkt. 523-1, it seems clear that the CMS leadership had not even contemplated the Sanctions Notice when the parties exchanged document productions and began deposing witnesses years into this litigation. The Orders, by failing to account for Second Circuit precedent that establishes that this discovery is highly relevant, were clear error and contrary to law under Rule 72.

### C.    Plaintiff Failed to Establish Any Burden, Let Alone Undue Burden

Plaintiff does not dispute that it offered no evidence to support its burden objection. Plaintiff has thus failed to meet its obligation under Rule 26, rendering the Orders contrary to law. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 1335511, at *2 (S.D.N.Y. May 7, 2025).

Plaintiff instead argues that it is not obligated to provide record support for its burden objection because Anthem's requests are facially overbroad. Resp. at 15-16. They plainly are not. First, Plaintiff makes no serious effort to argue that Anthem's request to depose three specific witnesses—two of whom have been disclosed on Plaintiff's Rule 26 Disclosures as potential trial witnesses, and the last of whom is named in the Notice directly—or its single interrogatory seeking the names of the CMS staff involved in issuing the Notice, are facially overbroad. Nor could it. It is difficult to conceive how Anthem could have tailored these discovery requests more narrowly given the limited information available to Anthem.

Second, Plaintiff's arguments regarding facial overbreadth focus solely on the fact that Anthem's document request sought "all documents" concerning the Notice. Plaintiff seemingly argues that Anthem's document request is definitionally overbroad—and Plaintiff thus has no obligation to actually show burden—simply because Anthem seeks "all" documents concerning the Notice. Resp. at 16. It is mystifying how Plaintiff advances this argument in good faith given

8

that Plaintiff has itself repeatedly served requests seeking "all documents."[2]

The cases that Plaintiff cites here do not support its argument that it has no obligation to provide record evidence to establish undue burden.  The primary case it cites for that proposition, *In re Kidd*, held that document requests were facially overbroad because the requests, as written, "would sweep in" documents "which could have nothing to do" with the subject matter in the case and "are of such breadth that they encompass an entirely unknowable universe of documents." 2020 WL 5594122, at *11-12 (D. Conn. Sept. 18, 2020).  The problem in *Kidd* and the other cited cases arose from parties seeking all documents about **unduly expansive topics**.  That is not the case here.  Anthem seeks documents targeted at the Notice itself, a single Notice that Plaintiff contends is relevant, which was issued just six months ago.  The number of responsive documents and personnel involved are likely small and there is no record evidence to suggest otherwise.  There is no reason to believe that the request would sweep in documents unconnected to the Notice.

Even if Plaintiff were correct that the document request was overbroad, the remedy— categorically denying **any** discovery about the Notice—is unwarranted.  Plaintiff has never proposed any compromise in which it would produce a more narrowly tailored collection of responsive internal CMS documents and it presented no such proposal to Magistrate Judge Parker. Thus, it was an abuse of discretion for the Orders to bar all discovery on the Notice, and to find undue burden when Plaintiff submitted no record evidence establishing such a burden.

Plaintiff argues further that it would be burdensome to conduct a privilege review in response to Anthem's discovery requests, *see* Resp. at 18, but Plaintiff has submitted no evidence

---

[2] For example, three out of four document requests in Plaintiff's Eighth Set of Requests for Production, served six days before Anthem served the document request at issue here, sought "all documents" on various enumerated topics. *See* Dkt. 512-2.  Anthem agreed to produce documents in response to each of these requests, while Plaintiff has refused to produce any documents beyond publicly available information and documents Anthem already possessed.

that any such privileged documents even exist, let alone in such volumes that generating a privilege log would be unduly burdensome. Plaintiff has not even confirmed that counsel was involved in the decision to issue the Notice, and if so, whether that counsel was from CMS or counsel from the Department of Justice involved in litigating this case. Under well-established precedent in this District, Plaintiff was obligated to provide record evidence if it wished to assert burden; it failed to supply that record and cannot now rely on conjecture. *See, e.g.*, *Eletson Holdings Inc.*, 2025 WL 1335511, at *2.

Plaintiff similarly cannot rely on purported burdens associated with deliberative process privilege. The deliberative process privilege is a qualified privilege, *see United States v. Wey,* 252 F. Supp. 3d 237, 250 (S.D.N.Y. 2017); it does not apply categorically, and it is unlikely deliberative process privilege would even apply here, whatever the documents involved. Plaintiff itself has affirmatively put the Notice at issue, for the specific purpose of proving materiality; courts regularly hold that when a government plaintiff places its state of mind at issue, it cannot use deliberative process privilege to shield production of documents relevant to that state of mind. *See, e.g.*, *Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.)*, 139 F.R.D. 295, 299 (S.D.N.Y. 1991). This is especially pronounced with respect to Anthem's requested depositions; Plaintiff argues that preparing these witnesses would be burdensome given the deliberative process privilege issues involved. Resp. at 16 n.7. But for two of these witnesses, Plaintiff has indicated they are likely to be ***trial witnesses***, meaning their testimony will need to be prepared anyway.

None of these arguments establishes burden, let alone undue burden. The Magistrate Judge's Orders relying on these arguments were accordingly clear error and contrary to law.

## **CONCLUSION**

For the foregoing reasons, Anthem respectfully requests that the Court sustain its Objection to the Orders and compel Plaintiff to fully respond to Anthem's requested discovery.

10

Dated:  August 13, 2026

Respectfully submitted,

By: */s/ K. Lee Blalack, II*

K. LEE BLALACK, II, *Pro Hac Vice*
ANWAR GRAVES, *Pro Hac Vice*
WILLIAM BUFFALOE, *Pro Hac Vice*
BRIAN D. BOYLE
BENJAMIN D. SINGER
RAHUL KOHLI, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
lblalack@omm.com
agraves@omm.com
wbuffaloe@omm.com
bboyle@omm.com
bsinger@omm.com
rkohli@omm.com

JAMES A. BOWMAN, *Pro Hac Vice*
ADAM LEVINE, *Pro Hac Vice*
HANNAH E. DUNHAM, *Pro Hac Vice*
SHELBY A. CUMMINGS, *Pro Hac Vice*
ELIZABETH ARIAS GRAY, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
jbowman@omm.com
alevine@omm.com
hdunham@omm.com
scummings@omm.com
earias@omm.com

DAVID DEATON, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
ddeaton@omm.com

11

CHRISTOPHER P. BURKE, *Pro Hac Vice*
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
cburke@omm.com

JOHN MARTIN, *Pro Hac Vice*
HEYWARD BONYATA, *Pro Hac Vice*
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
Telephone: (803) 255-9655
john.martin@nelsonmullins.com
heyward.bonyata@nelsonmullins.com

*Attorneys for Defendant Anthem, Inc.*

12