USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/8/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

UNITED STATES OF AMERICA,

Plaintiff,

-against-

ANTHEM, INC.,

Defendant.

--------------------------------------------------------------X

**20-CV-2593 (ALC) (KHP)**

**OPINION AND ORDER**
**ON**
**MOTION TO SEAL**

**KATHARINE H. PARKER, United States Magistrate Judge:**

On June 12, 2026, Anthem filed a letter pursuant to the Court's Order at ECF No. 518 requesting that the Court enter an order maintaining under seal the confidential information contained in: (1) Exhibits A through H to the Government's April 27, 2026 letter motion (ECF No. 488); (2) Exhibits I and J to the Government's May 12, 2026 reply letter motion (ECF No. 505); (3) the redacted portions of the Declaration of Peter D. Haytaian submitted in support of Anthem's responsive position statement (ECF No. 496-1); and (4) portions of the parties' position statements that quote, discuss, or otherwise disclose the confidential information contained in the above materials. (ECF Nos. 491, 498, 508, 518) The Government has not filed an opposition to this request. For the reasons that follow, Anthem's request to seal the documents referenced in its letter is GRANTED.

**LEGAL STANDARD**

The First Amendment accords a strong presumption of public access to pleadings and other judicial documents that "have historically been open to the press and general public" and "play[ ] a significant positive role in the functioning of the [judicial] process[.]" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (internal quotation marks and citation omitted); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124

(2d Cir. 2006). The Second Circuit has held that this presumption applies to complaints filed in civil actions, *Bernstein*, 814 F.3d at 140, as well as "pretrial motions and written documents submitted in connection with them, and docket sheets." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (citations omitted).

In considering a motion to seal, the court undertakes a three-part analysis. First, the court must determine whether the document is in fact a judicial document. A document is judicial if it "would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).

Second, once the Court finds that the document is a "judicial document," the court must determine the weight of the presumption that attaches. The weight given the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id*. at 49. "The strongest presumption attaches where the documents 'determin[e] litigants' substantive rights,' and [the presumption] is weaker where the 'documents play only a negligible role in the performance of Article III duties.'" *Olson v. Major League Baseball*, 29 F.4th 59, 89-90 (2d Cir. 2022) (citations omitted). "Thus, a strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss or a summary judgment motion." *Id*. However, the weight accorded to the presumptive right to public access is lower if the document is submitted in connection with a discovery dispute or other non-dispositive motion. *See Brown,* 929 F.3d at 49-50.

Third, once the Court has determined the weight to accord the presumption of public access, it must determine whether competing considerations outweigh the presumption. *Lugosch*, 435 F.3d at 120. Once triggered, the First Amendment "requires a court to make specific, rigorous findings before sealing [a] document or otherwise denying public access" to the judicial record. *Bernstein*, 814 F.3d at 141 (internal quotation marks and citation omitted). "[T]he presumptive right of access prevails unless it is overcome by specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Newsday*, 730 F.3d at 165 (internal quotation marks and citation omitted). This is because "[w]hat offends the First Amendment is the attempt to [exclude the public] without sufficient justification, not the simple act of exclusion itself." *Id*. (alteration in original) (internal quotation marks and citation omitted). Thus, once a document is "judicial," the presumption of public access is weighed against the "danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). "[E]ven if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015).

**DISCUSSION**

As a threshold matter, the materials at issue were all submitted in connection with a discovery dispute concerning whether the deposition of Peter D. Haytaian was appropriate under the apex-witness doctrine, rather than in connection with a dispositive motion or any

adjudication of the parties' substantive rights. Accordingly, though the materials undisputedly qualify as judicial documents, the presumption of public access is comparatively modest. *See Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014). That presumption is further diminished because several of the documents concern matters collateral to the merits of this action, including Anthem's Medicaid business, internal financial planning, employment matters, and compliance issues unrelated to the chart-review practices underlying the parties' claims.

With the questions of whether the documents at issue are judicial documents and the weight of the presumption that attaches now settled, the question that remains is whether the requested redactions and sealings are necessary to preserve higher values and narrowly tailored such that closure would not offend the right to public access. *See In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

**A. ECF Nos. 488-1 and 488-2**

After careful review, the Court finds that maintaining ECF Nos. 488-1 and 488-2 under seal is warranted as those exhibits contain nonpublic information concerning Anthem's contractual relationship with nonparty, Verscend, including negotiated pricing terms, volume commitments, service-level provisions, and fee structures. These include specific commercial terms reflecting the economic and strategic arrangements between Anthem and a nonparty. Therefore, public disclosure could reveal information regarding Anthem's and Verscend's negotiating positions, pricing practices, and contractual expectations that is not otherwise

publicly available. Courts in this District have recognized that confidential contractual terms and pricing information may properly be sealed where disclosure could place a party or nonparty at a competitive disadvantage. *See News Corp. v. CB Neptune Holdings, LLC,* No. 21 Civ. 4610 (VSB), 2021 WL 3409663, at *2 (S.D.N.Y. Aug. 4, 2021) (sealing portions of an acquisition agreement and related documents, finding that "negotiated pricing structures" and "competitively sensitive financial information" were not publicly available, and that "disclosure of the acquisition's economic terms and disputes over those terms could disadvantage Neptune in future acquisition-related negotiations with third parties."); *Comerica Leasing Corp. v. Bombardier Inc*., No. 16 Civ. 614 (PGG), 2019 WL 11027701, at *4 n.6 (S.D.N.Y. Sept. 30, 2019), (sealing portions of a complaint and its exhibits containing "confidential pricing terms."). Moreover, the Court previously confronted adjacent Verscend-related confidentiality concerns in connection with the parties' dispute over the deposition of Deborah Bradley and concluded that sealing was appropriate. (ECF No. 493) The same considerations apply here.

Additionally, though Anthem seeks to seal these exhibits in their entirety, the Court finds that complete sealing is narrowly tailored to the interests at stake. The exhibits consist almost exclusively of material concerning the privacy interest Anthem is asserting, and any non-confidential information contained within them is incidental and would provide little, if any, independent value to the public in understanding the issues presented or the manner in which the Court has exercised its Article III functions. Under these circumstances, requiring line-by-line redactions would serve little practical purpose.

**B. ECF Nos. 488-3, 488-4, 488-5, 488-6, and 502-1**

Continued sealing is likewise warranted as to ECF Nos. 488-3, 488-4, 488-5, 488-6, 502-1. These materials contain internal financial and strategic information, including revenue forecasts and targets, competitive bidding strategies, market assessments, negotiations with state Medicaid programs, membership and enrollment projections, operating gain-and-loss figures by line of business, and potential acquisition targets. Some of the documents were also prepared for consideration by Anthem's Board of Directors or other senior decisionmakers and therefore reflect private corporate strategy of the company.

For substantially the same reasons as denoted above, the Court is sufficiently persuaded that public disclosure of this information could provide competitors with insight into Anthem's internal financial expectations, commercial priorities, negotiating positions, and strategic plans. Protecting such competitively sensitive commercial information is a recognized "higher value" capable of overcoming the presumption of public access. *See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015).

**C. ECF Nos. 488-7 and 502-2**

The Court also finds that ECF Nos. 488-7 and 502-2 should remain under seal. Those materials concern the testimony and documents of a former Anthem employee and contain sensitive information relating to an employment dispute, internal compliance practices, and allegations involving other identifiable individuals who are not parties to this action. Importantly, the underlying employment dispute did not concern Anthem's corporate chart-review practices at issue and is entirely collateral to the merits of this action.

Public disclosure would reveal private employment-related information and unsubstantiated allegations concerning individuals who are not parties to this litigation and whose conduct is not itself at issue before the Court. Sealing is warranted to protect the privacy of these individuals as "[t]he privacy interests of innocent third parties should weigh heavily in a court's balancing equation. Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616 (S.D.N.Y. 2011) (quoting *Amodeo*, 71 F.3d at 1050-51). Those interests outweigh the limited presumption of access applicable here and closure is narrowly tailored to protect those interests.

**D. ECF No. 488-8**

EFC No. 488-8 contains Anthem's confidential internal audit and ethics-compliance materials, including detailed risk assessments, corrective-action plans, information concerning employee discipline or termination, and results of regulatory examinations. These materials reflect Anthem's candid internal assessment of compliance risks, potential vulnerabilities, and remediation efforts. Per Anthem "[p]ublic disclosure [of this information] would undermine Anthem's ability to conduct effective internal audits and self-assessments, chill candid internal reporting, and expose Anthem's specific compliance vulnerabilities to competitors and potential litigants." (ECF No. 526 at 3) The document also identifies several Anthem employees and other third parties whose conduct or circumstances have no apparent connection to the claims at issue in this case.

Disclosure would therefore risk exposing sensitive personal and employment-related information concerning individuals who became relevant to this discovery dispute only because

their information appeared in a document involving Mr. Haytaian. For the same reasons as noted previously, sealing of this genus of information is warranted. Anthem's argument for protecting confidential internal audit materials is also persuasive. *See Houbigant, Inc. v. Dev. Specialists, Inc.,* No. 01 Civ. 7388 (LTS) (GWG), 2003 WL 21688243, at *3 (S.D.N.Y. July 21, 2003) (recognizing that internal audit materials may warrant confidential treatment where a party demonstrates specific competitive harm from disclosure); *see also In re Mid Am. Waste Sys., Inc. Sec. Litig.,* 1997 WL 1045729, at *2 (D.N.J. Dec. 10, 1997). Accordingly, closure of EFC No. 488-8 is also warranted to protect higher interests and is narrowly tailored to do so.

**E. Redactions to the Haytaian Declaration and Position Statements**

Finally, the Court finds that the limited redactions to the Declaration of Peter D. Haytaian and the parties' position statements should remain in place to the extent those filings quote, paraphrase, contextualize, or otherwise reveal the substance of the documents referenced above.

**CONCLUSION**

For the above reasons, the Court GRANTS the requests to seal and accepts the proposed redactions to the extent that the Clerk of Court has already restricted access to documents attached to ECF Nos. 488, 495, and 502. The parties are reminded that the information placed under seal in connection with this request may not be similarly treated in connection with a separate dispositive motion.

Separately, insofar as neither party has addressed the outstanding provisional sealing at ECF Nos. 515, or 544, the moving party is directed to file a letter by September 18, 2026 stating whether they seek to maintain under seal any of the materials identified in those Orders. To

the extent any party seeks continued sealing, the letter shall set forth the factual and legal basis supporting that request. If the parties do not seek continued sealing, they shall so advise the Court.

**The Clerk of Court is respectfully directed to maintain ECF Nos. 488-1, 488-2, 488-3, 488-4, 488-5, 488-6, 488-7, 488-8, 502-1, and 502-2 under seal and ECF Nos. 488, 495, and 502 in redacted form.**

**SO ORDERED.**

DATED: New York, New York
September 8, 2026

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge