USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

UNITED STATES OF AMERICA,

Plaintiff,

-against-

ANTHEM, INC.,

Defendant.

---------------------------------------------------------------X

**20-CV-2593 (ALC) (KHP)**

**OPINION AND ORDER ON MOTION TO SEAL**

**KATHARINE H. PARKER, United States Magistrate Judge:**

On October 1, 2026, Anthem filed a letter pursuant to the Court's Order at ECF No. 577 requesting that the Court enter an order maintaining under seal the confidential information contained in: (1) Exhibits E through H to the Government's September 1, 2026 Position Statement (ECF Nos. 572-5 – 572-8) and (2) the unredacted version of Government's September 1, 2026 position statement (ECF No. 572) The Government has not filed an opposition to this request. For the reasons that follow, Anthem's motion to seal is GRANTED.

**LEGAL STANDARD**

The First Amendment accords a strong presumption of public access to pleadings and other judicial documents that "have historically been open to the press and general public" and "play[ ] a significant positive role in the functioning of the [judicial] process[.]" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (internal quotation marks and citation omitted); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). The Second Circuit has held that this presumption applies to complaints filed in civil actions, *Bernstein*, 814 F.3d at 140, as well as "pretrial motions and written documents submitted in connection with them, and docket sheets." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (citations omitted).

In considering a motion to seal, the court undertakes a three-part analysis. First, the court must determine whether the document is in fact a judicial document. A document is judicial if it "would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).

Second, once the Court finds that the document is a "judicial document," the court must determine the weight of the presumption that attaches. The weight given the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id*. at 49. "The strongest presumption attaches where the documents 'determin[e] litigants' substantive rights,' and [the presumption] is weaker where the 'documents play only a negligible role in the performance of Article III duties.'" *Olson v. Major League Baseball*, 29 F.4th 59, 89-90 (2d Cir. 2022) (citations omitted). "Thus, a strong presumption attaches to materials filed in connection with dispositive motions, such as a motion to dismiss or a summary judgment motion." *Id*. However, the weight accorded to the presumptive right to public access is lower if the document is submitted in connection with a discovery dispute or other non-dispositive motion. *See Brown,* 929 F.3d at 49-50.

Third, once the Court has determined the weight to accord the presumption of public access, it must determine whether competing considerations outweigh the presumption. *Lugosch*, 435 F.3d at 120. Once triggered, the First Amendment "requires a court to make specific, rigorous findings before sealing [a] document or otherwise denying public access" to

the judicial record. *Bernstein*, 814 F.3d at 141 (internal quotation marks and citation omitted). "[T]he presumptive right of access prevails unless it is overcome by specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Newsday*, 730 F.3d at 165 (internal quotation marks and citation omitted). This is because "[w]hat offends the First Amendment is the attempt to [exclude the public] without sufficient justification, not the simple act of exclusion itself." *Id*. (alteration in original) (internal quotation marks and citation omitted). Thus, once a document is "judicial," the presumption of public access is weighed against the "danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). "[E]ven if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015).

**DISCUSSION**

Preliminarily, the materials at issue were all submitted in connection with a discovery dispute rather than in connection with a dispositive motion. Accordingly, though the materials undisputedly qualify as judicial documents as, they" would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers[,]" *Brown*, 929 F.3d at 49, the presumption of public access is comparatively modest. *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 4346174, at *2 (S.D.N.Y. Sept. 2, 2014); *Id.* at 49-50.

Anthem asserts the materials at issue "contain Anthem's confidential business policies, competitively sensitive financial information, internal strategic data, and vendor information[.]" (ECF No. 601 at 1)

Exhibit E is an internal Anthem policy addressing procedures for identifying and responding to potential overpayments from CMS and contains nonpublic information concerning Anthem's compliance infrastructure and internal processes for Medicare risk-adjustment matters. (ECF No. 601-1 ¶ 7) Exhibit H similarly consists of an internal compliance assessment prepared by Anthem personnel evaluating an Anthem subsidiary's risk-adjustment processes, including "coding standards, vendor oversight procedures, and quality assurance protocols." (ECF No. 601-1 ¶ 9) As this Court has previously recognized on more than one occasion in this action, disclosure of detailed internal compliance materials may undermine a company's ability to conduct effective internal audits and self-assessments and chill candid internal reporting. (ECF Nos. 581 at 7; 598 at 4) The Court further finds that public disclosure would reveal the manner in which Anthem structures its compliance functions, identifies potential deficiencies, evaluates internal processes, and develops remedial or quality-control measures, which could, in turn create commercial harm. *Houbigant, Inc. v. Dev. Specialists, Inc.*, No. 01 Civ. 7388 (LTS) (GWG), 2003 WL 21688243, at *3 (S.D.N.Y. July 21, 2003); (ECF No. 601-1 ¶ 9). Moreover, Exhibit H implicates third-party concerns (discussed in greater detail below). The Court is therefore persuaded that Anthem's interest in preserving the confidentiality of these internal compliance materials constitutes a sufficiently weighty interest to overcome the applicable presumption of public access.

Insofar as Exhibit F has already been sealed by this Court at ECF No. 598, the same considerations apply here. Sealing is warranted.

Exhibit G contains internal communications among Anthem employees concerning risk-revenue initiatives and program valuations for Anthem's Medicare risk-adjustment activities. The communications contain "financial projections, revenue estimates, vendor-specific data, valuation data, [] strategic planning materials[,]" and information concerning Anthem's financial arrangements with third-party vendors. (ECF No. 601-1 ¶ 8) Disclosure could provide competitors with insight into Anthem's revenue expectations, valuation methodologies, and vendor-pricing arrangements, and thereby place Anthem at a competitive disadvantage. *See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015). Moreover, the document implicates the interests of nonparties because it describes confidential vendor relationships and operational information concerning an Anthem subsidiary whose practices are not at issue in this action. *See Lytle v. JPMorgan Chase,* 810 F. Supp. 2d 616, 622 (S.D.N.Y. 2011) ("The privacy interests of innocent third parties should weigh heavily in a court's balancing equation. Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." (quoting *Amodeo,* 71 F.3d at 1050-51)). Accordingly, the Court finds that closure is, likewise, warranted.

The Court further finds that complete closure of the above documents would not offend the right to public access because any non-confidential material is incidental and would add little to the public's understanding of the dispute.

Finally, regarding the proposed redactions at ECF No. 571 and the corresponding sealing of ECF No. 572, the Court concludes that each redaction is appropriate to the extent those

documents quote, paraphrase, contextualize, or otherwise reveal the substance of the documents referenced above.

**CONCLUSION**

For the foregoing reasons, the Anthem's motion to seal is GRANTED and the Court accepts the proposed redactions to the extent that the Clerk of Court has already restricted access to documents at ECF Nos. 572, 572-5, 572-6, 572-7, and 572-8. The parties are reminded that the information placed under seal in connection with this request may not be similarly treated in connection with a separate dispositive motion. Insofar as neither Anthem nor the Government has taken a position as to the documents placed under provisional seal at ECF Nos. 572-1, 572-2, 572-3, and 572-4, those documents will be unsealed pursuant to the Court's Order at ECF No. 577.

**The Clerk of Court is respectfully directed to terminate ECF No. 601 and maintain ECF Nos. 572, 572-5, 572-6, 572-7, and 572-8 under seal. The Clerk of Court is further directed to unseal the Exhibits at ECF Nos. 572-1, 572-2, 572-3, and 572-4.**

**SO ORDERED.**

DATED: New York, New York
October 5, 2026

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge