# EXHIBIT A

to this Interrogatory because it calls for legal conclusions regarding the definition of a "false or fraudulent claim" under the False Claims Act.

Subject to and without waiving the foregoing, and as the Government alleged in its Amended Complaint, *see* Am. Compl. ¶¶ 158–162, and explained in its June 15, 2023 letter to Anthem, the Government contends that the False Claims that Anthem knowingly presented, or caused to be presented, to CMS for payment or approval are the attestations that Anthem submitted to CMS during the Relevant Period, in which Anthem falsely claimed and falsely stated that, "[b]ased on best knowledge, information, and belief as of the date indicated below, all information submitted to CMS in this report is accurate, complete, and truthful." US_000036012–110.

**Interrogatory 18**. For each False Claim that You Identified in response to Interrogatory No. 17 and/or each Diagnosis Code You allege was not Documented in Medical Records, Identify and Describe with particularity what information in each Claim is False and why such information is False, Including the specific details as to why the specific information for each Claim is False.

**Response to Interrogatory 18.** The Government objects to this Interrogatory as premature because the Interrogatory, regarding the identification and description of why particular False Claims or Diagnosis Codes are false, seeks information that the Government's experts may provide during expert discovery, but expert discovery is not yet complete, and the deadline for the Government's expert disclosures has not yet passed. The Government objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case because it asks the Government to identify and describe with particularity what information is false, and why, for each of thousands of False Claims and Diagnosis Codes at this stage of the litigation. The Government further objects to this Interrogatory because it seeks information protected by the work product doctrine and other applicable privileges or protections because, among other reasons, the analysis of which diagnoses are unsupported, and why, reflects counsel's and the Government's experts' mental impressions. The Government further objects to this Interrogatory

because it calls for legal conclusions concerning the falsity of diagnoses. The Government further objects to this Interrogatory as compound and as containing multiple subparts, namely, (i) the identification of false information in each Claim, (ii) the description of why such information is false, and (iii) the specific details supporting each such description, which should be counted as separate interrogatories. The Government further objects to this Interrogatory as disproportionate to the needs of the case because the responsive information resides within data productions made by Anthem, and is therefore as readily available to Anthem as to the Government. The Government further objects to this Interrogatory as cumulative and duplicative of Interrogatories 16 (concerning the falsity of Anthem's attestations), 17 (concerning the identification of each False Claim), and 19 (concerning Anthem's knowledge of falsity of specific diagnosis codes), because it seeks substantially the same information already requested by those Interrogatories. The Government further objects to this Interrogatory on the grounds that the phrase "For each False Claim that You Identified in response to Interrogatory No. 17 and/or each Diagnosis Code You allege was not Documented in Medical Records" is vague and ambiguous.

By responding to this Interrogatory, the Government does not represent that it is identifying every fact related to the subject of the Interrogatory, and the response set forth below should not be construed as exhaustive.

Subject to and without waiving the foregoing, and as the Government alleged in its Amended Complaint, *see* Am. Compl. ¶¶ 158–162, and explained in its June 15, 2023 letter to Anthem, the information that is false in each attestation is Anthem's certification that, "[b]ased on best knowledge, information, and belief as of the date indicated below, all information submitted to CMS in this report is accurate, complete, and truthful." US_000036012–110. That information was false because, at the time of such attestations, Anthem knew that it had submitted inaccurate

and false risk adjustment diagnosis data to CMS. Specifically, at the time of the attestations, Anthem knew that it had failed to delete diagnosis codes that it had previously submitted to the Medicare program for risk adjustment payments subsequently made by the Medicare program to Anthem that Anthem knew were unsupported by medical records and affected the amount of payment received by Anthem from the Medicare program.

With respect to the diagnosis codes that the Government alleges were not supported by the medical records, the Government's evidence will be further developed through expert discovery. As contemplated by the Court, the Government is reviewing a sample of diagnosis codes, for which the Court ordered Anthem to produce the associated medical records, to determine which diagnosis codes within that sample are unsupported by the medical record documentation, and the results of that review will then be extrapolated to the broader population of diagnosis codes from which the sample was drawn to establish the percentage of diagnosis codes unsupported from the broader population and, with additional evidence, the Government's damages. *See United States v. Anthem, Inc.*, No. 20 Civ. 2593 (ALC) (KHP), 2026 WL 456597, at *3 (S.D.N.Y. Feb. 18, 2026) ("While the parties dispute whether the Government may rely on a sampling to establish liability in this case, the Court notes that the U.S. Supreme Court has recognized that in some cases a representative sample is the only practicable means to collect and present relevant data establishing a defendant's liability. The Court does not decide in this opinion whether the sample requested is statistically valid or sufficient to establish liability, but finds that sampling is the only practicable way to proceed in discovery at this point." (citation and internal quotation marks omitted)). The methodology and results of that review of medical records and extrapolation analysis—including the identification of the diagnosis codes within the sample that are unsupported by the medical record documentation, the reasons each such code is unsupported, and the methodology for

extrapolation—are the proper subject of expert discovery, which the Government will provide through expert disclosures in accordance with the schedule set by the Court.

**Interrogatory 19.** For each Diagnosis Code You Identified in response to Interrogatory No. 18, state in detail every Material fact relating to Your contention that Anthem Knew that these Diagnosis Codes were "inaccurate," "incorrect," or "not supported by the medical record." Am. Compl. ¶¶ 51, 54, 55, 154.

**Response to Interrogatory 19.** The Government objects to this Interrogatory as premature because discovery is ongoing and not yet complete, and the Government may identify additional material facts regarding the allegations set forth in Paragraphs 51, 54, 55, and 154 of the Amended Complaint through the completion of discovery. The Government objects to this Interrogatory as improper because it demands "every material fact" that supports the Government's contention. *See Pasternak*, 2011 WL 4552389, at *2. The Government further objects to this Interrogatory because it seeks the premature disclosure of expert opinion testimony, including identification and description of Diagnosis Codes that the Government's experts may provide based on review of Anthem's data productions and other materials. The Government further objects to this Interrogatory because it calls for legal conclusions regarding Anthem's scienter, an element of the False Claims Act. The Government further objects to this Interrogatory because it calls for a recitation of the Government's legal theory, which is not an appropriate subject for an interrogatory. *See Renault*, 27 F.R.D. at 29–30; Fed. R. Civ. P. 33 advisory committee's note to 1970 amendment. The Government further objects to this Interrogatory as disproportionate to the needs of the case because the responsive information resides within Anthem's own document productions and the testimony of its current and former personnel, and is therefore equally, or more readily, available to Anthem than to the Government.

The Government further objects to this Interrogatory as cumulative and duplicative of Interrogatories 7 (concerning Anthem's knowledge that unsubstantiated codes were inaccurate),