# EXHIBIT A

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*
*86 Chambers Street, Third Floor*
*New York, New York 10007*

June 15, 2023

**BY EMAIL**

K. Lee Blalack, II
David Deaton
Jim Bowman
Margaret L. Carter
Valerya Cohen
Anwar Graves
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006

Heyward Bonyata
John Martin
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201

Re: *United States v. Anthem, Inc.*, 20 Civ. 2593 (ALC) (KPF)

Dear Counsel:

As you know, this Office represents the United States in this False Claims Act case. We write regarding: (1) the Government's additional production of documents in response to Defendant's First Set of Document Requests and as part of the Government's Rule 26 disclosures; and (2) Defendant's May 19, 2023, letter relating to its proposed interrogatories.

**I. The Government's June 15, 2023, Production**

Enclosed please find the following documents, produced in response to Defendant's First Set of Document Requests:

- CMS Managed Care Manuals, which have been Bates numbered US_000036111 to US_000036330, and which are responsive to Request No. 25.

- CMS Electronic Data Interchange Enrollment Forms executed by Defendant, which have been Bates numbered US_000035968 to US_000036011, which are responsive to Request No. 25.

- CMS and HHS policies relating to document retention, which have been Bates numbered US_000036331 to US_000036468, and which are responsive to Request No. 8.

- CMS and HHS organizational charts, as well as "briefing books" relating to the HHS Office of the Assistant Secretary for Planning and Education, which have been Bates numbered US_000036503 to US_000037452, and which are responsive to Request No. 5.

- Documents previously produced by the Government on June 9, 2023, but which have now been Bates numbered US_000036469 to US_000036502, and which complete the Government's response to Request No. 3.

Certain produced documents are marked as subject to the protective order. *See* Dkt. No. 96. In addition, the Government is producing the following documents as part of its Rule 26 disclosures:

- Contract-related documents for the contracts between Anthem Medicare Advantage plans (listed in Exhibit 1 to the Amended Complaint) and CMS, which have been Bates numbered US_000030866 to US_000035839.

- Enrollment Data and Payment Certification Reports for the Anthem Medicare Advantage plans listed in Exhibit 1 to the Amended Complaint, which have been Bates numbered US_000035841 to US_000035967.

- Risk Adjustment Certification Reports for the Anthem Medicare Advantage plans listed in Exhibit 1 to the Amended Complaint, which have been Bates numbered US_000036012 to US_000036110 (the "Attestations").

We also inform Defendant that the Attestations are the false and fraudulent claims and false statements that that the Government contends Defendant presented (or caused to be presented) to CMS, in violation of 31 U.S.C. § 3729(a)(1)(B) and 31 U.S.C. § 3729(a)(1)(G) (as also set forth in the Government's first and second claims for relief in the Amended Complaint.)[1] The Government contends that, in these Attestations, Anthem falsely claimed and falsely stated that "[based on best knowledge, information, and belief as of the date indicated below, all information submitted to CMS in this report is accurate, complete, and truthful," which rendered the Attestations false.

[1] The Government reserves the right to supplement its productions to the extent it locates additional relevant documents.

We further inform Anthem that the Attestations were false because, at the time of such attestations, Anthem knew that it had submitted inaccurate and false risk adjustment diagnosis data to CMS. Specifically, at the time of the Attestations, Anthem knew (as that term is defined in the False Claims Act) that it had failed to delete diagnosis codes that: (1) Anthem (through its Medicare Advantage Organizations) had previously submitted to the Medicare program for risk adjustment payments subsequently made by the Medicare program to Anthem; (2) Anthem knew (as that term is defined by the False Claims Act) were unsupported by medical records; and (3) affected the amount of payment received by Anthem from the Medicare program (the "Unsupported Diagnosis Codes").

## II. Additional Responses to Defendant's May 19, 2023, Letter

We also write in response to your May 19 letter. First, we disagree with your characterization and description of certain aspects of our May 10, 2023, meet-and-confer regarding Defendant's proposed interrogatories. It would not be productive or efficient, however, for the Government to highlight each such instance. Instead, below, we have: (1) provided additional information sought by Defendant; (2) noted that Defendant seeks impermissible information through its proposed interrogatories; and (3) explained why Local Rule 33.3(a) prohibits Defendant from seeking information sought by Defendant through contention interrogatories at this stage of the litigation.

### A. <u>Defendant Improperly Seeks Information Relating to Legal Conclusions, Hypothetical Questions, and Which Defendant Has the Opportunity to Learn Through Ordinary Discovery</u>

Defendant has objected to the Government's determination that it should not provide certain categories of information in response to the proposed interrogatories, such as information regarding legal conclusions. But Defendant's proposed interrogatories seek information through proposed interrogatories that would be improper at any stage of litigation. For example, contention interrogatories "seeking legal conclusions are impermissible." *Winfield v. City of New York*, No. 15 Civ. 05236 (LTS) (KHP), 2018 WL 2277838, at *3 (S.D.N.Y. May 18, 2018). Similarly, interrogatories "calling for an opinion based on hypothetical facts are improper." *Id.* Defendant has sought such information here. For example, Anthem has requested information "concerning the quantum of 'inaccurate and false diagnosis data' needed to render an attestation False," and similarly claimed that the United States "must" state whether "the four examples for payment year 2013 and the three examples for payment year 2015 [identified in Paragraph 154 of the Amended Complaint] are sufficient, respectively, to render the attestations for those years False." These are improper hypothetical questions—as stated in the Amended Complaint, the United States does not rely only on these representative examples, but rather contends that "Anthem knowingly caused CMS to calculate the risk adjustment payments it made to Anthem on the basis of thousands, and likely tens of thousands, of inaccurate diagnosis codes." Am. Compl. ¶ 154.

Further, the tools of ordinary discovery are the proper method for Defendant to obtain information on a topic like materiality. *Winfield*, 2018 WL 2277838, at *3 (denying a motion to compel an answer to a contention interrogatory where the propounding party

already had the "opportunity to learn" through document discovery and depositions). The Government has identified categories of documents and witnesses in its Rule 26 disclosures that will be relevant to its claims. Defendant may, of course, depose the witnesses identified in the Government's Rule 26 disclosures. In short, Defendant may never properly serve interrogatories seeking legal conclusions, answers to hypothetical questions, or on burdensome topics that Defendant may more appropriately explore through ordinary discovery.

B. Information Relating to Defendant's False Statements and False Claims, and the Unsupported Diagnosis Codes

As set forth above, the Government has now produced the Attestations. During our May 10 meet-and-confer discussion, and in your May 19 letter, you also requested clarification regarding the Government's use of the terms "diagnosis codes", "diagnoses", and "risk adjustment diagnosis data." Given Anthem's own knowledge, the specific facts pled in the Amended Complaint, and the context of the Government's May 2, 2023, letter, we do not believe that there is any reasonable ambiguity surrounding the Government's statements.

Nonetheless, we also provide the following information regarding the Unsupported Diagnosis Codes. All of the Unsupported Diagnosis Codes were submitted to Anthem as part of a claim from or beneficiary encounter with a provider ("Provider Claim or Encounter") and later submitted by Anthem (through its MAOs) to CMS for risk adjustment purposes. The medical records associated with the Provider Claim or Encounter for every Unsupported Diagnosis Code were reviewed in Anthem's process of reviewing medical records and abstracting or identifying Diagnosis Codes for the purpose of submitting additional Diagnosis Codes to CMS for risk adjustment payments ("Chart Review"). For all Unsupported Diagnosis Codes, Anthem's Chart Review did not identify that Diagnosis Code as supported by medical records.

As also stated in our May 2 letter, the Government also alleges that Anthem knowingly (as that term is defined in the False Claims Act) and improperly avoided its obligation to delete invalid diagnosis codes, in violation of 31 U.S.C. § 3729(a)(1)(G). Specifically, Anthem: (1) knowingly and improperly failed to delete or otherwise remove Unsupported Diagnosis Codes from the EDPS or RAPS systems; or (2) knowingly and improperly failed to otherwise return to the Medicare Program the overpayments based on the invalid diagnoses for each and every Unsupported Diagnosis Code.

You have also asked for additional specificity regarding the illustrative examples in Paragraph 154. We again note that we do not believe that there is any ambiguity in the Government's Amended Complaint. Nonetheless, as applied to Paragraph 154 of the Amended Complaint, Anthem improperly avoided its obligation to delete (or otherwise remove) the following Unsupported Diagnosis Codes:

- Patient A – HCC 18
- Patient B – HCC 8
- Patient C – HCC 31

- Patient D – HCC 55
- Patient E – HCC 176
- Patient F – HCC 79
- Patient G – HCC 37[2]

You have also asked for the Government to identify all Unsupported Diagnosis Codes presently known by the Government. This request, however, is impracticable at this stage, and also shows why the "the prevailing view in this District that interrogatories are often burdensome and not as effective as other methods of obtaining information in discovery." *Winfield*, 2018 WL 2277838, at *3. The Government has now already: (1) defined Unsupported Diagnosis Codes with specificity; (2) identified the general methodology by which the Government will identify the universe of Unsupported Diagnosis Codes, and noted that it may involve expert analysis; and (3) supplied Anthem with specific information regarding the Unsupported Diagnosis Codes identified in the Amended Complaint. As Anthem knows, through its discovery efforts, the Government intends to identify all Unsupported Diagnosis Codes (and has requested the data necessary to do so in the Government's First Set of Document Requests). And the Government is willing to identify specifically all such Unsupported Diagnosis Codes for Anthem once that process is complete. To require the Government to do so now, with only incomplete information from Anthem in its possession and before expert discovery, would be extremely burdensome and would require the Government to repeat its efforts later on. For example, doing so would require the Government to conduct an analysis with the more limited information and data produced by Anthem during the Government's investigation, when the Government intends in this litigation to identify the universe of Unsupported Diagnosis Codes through the data and information that Anthem will produce *in discovery*. Further, providing this information now, given that it would be incomplete, would put Anthem in no better a position ahead of summary judgment briefing or trial. As stated above, the Government intends to identify for Anthem all Unsupported Diagnosis Codes by the close of expert discovery, through the process we have described.

Finally, Anthem has objected to the Government's approach because the Government's responses by letter to Anthem's proposed interrogatories are not admissible. But the Government has not objected to contention interrogatories being served at the close of discovery, as permitted by the Federal Rules and Local Rule 33.3(a). To the extent Anthem serves such interrogatories in accordance with the Federal Rules of Civil Procedure and Local Rule 33, the Government will respond accordingly.

---

[2] In our May 2, 2023, letter, we provided you with the names of these individuals.

Please do not hesitate to reach out to us with any questions.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

By : /s/ Charles S. Jacob
PETER ARONOFF
ZACHARY BANNON
ADAM GITLIN
CHARLES S. JACOB
JEANNETTE VARGAS
REBECCA S. TINIO
DANA WALSH KUMAR
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel. (212) 637-2725

Enclosure